ANDREW MAST (CABN 284070)
ALBERT B. SAMBAT (CABN 236472)
PARADI JAVANDEL (CABN 295841)
MATTHEW CHOU (CABN 325199)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 941092
Tel: 415.934.5300 / Fax: 415.934.5399
andrew.mast@usdoj.gov

JASON M. FRIERSON
United States Attorney
Nevada Bar Number 7709
ERIC C. SCHMALE
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702.388.6336 / Fax: 702.388.6418
eric.schmale@usdoj.gov
*Attorneys for the United States*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EDUARDO RUBEN LOPEZ,<br><br>Defendant. | **CRIMINAL INDICTMENT**<br><br>Case No. 2:23-cr-00055-CDS-DJA<br><br>**VIOLATION:**<br><br>Antitrust Conspiracy: Price Fixing (15 U.S.C. § 1) |

The Grand Jury charges that at all times relevant to this Indictment:

1

**COUNT ONE**
Conspiracy in Restraint of Trade
(15 U.S.C. § 1)

**BACKGROUND**

1. Home health agencies ("HHAs") are licensed, certified, or authorized by state and federal laws to provide health care services to patients in the home. HHAs employ registered nurses ("RNs") and licensed practical nurses ("LPNs") to provide home health care services. These services can include Private Duty Nursing ("private nursing" or "PDN") services, which are nursing services for recipients who require more individual and continuous care than is available from a visiting nurse or routinely provided by the nursing staff of the hospital or skilled nursing facility.

2. Each RN and LPN typically receives a set hourly rate from an HHA, and is usually paid every one or two weeks. On behalf of eligible patients, HHAs claim reimbursement from the Division of Health Care Financing & Policy ("DHCFP"), within the Nevada Department of Health and Human Services, which administers Medicaid in Nevada. Medicaid is a jointly funded federal and state program that provides health care insurance and medical assistance to people, including families and children, who meet income eligibility requirements. Claims for qualifying home health care services are reimbursed to the HHA based on predetermined rates set by the DHCFP in accordance with the Code of Federal Regulations ("CFR"), Title 42, Part 447, and in consultation with HHAs and a public hearings process.

3. Companies A through F were HHAs that competed with each other in the Las Vegas metropolitan area to attract, hire, and retain nurses to provide private nursing services. Nurses would choose which of these companies to work for based on factors such as wage rate, volume of patient referrals, and location of patients.

4. Company A was a corporation that provided private nursing services in several states, including Nevada.

5. Company B was a limited liability company that provided private nursing services in Nevada.

6. In or around July 2016, Company B was acquired by Company C. Company C was a corporation that provided private nursing services in several states, including Nevada.

7. In or around March 2017, Company C merged with another company to form Company D. Company D was a corporation that provided private nursing services in several states, including Nevada.

8. Company E was a limited liability company that provided private nursing services in several states, including Nevada.

9. Company F was formed in or around August 2017 as a limited liability company, and began providing private nursing services in Nevada in or around November 2018.

## DEFENDANT AND CO-CONSPIRATORS

10. Defendant Eduardo Ruben LOPEZ was a resident of Las Vegas, Nevada. From in or around March 2016 to in or around July 2016, LOPEZ was employed as Director of Operations of Company B. After Company B was acquired by Company C, LOPEZ was employed by Company C as the Executive Director of its Las Vegas office. In or around January 2017, LOPEZ's employment with Company C ended. In or around August 2017, LOPEZ founded Company F and was employed as its Vice President and Administrator. At each of the companies LOPEZ worked for (Companies B, C, and F), LOPEZ was responsible for recruitment, hiring, retention, and assignment of home health

care personnel, including nurses, to provide home health care services, including private nursing services, to patients in or around the Las Vegas metropolitan area.

11. Individual 1 was a resident of Las Vegas, Nevada. Individual 1 was employed by Company A as Director of Business Operations and was responsible for managing the company's Las Vegas office's recruitment, hiring, retention, and assignment of home health care personnel, including nurses, to provide private nursing services to patients in or around the Las Vegas metropolitan area.

12. Individual 2 was a resident of Las Vegas, Nevada. Individual 2 was the owner of Company B.

13. Individual 3 was a resident of Las Vegas, Nevada. Individual 3 was employed by Company E.

14. Various corporations and individuals, not named as defendants in this Indictment, participated as co-conspirators in the offense charged herein, and performed acts and made statements in furtherance thereof.

