UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| United States of America, | Case No. 2:23-cr-00055-CDS-DJA |
|---|---|
| Plaintiff, | **Report and Recommendation** |
| v. | |
| Eduardo Ruben Lopez, aka "Edward Lopez" | |
| Defendant. | |

    Defendant Eduardo Lopez is a healthcare business owner and healthcare industry corporate executive. (ECF No. 49 at 3). In 2023, the Government charged Lopez with a single count of price fixing, alleging that Lopez, in his positions as business owner and executive, conspired with competitors to fix the wages of nurses in the Las Vegas area. (ECF No. 1). A few months later, the Government charged Lopez with five counts of wire fraud in a superseding indictment, along with the price fixing charge. (ECF No. 49). To support the wire fraud charges, the Government alleges that Lopez sold the healthcare business he owned—Community Home Health Care, LLC—while he was under investigation for price fixing, but failed to disclose the investigation to the buyer, Solace Healthcare Nevada, LLC.

    Lopez moves to dismiss the wire fraud charges, arguing that the Government is attempting to criminalize conduct that falls outside the scope of the fraud statute, 18 U.S.C. § 1343, and impose criminal liability for what should be a purely civil matter. (ECF No. 166). The Government opposes, arguing that the charges are proper under the criminal fraud statute. (ECF No. 181). For the first time in reply, Lopez argues that the Government's theory raised in its response brief constructively amends the superseding indictment. (ECF No. 186). Because the Court finds that the superseding indictment properly alleges wire fraud charges, it recommends denying Lopez's motion to dismiss. Additionally, because Lopez raised his argument regarding

constructive amendment for the first time in reply, leaving the Government without the ability to respond, the Court declines to opine on this argument and does not base its recommendation on it.

### Background

In moving to dismiss the wire fraud charges, Lopez argues that the Government is attempting to charge him under an overbroad theory of wire fraud analogous to theories that the Supreme Court and Ninth Circuit have rejected. (ECF No. 166 at 7-10). He claims that his alleged misrepresentations do not constitute wire fraud because he did not deprive Solace of money or property and because his alleged misrepresentations did not go to the nature of the bargain. (*Id.*). So, he claims that any penalties for his alleged misrepresentations are civil, not criminal. (*Id.*). In support of his argument that civil remedies are more appropriate, Lopez points out that Solace ultimately received the benefit of its bargain (the business); that the contract specifically provided remedies for misrepresentations; that certain of the Government's language in the superseding indictment tracks the Restatement (Second) of Contracts; and that Solace already brought a civil action against him.[1] (*Id.* at 10-16).[2]

---

[1] Lopez asks the Court to take judicial notice of this case, *Solace Healthcare Nevada, LLC v. Community Health Services, LLC*, 2022-1142 (Ch. Dec. 12, 2022). (ECF No. 166 at 16). However, the Court need not take judicial notice of this action to decide this motion and declines to do so.

[2] Lopez also argues that "[t]here are a limited universe of scenarios where a non-disclosure can support a wire fraud charge, but it is only where there exists an independent duty to be a fiduciary that has been breached by the person so charged." (ECF No. 166 at 13). The Government argues in response that the superseding indictment alleges that Lopez made *misrepresentations*, not failures to disclose information that he was otherwise required to. (ECF No. 181 at 14). Lopez accepts the Government's argument as an "important concession" in a footnote in reply, but makes no further argument on this point. (ECF No. 186 at 6 n.1). However, Lopez does not move to dismiss the wire fraud charge on the ground that the Government brought the claim on a failure-to-disclose theory and neglected to allege that Lopez had a fiduciary duty to disclose. And even if he did, the parties' arguments are not fully developed. The Court does not address this line of argument further.

In response, the Government argues that its charges are not analogous to the wire fraud theories that the Supreme Court and Ninth Circuit have rejected, but instead fall squarely under the wire fraud statutes. (ECF No. 181 at 8, 10-14). The Government asserts that Lopez did not deprive Solace of some intangible right, but deprived Solace of money and that Lopez's misrepresentations go to the nature of the parties' bargain. (*Id.*). It adds that Lopez's request that the Court dismiss the charges based on the Government's purported theory of the case really asks the Court to invade the province of the jury. (*Id.* at 9-10). The Government asserts that Solace did not receive the benefit of its bargain because it received a business that was "saddled with criminal liability" and thus worth less than Lopez warranted it to be. (*Id.* at 13). It also argues that the existence of civil remedies and the concurrent civil lawsuit does not negate Lopez's criminal conduct. (*Id.* at 9-15).

Lopez reiterates in reply that his alleged misrepresentations are civil, and not criminal, in nature. (ECF No. 186 at 5-7). Because they are not properly criminal charges, Lopez argues that the Court cannot allow them to proceed to the jury at all, but must dismiss them at this stage. (*Id.*). He adds that the Government's argument that the business he sold would be worth less to Solace had Solace known of the investigation is a new theory and thus a constructive amendment to the superseding indictment, which amendment violates the Fifth Amendment. (*Id.* at 7-8).

