UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| United States of America, | Case No. 2:23-cr-00055-CDS-DJA |
|---|---|
| Plaintiff, | |
| v. | Order |
| Eduardo Ruben Lopez, aka "Edward Lopez", | |
| Defendant. | |

Before the Court is Defendant Eduardo Lopez's Motion to Sever the Sole Antitrust Count (Count 1) From The Wire Fraud Counts (Counts 2 through 6). (ECF No. 165). The Government filed an Opposition (ECF No. 180) to which Lopez filed a Reply (ECF No. 187). Because the Court finds that the Government has met its burden of showing that joinder is permissible under Federal Rule of Criminal Procedure 8(a) and Lopez has not met his burden of showing that severance is necessary under Federal Rule of Criminal Procedure 14(a), it denies the Motion to Sever. (ECF No. 165).

**Background**

On March 15, 2023, a Federal Grand Jury returned a criminal indictment charging Lopez with a single antitrust count for violation of Section 1 of the Sherman Act under 15 U.S.C. Section 1 ("Antitrust Count"). (ECF No. 1). On September 6, 2023, a Superseding Indictment was returned charging Lopez with five additional counts of Wire Fraud in violation of 18 U.S.C. Section 1343 ("Wire Fraud Counts"). (ECF No. 49). The Superseding Indictment alleges that Lopez conspired with his competitors to fix the wages paid to nurses in Las Vegas (Antitrust Count). The Government alleges that after Lopez discovered the FBI investigation into the wage-fixing conspiracy, Lopez committed wire fraud by selling his company for $12.5 million dollars while concealing the FBI investigation from the buyer (Wire Fraud Counts). (*Id.*).

Lopez requests that the Court sever the Antitrust Count from the Wire Fraud Counts and conduct two trials. (ECF No. 165). According to Lopez, the Government cannot meet its Rule 8(a) burden to establish that the counts are properly joined because they are not of the same or similar character, they are not part of the same act or transaction, and there is no common scheme or plan linking the counts. Lopez argues that even if joinder were permissible, the Court must sever the counts under Rule 14 to avoid clear, manifest, or undue prejudice because of various evidentiary issues. These include the Government's potential use of confidential information admissible for the Antitrust Count but not the Wire Fraud Counts, its use of other evidence that would not be cross admissible in separate trials, its use of immunized witnesses which would not be admissible in separate trials, and the potential that the jury will confuse and cumulate evidence of one charge to another. Lopez concludes that severance would promote the appropriate balance of interests.

The Government opposes the motion, arguing that the offenses are properly joined under Rule 8(a) because they are a part of a common scheme or plan, they are a part of the same act or transaction, and because they are of the same or similar character. The Government further argues that Lopez cannot show manifest prejudice under Rule 14, and to the extent there is possible prejudice from overlap in evidence, that prejudice can be cured by jury instructions. Lopez replies that there is very limited evidence overlap and that the Antitrust Count evidence is unrelated to the Wire Fraud Counts evidence, that the unrelated offenses are not part of the same act or transaction or common scheme or plan, and that manifest prejudice separately requires severance.

**Discussion**

**I.     Rule 8 joinder of offenses.**

Federal Rule of Criminal Procedure 8 allows the joinder of two or more offenses in one indictment if the offenses charged "are of the same or similar character, or are based on the same

act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).  As a result, at least one of the three conditions specified in Rule 8 must be satisfied for a proper joinder.  Courts construe Rule 8 broadly in favor of initial joinder.  *See United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir. 1971).

Courts favor joinder to conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.  *See Bruton v. United States*, 391 U.S. 123, 134 (1968).  In determining the propriety of joining offenses in the indictment, the court must examine only the allegations in the indictment meaning that a valid basis for joinder should be discernible from the face of the indictment.  *See United States v. Jawara*, 474 F.3d 565, 572-73 (9th Cir. 2007).  Here, the Antitrust Count and the Wire Fraud Counts are properly joined under Rule 8(a) because they satisfy each of the three scenarios in which joinder is appropriate.

### A.     Same or similar character.

The Ninth Circuit "consider[s] factors such as the elements of the statutory offense, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims in assessing whether an indictment meets the 'same or similar character' prong of Rule 8(a)."  *Jawara*, 474 F.3d at 578.  The weight given to a particular factor depends on the context of the case and the allegations in the indictment.  *Id.*  "But the bottom line is that the similar character of the joined offenses should be ascertainable—either readily apparent or reasonably inferred—from the face of the indictment."  *Id.*

Here, considering the factors the Ninth Circuit has specified, the Court finds that they weigh in favor of finding the counts at issue to have a similar character.  Of course, the elements of wire fraud and antitrust are distinct and in this instance, so are the victims and modus operandi.  On the other hand, the evidence overlaps.  Examples of this overlapping evidence include

Lopez's interview with the FBI; his receipt of the grand jury subpoena and records provided in response to that subpoena; Lopez's conversations with his competitors showing his knowledge of the conspiracy; the execution of a search warrant for one of Lopez's email accounts and notification that he received that warrant; and Lopez's email to his competitor and co-conspirator regarding the FBI investigation and his instruction to delete the email.

Additionally, while Lopez argues that the Government has not sufficiently identified where Lopez is alleged to have committed the counts because the Superseding Indictment states that the offenses occurred in "the District of Nevada and elsewhere,"[1] the remainder of the Superseding Indictment provides that the acts underlying both the Antitrust Count and the Wire Fraud Counts primarily took place in Nevada. It alleges that Lopez was a resident of Las Vegas, that he worked as the executive director of a healthcare company's Las Vegas office, that he formed and later sold a company that provided private nursing services in Nevada, and that the individuals with whom he conspired were Las Vegas residents. (ECF No. 49 at 3-4). It also alleges that Lopez made false representations in connection with the sale of his company while in Nevada and that the buyer of his company wired the purchase price to a bank in Nevada. (*Id.* at 11, 14). The physical location factor weighs in favor of joinder.

Lopez's arguments regarding the temporal proximity between the counts also fail to persuade the Court. Lopez asserts that the facts underlying the Antitrust Count and the Wire Fraud Counts are years apart. But when considering the Government's investigation into the Antitrust Count, the timeline is much more truncated. Lopez received notice that a search warrant had been executed on his email account around April 7, 2021. (ECF No. 49 at 9). Around three

---

[1] The inclusion of "and elsewhere" makes sense given the nature of the offenses. Much of the Superseding Indictment's allegations reference electronic communications (like emails and texts) between Lopez and alleged co-conspirators. But, while the Superseding Indictment alleges that Lopez lived and worked in Nevada, it is possible that Lopez authored these emails and texts while outside the District. The "and elsewhere" language accounts for this possibility.

months later, Lopez began negotiations to sell his company. (*Id.*). During the negotiation process, on September 8, 2021, Lopez emailed with a co-conspirator regarding the investigation and instructed the co-conspirator to "[d]elete this once read." (*Id.* at 10). Two days later, Lopez signed a letter of intent for the sale of his company. (*Id.*). The temporal proximity factor weighs in favor of joinder.

Taking these factors together, the Court finds that they weigh in favor of joinder. Because the Government has met this prong of the Rule 8(a) analysis, it has sufficiently shown that joinder is appropriate. The Government also meets the other prongs.

### B. Same act or transaction.

In determining whether two or more offenses are based on the "same act or transaction," courts look for a logical relationship between the offenses. *U.S. v. Sarkisian*, 197 F.3d 966, 975 (9th Cir. 1999).[2]

> We have stated that "transactions" has a flexible meaning and that the existence of a "series" depends on the degree to which the events are related. Mere factual similarity of events will not suffice. Rather, there must be some greater "logical relationship" between the occurrences.[3]

*Id.* at 976 (quoting *United States v. Ford*, 632 F.2d 1354, 1371-72 (9th Cir. 1980), *overruled on other grounds*, *United States v. De Bright*, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc)).

---

[2] Rule 8(a) was amended after the *Sarkisian* decision, so the *Sarkisian* court references the old language. *See* Fed. R. Civ. P. 8(a) advisory committee's note to 2002 amendment. However, that amendment was "stylistic only," so *Sarkisian*'s discussion of this portion of the Rule is still relevant.

[3] The *Ford* court went on to explain that "[s]uch a logical relationship may be shown by the existence of a common plan, scheme, or conspiracy," which is the third prong of the Rule 8(a) analysis. *See* Fed. R. Civ. P. 8(a); *Ford*, 632 F.3d at 1371-72. As outlined below, the second and third prong of the analysis are related.

In *United States v. Sarkisian*, the Ninth Circuit declined to find a "logical relationship" between a count related to a conspiracy to steal cars and parts and a count related to extortion committed by some of the same individuals involved in the car conspiracy in an attempt to collect an unrelated debt. *Id.* It found that "[t]he only meaningful connections between the extortion count and the car counts are that some of the same defendants were charged in both counts, and the extortion incident occurred while the car scheme was ongoing." *Id.* The court explained, "[t]his is not an instance where one criminal activity naturally flows from separate criminal conduct." *Id.*

Here, there is a logical relationship between the Antitrust Count and the Wire Fraud Counts and so, they are based on the "same act or transaction" for the purposes of Rule 8(a). The Court is not convinced by Lopez's argument that the only thing connecting the Antitrust Count and the Wire Fraud Counts is Lopez himself. Instead, this case is distinguishable from *Sarkisian* because the criminal activity alleged in the Wire Fraud Counts naturally flows from the criminal activity alleged in the Antitrust Count. As explained more fully below, the Antitrust Count behavior gave rise to the Wire Fraud Count behavior because Lopez is alleged to have lied to the buyer of his company to cover up the fact that he was being investigated for antitrust activities. Simply stated, had the facts underlying the Antitrust Count not occurred, there would be no Wire Fraud allegations. The Government has sufficiently met this prong of the Rule 8(a) analysis.

### C.   Connected with or constituting parts of a common scheme or plan.

The Ninth Circuit generally permits joinder of counts for a "common scheme or plan" when they grow out of related transactions. *Jawara*, 474 F.3d at 574. The "transaction" language that the Ninth Circuit references is similar to that in the second prong of the Rule 8(a) analysis. *Compare Jawara*, 474 F.3d at 574 ("courts generally permit joinder under this test where the counts 'grow out of related transactions'") *with Sarkisian*, 197 F.3d at 975 ("[i]n determining whether two or more offenses are part of the [same act or transaction], this court looks for a

'logical relationship' between the offenses…[which] may be shown by the existence of a common plan, scheme, or conspiracy"). And like the second prong analysis, when considering the third prong, courts "ask whether commission of one of the offenses either depended upon or necessarily led to the commission of the other; proof of one act either constituted or depended upon proof of the other." *Jawara*, 474 F.3d at 574 (quoting *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996)) (cleaned up).

Here, the Government has demonstrated that joinder is proper under the third prong of Rule 8(a) for similar reasons that it has demonstrated that joinder is proper under the second. The Antitrust Count and Wire Fraud Counts grew out of related transactions because the Superseding Indictment alleges that Lopez's involvement in the antitrust conspiracy led to, and was the reason behind, his wire fraud conduct. The Superseding Indictment states that "[a]fter Lopez became aware of the federal criminal investigation into LOPEZ and Company F, LOPEZ sought to sell Company F for a substantial amount of money." (ECF No. 49 at 9). And as stated above, Lopez's commission of the Antitrust Count led to his commission of the Wire Fraud Counts; proof of the Wire Fraud Counts will partially depend on the Antitrust Counts. The Government has shown that the Antitrust Count and the Wire Fraud Counts are appropriately joined under Rule 8(a). The Court denies Lopez's motion to sever under Rule 8(a).

II.     **Rule 14 severance of offenses.**

Federal Rule of Criminal Procedure 14 provides relief from joinder of offenses under Rule 8(a) through ordering "separate trials of counts" if joinder of the offenses for trial "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). Thus, "[e]ven if joinder is permissible under Rule 8, a party who feels prejudiced by joinder may move to sever pursuant to [Rule] 14." *United States v. Smith*, 795 F.2d 841, 850 (9th Cir. 1986). Joinder of offenses may prejudice a defendant in that:

> (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.

*United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987) (quoting *Drew v. United States*, F.2d 85, 88 (D.C. Cir. 1964)).

To warrant severance, the defendant bears the heavy burden of demonstrating that "a joint trial is so "manifestly prejudicial" that the judge is required to exercise his or her discretion in only one way - by severing the trial. *Johnson*, 820 F.2d at 1070; *see also United States v. Davis*, 663 F.2d 824, 832-33 (9th Cir. 1981); *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). Rule 14 is designed to promote economy and efficiency by avoiding multiple trials. *See Zafiro v. United States*, 506 U.S. 534, 540 (1993). The Court is required to weigh the potential for prejudice against the concern for judicial economy. Accordingly, a defendant must show prejudice of "such magnitude" that it would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. *See United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir. 1986). Even if there is a serious risk of prejudice, Rule 14 does not require severance if other relief can be tailored. *Zafiro*, 506 U.S. at 539. The court has wide discretion in ruling on a severance motion as an aspect of its inherent right and duty to manage its own calendar. *See Opper v. United States*, 348 U.S. 84, 95 (1954); *see also United States v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978).

Here, Lopez has not carried his heavy burden of demonstrating that a joint trial would be so manifestly prejudicial that severance is required. His five arguments regarding why joinder would be prejudicial each fail to persuade the Court. So, the Court denies his motion.

### A. Evidence related to privileged communications.

Lopez asserts that, because certain of the evidence that the Government seeks to use in supporting the Wire Fraud Counts is privileged, the introduction of the evidence in the same trial as the Antitrust Count will allow the jury to speculate as to the reasons why Lopez hired counsel. (ECF No. 165 at 21). However, as the Government points out in response, the parties have raised the issue of privileged material in separate motions. The Government cannot use the documents that are ultimately privileged in any trial, let alone a joint trial. And any potential prejudice arising from non-privileged documents, like other evidence, can be cured with a jury instruction.

### B. Cross-admissible evidence.

Lopez argues that none of the evidence supporting the Antitrust Count would be admissible to support the Wire Fraud Counts if the trials were severed. (ECF No. 165). However, even though some of the evidence does not overlap, as outlined above, some of it does. This also weighs against Lopez's argument that there is no compelling judicial economy for joinder because of a lack of overlapping evidence. Additionally, Lopez does not identify any particular defenses that he might present as to any particular count or specific reasons for testifying about one offense but not the others. *See United States v. Bronco*, 597 F.2d 1300, 1303 (9th Cir. 1979) (explaining that an accused should identify specific testimony to justify severance); *see United States v. Nolan*, 700 F.2d 479, 483 (9th Cir. 1983) (explaining that, to justify severance, a defendant "must show that he has important testimony to give on some counts and a strong need to refrain from testifying on those he wants severed"). While an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence, a fair trial does not include the right to exclude relevant and competent evidence. *See Zafiro*, 506 U.S. at 540. The Court will not speculate on the defenses that might be presented. But without the benefit of the identification of the defenses or testimony

to be presented, the Court is unable to determine that a clear, manifest risk of prejudice to Lopez outweighs the judicial economy of a joint trial on all the counts.

### C. *Immunized witnesses.*

Lopez argues that the evidence of immunized co-conspirator testimony is particularly powerful and so, allowing it in a trial over both the Antitrust Count and the Wire Fraud Counts would be particularly prejudicial. (ECF No. 165 at 24). This argument is speculative, however. As the Government points out, Lopez has provided no authority for his argument and has not explained exactly how co-conspirator evidence regarding the Antitrust Count will confuse the jury or turn it against him other than his argument that the testimony is "powerful."

### D. *Jury use of evidence for one charged offense to infer criminality on the other.*

Lopez argues that if the jury concludes that he is guilty of the Antitrust Count, then it is more likely to conclude that he is also guilty of the Wire Fraud Counts, and vice versa. (ECF No. 165 at 25). However, Lopez merely asserts a potential for prejudice because the jury may hear evidence of multiple separate offenses and determine that he is predisposed to commit all the offenses. The Court finds that the potential risk for such spillover prejudice can be eliminated by a cautionary jury instruction. *See Zafiro*, 506 U.S. at 539; *see also United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994) (collecting cases regarding jury instructions concerning compartmentalizing evidence and spillover prejudice). The Supreme Court has recognized that juries are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (U.S. 1987).[4] Accordingly, when a court charges the jury with the elements of each count separately,

---

[4] The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process. *Richardson,* 481 U.S. at 211.

such action militates against a finding of prejudice. *See United States v. Matta-Ballesteros*, 71 F.3d 754, 771 (9th Cir. 1995).

### E. *Jury confusion and culmination of evidence.*

Lopez argues that the jury will confuse and cumulate the evidence of the Antitrust Counts and the Wire Fraud Counts in a prejudicial manner. (ECF No. 165 at 26). But like his other arguments, Lopez does not prove authority for this proposition or make a showing beyond his speculative concerns why this potential conflation or confusion would be so manifestly prejudicial as to warrant severance. Additionally, to the extent that the jury might cumulate evidence or infer guilt as a result of the joinder, such potential prejudice can be cured by jury instructions. As the Court has already noted, juries are presumed to follow instructions.

In conclusion, the Court carefully considered Lopez's proffered reasons for severance. Ultimately, it finds that the Government has met its burden of showing that joinder is appropriate. And Lopez has not met the "heavy burden" of demonstrating that joinder of the counts for trial is so manifestly prejudicial that severance is required.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Sever Counts (ECF No. 165) is **denied.**

DATED: August 13, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE