# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No. 2:23-cr-00055-CDS-DJA |
| Plaintiff | **Order Sustaining Objection to the Order of the United States Magistrate Judge and Granting the Government's Motion to Determine Waiver** |
| v. | |
| Eduardo Ruben Lopez, | |
| Defendant | [ECF Nos. 114, 228, 256] |

This is an antitrust and wire fraud criminal action brought by the Department of Justice against defendant Eduardo Ruben Lopez. As set forth in the superseding indictment, Lopez is charged with violating Title 15, United States Code, Section 1 (the Sherman Act) and five counts of wire fraud, in violation of Title 18, United States Code, Section 1343. Superseding indictment, ECF No. 49. On March 15, 2024, the United States filed a motion to determine that Lopez had waived attorney-client privilege with respect to certain materials shared with third parties. Mot., ECF No 114. Lopez opposes the motion. Opp'n, ECF No. 129.

After briefing was complete, Magistrate Judge Daniel J. Albregts held oral argument on the motion, as well as two others. Mins. of proceedings, ECF No. 228. During the hearing, Judge Albregts denied the motion to determine waiver. H'rg tr., ECF No. 246 at 14. The government objects to that order (ECF No. 256) and Lopez opposes those objections (ECF No. 286). For the reasons set forth herein, I sustain the government's objections to the order denying its motion to determine waiver of the attorney-client privilege and reverse the magistrate judge's order.

## I.    Legal standard

When reviewing the order of a magistrate judge, the order should only be set aside if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); LR IB 3-1(a); 28 U.S.C. § 636(b)(1)(A); *Laxalt v. McClatchy*, 602 F. Supp. 214, 216 (D. Nev. 1985). The "clearly erroneous" standard applies

to a magistrate judge's factual findings, whereas the "contrary to law" standard applies to a magistrate judge's legal conclusions. *See, e.g., Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). A magistrate judge's finding is "clearly erroneous" if the district judge has a "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "[R]eview under the 'clearly erroneous' standard is significantly deferential." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States v. Desage*, 229 F. Supp. 3d 1209 (D. Nev. 2017) (quotation omitted); *see also Grimes*, 951 F.2d at 241 (finding that under the contrary to law standard, the district judge reviews the magistrate judge's legal conclusions de novo).

## II.    Background[1]

In July 2021, long after Lopez was on notice of a pending federal investigation,[2] Lopez began negotiations to sell his home health care nurse business, Community Home Health Care (CHH) to Solace Healthcare Nevada, LLC (Solace). As part of that business transaction, Solace hired a consulting firm, Riveron Consulting LLC (Riveron), to conduct due diligence into CHH, which included Riveron making several requests for certain information from CHH. Thereafter, Riveron provided a report to Solace that assessed CHH's financial health. The report was based on documents provided by and conversations with Lopez, as well as observations made by Riveron's team during their investigation. Some of the information and document requests made by Solace and Riveron were related to any ongoing legal liabilities, including whether there was any "threatened, ongoing, or concluded civil litigation or government investigation." ECF No. 114

---

[1] This summary is drawn from the government's motion to determine waiver as Lopez did not object to the government's summary. *See* ECF No. 114 at 2–5. The court notes that Lopez also included a section titled "correcting misstatements" in his opposition to the motion. ECF No. 129 at 11–12. That section does not challenge the timeline of when Lopez learned he was under investigation, nor does it challenge any representation that the Records were disclosed to a third party.

[2] The government contends that the investigation went overt on October 30, 2019. ECF No. 114 at 2. The government also contends that Lopez was noticed that the government obtained a search warrant over one of his Gmail accounts in April of 2021. *Id.*

at 3. The government contends that Lopez misrepresented that there were no such threatened or pending government investigations into him or CHH, despite knowing that he and CHH had been under federal criminal investigation since October 2019.[3] Shortly after Riveron produced their report, the sale of CHH and Solace commenced.

In December 2023, the government requested billing records (hereinafter "the Records") obtained during the due diligence process.[4] Solace complied. Upon receipt of the records, the government produced them to Lopez without reviewing them to allow him to the opportunity assert any privilege over the materials. On February 13, 2024, Lopez produced back to the government the Records with significant redactions, asserting the materials were protected by the attorney-client privilege.

The parties met and conferred about the Records as the government questioned Lopez's blanket assertion of privilege. The parties were unable to reach a resolution so the motion to determine waiver was filed. In sum, the government argues that Lopez waived any privilege over the Records because he voluntary disclosed them to Solace and Riveron. *See generally* ECF No. 114. Lopez refutes this argument, contending that the Records are, in fact, privileged material, and further that the Records are inadmissible. *See generally* ECF No. 129.

The government argues that the order finding the Records are privileged is contrary to the law because the magistrate judge failed to apply binding precedent on the issue of waiver and erroneously applied selective waiver and determined the common interest doctrine applied. ECF No. 256 at 11–22. The government further contends that confidentiality agreements do not retroactively apply privilege to documents that were disclosed to third parties. *Id.* at 22–27. In response, Lopez argues that the magistrate judge's determination that Lopez did not waive privilege and application of the common interest privilege is neither contrary to the law nor clearly erroneous, and thus the government's objections should be overruled. ECF No. 286 at 9–

---

[3] The government notes that these alleged fraudulent responses "underpin the wire fraud charges in Counts Two through Six in the Superseding Indictment." ECF No. 114 at 3.

[4] Lopez's opposition reveals the Records are from three law firms. *See* ECF No. 129 at 3, 4.

11; 14–17. Lopez further argues that the government disregards the confidentiality agreements and misapplies general contracting principles. *Id.* at 12–14. Finally, Lopez asserts the common-interest doctrine indeed applies in this case and that the government's selected waiver argument is inapplicable. *Id.* at 15–17.

## III.    Discussion

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (same). The burden of establishing privilege lies with the party asserting it. *Richey*, 632 F. 3d at 566. The Ninth Circuit has established an eight-part test to determine whether the privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in [their] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at [the legal advisor's] instance permanently protected (7) from disclosure by [the client] or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)). Further, "[t]he attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice," *Richey*, 632 F.3d at 566, as well as to communications with third parties "acting as agent" of the client. *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978). As an example, in the corporate context, communications between an outside consultant and a company's corporate counsel may fall within the scope of the attorney-client privilege if the consultant acts as a "functional employee" to the company by providing information that facilitates or relates to obtaining of **legal advice**. *See, e.g., Graf*, 610 F.3d at 1159 (concluding that an outside consultant's role in the company was that of a functional employee, thus implicating the attorney-client privilege); *Genentech, Inc. v. Trs. of the Univ. of Pa.*, 2011 WL 5079531, *2 (N.D. Cal. Oct. 24, 2011).

However, if the third-party consultant is retained by the client for non-legal purposes, the privilege does not apply. *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536 at *7 (N.D. Cal. June 16, 2006). Vital to a determination that the privilege applies is whether the consultant was retained "for the purpose of obtaining legal advice." *Id.* at *6 (internal quotation marks and citation omitted).

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (quotation marks and citation omitted). The Ninth Circuit has made clear that "the privilege which protects attorney-client communications may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Thus, a party claiming the attorney-client privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *Martin*, 278 F.3d at 1000. Blanket assertions of attorney-client privilege are "extremely disfavored." *Id.*

A party can waive privilege in several ways. *Pac. Pictures Corp. v. United States Dist. Court*, 679 F.3d 1121, 1126 (9th Cir. 2012) (citations omitted). One such way is by voluntary disclosure to third parties. Such disclosure "generally destroy[s] the privilege." *Id.* at 1126–27. "One of the elements that the asserting party must prove is that it has not waived the privilege." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). Indeed, it is well established that voluntary disclosure of privileged or work product information to third parties constitutes a waiver and destroys privilege claims. *Id.* at 24.

Applying the principles, I find that Lopez voluntarily disclosed the Records[5] to a third-party. Consequently, any privilege over the Records was waived. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (an express waiver of the privilege "occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public"); *see also United States v. Deloitte LLP*, 610 F.3d 129,

---

[5] There is seemingly no dispute that the Records would be covered by the attorney-privilege.

140 (D.C. Cir. 2010) ("Voluntary disclosure waives the attorney-client privilege because it is inconsistent with the confidential attorney-client relationship. Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."); *Cottillion v. United Ref. Co.*, 279 F.R.D. 290, 298 (W.D. Pa. 2011) ("[I]f an otherwise privileged communication is disclosed to a third party by the client, then the privilege has been waived."); *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) ("Knowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option.").

Lopez's argument that the confidentiality agreement,[6] set forth in a non-disclosure agreement (NDA) dated June 22, 2021, somehow saves the privilege is unconvincing. *See* NDA, ECF No. 130; ECF No 286-2. First, Lopez does not cite to any authority that a confidentiality agreement would somehow extend attorney-client privilege over voluntarily disclosed documents. Further, although the plain language of the NDA requires the signatories to maintain disclosed documents in confidence (*see* ECF No. 130 at 2–3) it makes clear that the NDA was not created to protect privileged material. Rather, the NDA was signed "to ensure the protection and preservation of confidential and/or proprietary information disclosed or made available, or to be disclosed or made available *during the course of such due diligence or potential transaction.*" *Id.* at 2 (emphasis added). Thus, the purpose of the NDA was to facilitate the dissemination of documents and information between the parties during the due diligence process, not for some legal purpose. Moreover, the NDA did not state that any of the material identified as "confidential" was covered by privilege of any kind. *Cf. City of Rome, Ga. v. Hotels.com, LP*, 2012 WL 13024255, at *3 (N.D. Ga. June 6, 2012) (quoting court approved discovery sharing protocol, which provided that "[a]ny production made pursuant to this Order does not waive

---

[6] In response to the government's motion to determine, Lopez's questioned the government's representation that there was no other NDA between Solace and Lopez, noting the lack of one is "unusual" since acquisitions usually includes an NDA. ECF No. 286 at 12. As the person asserting the privilege, it was Lopez's burden to produce an NDA that might address attorney-client privilege.

any privilege, protection or confidentiality designation, pursuant to Fed. R. Evid. 502(d)").

Rather, it enumerates what constitutes "confidential information," none of which is identified as

attorney-client privileged material. ECF No. 130 at 2; ECF No 286-2 at 2. If it was Lopez's

intention to include privileged information in the NDA, and to maintain privilege over the

Records, it would likely explicitly state so, or, at a minimum, make some reference to doing so. It

would not be silent on the issue.

The letter of intent (LOI) suffers the same deficiencies. LOI, ECF No. 130-1, ECF No. 286-

3. On September 10, 2021, the LOI was created as part of the process for Lopez to sell CHH to

Solace, meaning it was created for a financial, *not a legal*, purpose. And although the LOI requires

the parties to the letter to maintain information in confidence, it does not identify anything as

privileged, much less claim privilege is maintained over any of the disclosed records. *See generally*

ECF No. 130-1; ECF No. 286-3. Section 9.12 of the December 23, 2021 Membership Interest

Purchase Agreement (aka "the Acquisition Agreement" between CHH and Solace) does not

change my analysis. As relevant here, that section reads:

> (b) All privileged communications between the Seller Group or the Company, on
> the one hand, and Seller Group Law Firm, on the other hand, relating to the
> negotiation, preparation, execution and delivery of this Agreement and the
> consummation of the transactions contemplated hereby (the "Privileged
> Communications") shall be deemed to be attorney-client privileged and the
> expectation of client confidence relating thereto shall belong solely to the Seller
> Group and shall not pass to or be claimed by Buyer or the Company. Accordingly,
> Buyer and the Company shall not have access to any Privileged Communications
> or to the files of Seller Group Law Firm relating to such engagement from and after
> Closing and may not use or rely on any Privileged Communications in any claim,
> dispute, action, suit or proceeding against or involving any of the Seller Group.

*See* Def. Ex. C, ECF No. 286-4 at 2. The problem with Lopez's argument that this provision in the

Membership Agreement demonstrates that the Records are privileged is the fact that it was

executed in December 2021, *months* after the Records were voluntarily disclosed to Riveron as

part of the due-diligence process. *See Fujisawa Pharm. Co. v. Kapoor*, 162 F.R.D. 539, 541 (N.D. Ill.

1995) ("Voluntary disclosure of privileged information about a matter waives the privilege as to

all information on the same subject matter."). As the party asserting the privilege, Lopez was obligated to establish the privileged nature of the Records and, if necessary, to segregate any privileged information from information that was not privileged. *See* 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 503.20[4][b] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2009) (discussing rule that blanket claims of privilege are generally disfavored). Instead of doing so, Lopez voluntarily disclosed them to a third party, all while knowing he was under federal investigation. The after-the-fact Membership Agreement does not resurrect privilege upon his voluntary disclosure of the Records. *See Ruehle*, 583 F.3d at 612 (finding defendant failed to establish his claim of privilege over information that was voluntarily disclosed to auditors).[7]

Lopez waived privilege by voluntarily disclosing the Records during the due diligence phase. *See Bowne, Inc. v. AmBase Corp*, 150 F.R.D. 465, 480–81 (S.D.N.Y. 1993) ("Even if the disclosing party requires, as a condition of disclosure, that the recipient maintain the materials in confidence, the agreement does not prevent the disclosure from constituting a waiver of the privilege; it merely obligates the recipient to comply with the terms of any confidentiality agreement."); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427 (3rd Cir. 1991) (where stipulated court order memorialized confidentiality agreement, court noted that, "under traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else"). The NDA, letter of intent, and their confidentiality sections, as well as the attorney-client privilege section in the Membership Interest Purchase agreement, do not change this fact, nor my analysis.

---

[7] Other courts have found waiver of privilege in similar circumstances. *See Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 697 (S.D. Fla. 2009) (finding waiver occurred when a client's attorney forwarded instructions to various analysts and investment bankers who participated in the due diligence process, constituting a waiver of the privilege); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) ("[S]ubsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege.").

Finally, Lopez's argument for application of the common interest privilege fails. The common-interest doctrine is not an independent privilege. Rather, it is "a narrow exception to the general rule that disclosing information to a third party constitutes a waiver of the attorney-client privilege." *Integrated Glob. Concepts, Inc. v. j2 Glob., Inc.*, 2014 WL 232211, at *2 (N.D. Cal. Jan. 21, 2014) (citation omitted). To successfully invoke the doctrine, the party asserting the privilege must show three things: (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (cleaned up). "The privilege does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects." *Id.* (cleaned up). Importantly, for the privilege to apply, the parties must have "a common legal, as opposed to commercial, interest." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007) (cleaned up). This is consistent with when application of the doctrine should apply: (1) when communications are "part of an on-going and joint effort to set up a common defense strategy," *Rembrandt Pat. Innovations, LLC v. Apple Inc.*, 2016 WL 427363, at *7 (N.D. Cal. Feb. 4, 2016), or (2) to facilitate communications between persons and "their respective attorneys and with each other to more effectively prosecute or defend their claims." *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (emphasis added); *see also Regents of Univ. of Cal. v. Affymetrix, Inc.*, 326 F.R.D. 275, 281 (S.D. Cal. 2018) ("While this Court was not able to locate any Ninth Circuit precedent that explicitly requires both parties be represented by separate counsel, [neither] was there any precedent that extended the benefits of the common interest exception to the attorney client privilege when the disclosure at issue involved an unrepresented third-party employed by a separate entity.")

I find application of the doctrine here would be improper. First, Lopez's voluntary disclosure of the Records was related to a *commercial interest*, not a legal one. Second, Solace and Lopez were not working together on a joint or common defense strategy. To the contrary, Solace

was vetting Lopez's company to determine if they should buy CHH. While certainly both parties were hopeful the result of due diligence would culminate in a mutually beneficial result (i.e. the sale/purchase of CHH), that is simply not the sort of joint defense or strategy contemplated by the doctrine. Further, Lopez's disclosure of the Records to a third-party waived privilege. *See Gonzalez*, 669 F.3d at 982 ("Any member of a common-interest arrangement may invoke the privilege against third persons, even if the communication in question was not originally made by or addressed to the objecting member…. Any member may waive the privilege with respect to that person's own communications.") (quoting Restatement (Third) of the Law Governing Lawyers § 76 (2000)). And finally, Lopez's voluntary disclosure was not to counsel, but a third party hired by Solace to conduct due diligence on their behalf, so the Records were not communications made between attorneys.

Considering that the attorney-client privilege "impedes full and free discovery of the truth," and is therefore "strictly construed," *Weil*, 647 F.2d at 24, I find that Lopez has failed to meet his burden establishing that the Records are protected by the attorney-client privilege considering his voluntary disclosure to a third party. Accordingly, the government's objections to the order finding the privilege did apply are sustained. The order determining Lopez did not waive privilege is reversed.[8] Lopez is ordered to turn over the Records to the government by February 3. 2025.

**IV. Conclusion**

IT IS HEREBY ORDERED that the government's objection **[ECF No. 256]** to Magistrate Judge Albregts's order declining to find that Lopez waived privilege over the Records is **SUSTAINED**. Any attorney-client privilege that could have been asserted over the Records was waived when they were voluntarily disclosed to a third-party by Lopez. Thus Judge Albregts's August 6, 2024, order denying the government's motion to determine waiver of attorney-client

---

[8] The order is only reversed as set forth in this order.

privilege **(ECF No. 228) is REVERSED**, as set forth in this order. Accordingly, the government's motion to determine waiver **[ECF No. 114] is GRANTED**.

       IT IS FURTHER ORDERED that Lopez must turn over the Records to the government by February 3, 2025.

       Dated: January 22, 2025

_____
Cristina D. Silva
United States District Judge