15. Whenever in this Indictment reference is made to any act, deed, or transaction of any corporation or limited liability company, the allegation means that the corporation or limited liability company engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

**DESCRIPTION OF THE OFFENSE**

16. Beginning on a date unknown, but no later than in or around March 2016 and continuing up to and including in or around May 2019, the exact dates being unknown to the Grand Jury, in the District of Nevada and elsewhere, LOPEZ and his co-conspirators,

known and unknown to the Grand Jury, knowingly entered into and engaged in a conspiracy to suppress and eliminate competition for the services of nurses employed by the co-conspirator companies by agreeing to fix the wages of those nurses.

17. The conspiracy engaged in by LOPEZ and his co-conspirators was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

## MEANS AND METHODS OF THE CONSPIRACY

18. For the purpose of forming and carrying out the charged combination and conspiracy, LOPEZ and his co-conspirators, among other things, did the following:

    a. participated in meetings, conversations, and communications regarding Medicaid's proposed reimbursement rate increase and fixing the wage rates of RNs and LPNs within a range;

    b. agreed during those meetings, conversations, and communications to fix the wage rates paid to RNs and LPNs within a range. For example:

        i. On or about March 24, 2016, while employed as Company B's Director of Operations, LOPEZ texted Individual 2 (the owner of Company B), "I just had lunch with [Individual 3] and [Individual 1]. We are all in the same boat for staffing. Both [Individual 3] and [Individual 1] hired full time recruiters. **We all have a mutual agreement that with the pay increase, all 3 companies will stay within the same hourly rate.**" (emphasis added);

        ii. On or about September 30, 2016, LOPEZ texted Individual 1 (Company A's Director of Business Operations), "The new rate does allow us to hire more RN at competitive rates. I think we will offer 30-35 for RN." Individual 1 responded, "Ok.

5

How about we offer 27-30?" LOPEZ replied, "Sounds like a deal. 30 max. LPN. 21-23. Is our max." Individual 1 replied, "Same as us."

   c. implemented fixed wage rates in accordance with the agreement reached;

   d. collected, exchanged, monitored, and discussed information on RN and LPN wage rates for the purpose of monitoring and enforcing adherence to the agreement reached. For example:

    i. On or around August 17, 2018, after founding Company F, LOPEZ texted Individual 1 (Company A's Director of Business Operations), "I am entering the PDN world again in October. Just waiting on my Medicaid approval now. . . ." Individual 1 replied, "Good for you. We just have to play nice with rates. . . ." In turn, LOPEZ responded, "Yes. I'm staying with in our agreed rates;" and

    ii. On or around November 28, 2018, Individual 1 texted LOPEZ, "Hey Eddie, how much are you paying LPNs?" LOPEZ responded, "20-23. Which I think is the same as everyone in town." Individual 1 replied, "Ok. A nurse just said she was taking a job doing PDN at $30 per hour! I was hoping it wasn't you." LOPEZ responded, "Oh no. That's RN;" and

   e. paid RNs and LPNs at collusive and noncompetitive wage rates.

## TRADE AND COMMERCE

19. The business activities of LOPEZ and his co-conspirators were within the flow of, and substantially affected, interstate trade and commerce. For example:

   a. the reimbursement payments that Medicaid made to the co-conspirator companies for the services rendered by their respective nurses were funded in substantial part by the State of Nevada. The State of Nevada funding included a substantial portion of

6

federal funding from Medicaid, managed through the Centers for Medicare & Medicaid Services ("CMS"). CMS is a federal agency based in Baltimore County, Maryland, and part of the United States Department of Health and Human Services;

   b. federal Medicaid funds administered by CMS and DHCFP traveled into and out of Nevada to co-conspirator companies outside of Nevada to reimburse them for the services rendered by their respective nurses;

   c. the wage payments that the co-conspirator companies made to their respective nurses traveled in interstate trade and commerce; and

   d. the co-conspirator companies employed health care workers, including nurses, in multiple states.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

**DATED** this 15th day of March, 2023.

**A TRUE BILL:**


                /S/
            FOREPERSON OF THE GRAND JURY

JONATHAN S. KANTER
Assistant Attorney General

ANDREW MAST
ALBERT B. SAMBAT
PARADI JAVANDEL
MATTHEW CHOU
Trial Attorneys
Antitrust Division
U.S. Department of Justice

JASON M. FRIERSON
United States Attorney

ERIC C. SCHMALE
Assistant United States Attorney

8