## **Discussion**

The Court recommends denying Lopez's motion to dismiss. The Court finds that the superseding indictment is within the scope of 18 U.S.C. § 1343 and is thus properly a criminal charge. This is because the indictment alleges both that Lopez deprived Solace of money and that Lopez's misrepresentations went to the nature of the bargain.

Over the years, the Supreme Court and Ninth Circuit have qualified which misrepresentations constitute wire fraud, and which ones do not. *See Ciminelli v. United* States, 590 U.S. 391 (2020); *see U.S. v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992); *see United States v.*

*Yates*, 16 F.4th 256 (2021); *see United States v. Milheiser*, 98 F.4th 935 (9th Cir. 2024).  As discussed more fully below, together, these cases stand for the proposition that for a misrepresentation in the context of a sale to constitute wire fraud, it must: (1) deprive the victim of money or property, and not some intangible interest; and (2) go to the nature of the bargain and not some collateral matter.  Because the Government has alleged both, the Court recommends denying Lopez' motion to dismiss.

**I.  Lopez deprived Solace of money.**

18 U.S.C. § 1343 prohibits deception "for obtaining money or property…" *See* 18 U.S.C. § 1343.  The Supreme Court has interpreted the wire fraud statutes, including 18 U.S.C. § 1343, to prohibit only deceptive schemes to deprive the victim of money or property, not those to deprive the victim of "intangible interests unconnected to property." *United States v. Milheiser*, 98 F.4th 935, 942 (9th Cir. 2024) (quoting *Kelly v. United States*, 590 U.S. 391, (2020) and *Ciminelli v. United States*, 598 U.S. 306, 315 (2023)).  The Supreme Court and Ninth Circuit have clarified what constitutes an "intangible interest" over the years in *Bruchhausen*, *Yates*, and *Ciminelli*.

In *Bruchhausen*, the Ninth Circuit concluded that the right of technology manufacturers to control the destination of their products is an intangible interest. *See U.S. v. Bruchhausen*, 977 F.2d 464, 468 (9th Cir. 1992).  There, the defendant purchased technology from American manufacturers while assuring them that the technology would only be used in the United States, only to later ship the technology to Soviet Bloc countries. *Id.* at 466-67.  The Ninth Circuit declined to find that the deception was wire fraud, explaining that "[t]he manufacturers received the full sale price for their products; they clearly suffered no monetary loss…their actual loss was in control over the destination of their products after sale." *Id.*

In *Yates*, the Ninth Circuit determined that the right of a bank to accurate financial information, standing alone, is an intangible interest. *See United States v. Yates*, 16 F.4th 256,

265 (9th Cir. 2021). There, bank executives had misrepresented the financial status of the bank to the bank's board of directors and shareholders.[3] *Id.* at 263-64. The Government argued to the jury that the executives deprived the bank of accurate information, but nothing more. *Id.* at 265. The Ninth Circuit rejected that theory, concluding that although confidential business information could constitute property in some circumstances, "the right to make an informed business decision" and "the intangible right to make an informed lending decision" cannot…" *Id.*

In the most recent of these decisions, *Ciminelli*, the Supreme Court determined that the right of a victim to potentially valuable economic information necessary to make discretionary economic decisions is an intangible interest.[4] *See Ciminelli v. United States*, 598 U.S. 306, 313-16 (2023). There, the owner of a construction company schemed to ensure that his company would receive certain government contracts instead of other companies that had submitted bids. *Id.* at 309-10. The Supreme Court explained that because the theory under which the Government charged the defendant "treats mere information as the protected interest, almost any deceptive act could be criminal." *Id.* at 315.

Here, although Lopez summarizes the Supreme Court and Ninth Circuit's decisions in *Bruchhausen*, *Yates*, and *Ciminelli*, he does not analogize to them to make his argument that the Government's theory of the case is overly broad. But these cases are distinguishable from Lopez's and do not support his argument that his alleged misrepresentations deprived Solace of

---

[3] The executives also made misrepresentations to regulators and the public and the Government brought its fraud claims under two other theories. *Yates*, 16 F.4th at 263-64. However, the Court confines its analysis to the "accurate financial information" theory because it is the most on point and relevant to the Court's analysis here.

[4] The Supreme Court referred to this as the right-to-control theory because, under it, the jury could find that the defendant harmed the victim's "right to control its assets" if the victim was "deprived of potentially valuable economic information that it would consider valuable in deciding how to use its assets." *Id.* at 309-10.

1  an intangible interest.  Instead, they support the conclusion that Lopez deprived Solace of both
2  information *and* its money.

3        Unlike the manufacturer in *Bruchhausen* which received the full sale price of its products,
4  here, Solace did not receive the full value of the business it purchased.  Had Solace known that
5  the business it bought was actively under investigation, Solace may not have purchased it at all,
6  or may have offered less money to purchase it.  So, unlike the allegations in *Yates* that the bank
7  executives deprived the bank of financial information and nothing else, here the Government
8  alleges that Lopez deprived Solace of both accurate information about the investigation *and* the
9  purchase price of the company.  This is different than the circumstances in *Ciminelli*, where the
10 government would have awarded the same contract, no matter which construction company won
11 the bid.  Here, the information regarding the investigations was not "mere information," or
12 "*potentially* valuable economic information."  The fact that Solace specifically asked Lopez to
13 disclose this information during the course of their negotiations indicates that Solace considered
14 the information to be valuable and relevant to whether and how much money Solace spent.
15 Lopez thus deprived Solace of money, consistent with the requirements of the wire fraud statute.

16     **II.**    **Lopez's misrepresentations went to the nature of the bargain.**

17       Although a deception must deprive the victim of money or property to be criminalized
18 under the fraud statutes, not every lie that secures a sale constitutes fraud.  *See United States v.*
19 *Milheiser*, 98 F.4th 935, 944 (2024).  To constitute fraud, the lie must go to the nature of the
20 bargain.  *Id.*  "A misrepresentation will go to the nature of the bargain if it goes to price or
21 quality, or otherwise to essential aspects of the transaction." *Id.*

22       In *Milheiser*, the Ninth Circuit referenced the Ninth Circuit case *United States v. Tarallo*
23 to demonstrate when a misrepresentation goes to the nature of the bargain.  *Id.*

24         In *United States v. Tarallo*, 380 F.3d 1174 (9th Cir. 2004), for
25         example, we held that a defendant in California committed mail
        fraud when he falsely told potential investors that he was calling

> from an office in Washington, D.C., to make his operation seem bigger than it was. *Id.* at 1182-83…The defendant used the misrepresentation to secure investments in "businesses whose value and operations were fictitious." *Id.* at 1180. We rejected the idea that only "*direct* misrepresentations of the price, quality, or advantages of the transaction are material." *Id.* at 1183 (emphasis added). Instead, we held that materiality was satisfied because the "[d]efendant's misrepresentations were designed to give a false impression as to the size and nature of his own company as well as the business in which victims were being asked to invest." *Id.* Because investments are by nature speculative, whether the investment advisor has a large and successful operation will inform the nature of the bargain—it is relevant information about the value of the investor's purchase…

*Id.* at 944-45 (quoting and citing *United States v. Tarallo*, 380 F.3d 1174, 1180-83 (9th Cir. 2004)).

Here, Lopez's misrepresentations went to the nature of the bargain of the sale of his company because it went to the quality and other essential aspects of the transaction like potential liability. Just like the defendant in *Tarallo*, who told investors that he was calling from an office in Washington, D.C. to make his operation seem bigger than it was, Lopez withheld information about the investigation, presumably to make his company seem less risky of a purchase than it was. Just like the *Tarallo* defendant used the misrepresentation to secure investments in businesses whose value and operations were fictitious, Lopez used his misrepresentation to secure Solace's purchase of a company whose scope of potential liability was fictitious. Lopez's misrepresentations gave a false impression of the potential liabilities that Solace would be taking on in the purchase, and thus misrepresented relevant information about the value of that purchase.

Because Lopez's misrepresentations went to the nature of the parties' bargain, they fall squarely under the wire fraud statutes. Lopez's arguments that Solace received the benefit of its bargain, that the contract specifically provided remedies for misrepresentations, that certain of the Government's language in the superseding indictment tracks the Restatement (Second) of

Contracts; and that Solace already brought a civil action do not change this fact. The Court has already concluded that Solace did not receive the benefit of its bargain because it received a business with more potential liability and worth potentially less than what it bargained for. And just because the contract provided remedies for misrepresentations does not mean that those misrepresentations did not go to the nature of the bargain. Lopez does not provide any authority that the contract's provisions and remedies foreclose criminal liability for misrepresentations. Nor could the similarities between the language in the superseding indictment and the Restatement or Solace's concurrent civil litigation. And Lopez provides no authority for the proposition that his actions cannot form the basis for *both* civil and criminal liability.

### III. The Court declines to opine on Lopez's constructive amendment argument.

Lopez argues that the Government's assertion that the business was worth less or was of lower quality because of the investigations constitutes a constructive amendment of the indictment. Understandably, Lopez makes this argument for the first time in reply, arguing that the Government raised its lower-price and lower-quality theory in its response to Lopez's motion to dismiss. But, by raising this argument in reply, instead of in a separate motion, Lopez has deprived the Government of the opportunity to respond to it. So, the Court declines to consider Lopez's constructive amendment argument. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (explaining that "[t]he district court need not consider arguments raised for the first time in a reply brief.").

### Recommendation

**IT IS THEREFORE RECOMMENDED** that Lopez's motion to dismiss (ECF No. 166) be **denied.**

///

///

Page 8 of 9

**Notice**

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within (14) days after service of this Notice. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985), *reh'g denied*, 474 U.S. 1111 (1986). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: August 13, 2024

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE