UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>               Plaintiff<br><br> v.<br><br>Eduardo Ruben Lopez,<br><br>               Defendant | Case No. 2:23-cr-00055-CDS-DJA<br><br>**Order Addressing Government's<br>Motions to Exclude Expert Witnesses**<br><br>[ECF Nos. 585, 588, 594] |

       Pending before the court are three motions to exclude[1] proposed defense experts Suzanne Stuckwisch, David Lampron, and Wayne Brown filed by the government on March 27, 2025. Mots., ECF Nos. 585, 588, 594. Lopez filed oppositions to each motion on March 31, 2025. Opp'n, ECF Nos. 602, 603, 604. The court addresses each motion separately, and for the reasons herein I grant in part and defer in part on the motion to exclude Suzanne Stuckwisch, I grant in part, deny in part, and defer in part on the motion to exclude David Lampron, and I grant in part and deny in part the motion to exclude Wayne Brown.

**I.    Applicable Law**

       As a prerequisite to admissibility of expert testimony, the proposed testimony must help the jury "understand the evidence" or "determine a fact in issue." Fed. R. Evid. 702(a). If the expert's testimony does not inform any issue in the case, then the testimony is not relevant and therefore not admissible, and the court need not consider the reliability of that testimony. *Id.* at 702(b)–(d); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (discussing Rule 702(a) as a rule primarily about relevance, and that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (internal citation omitted).

---

[1] The government moved to exclude a fourth witness, Dr. Becker. However, the court resolved that motion on the record on Friday, March 28, 2025. Mins. ECF No. 591.

Rule 702 of the Federal Rules of Evidence establishes that expert testimony should be admitted where (1) the expert's specialized knowledge is helpful to the trier of fact, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. In short, these basic requirements are qualification, reliability, and helpfulness. *A.B. v. Cnty. of San Diego*, 2020 U.S. Dist. LEXIS 136761, at *3 (S.D. Cal. July 31, 2020) (citing *Daubert*, 509 U.S. at 592).

Thus, the trial court must make sure that expert testimony is not only relevant but reliable. *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188–89 (9th Cir. 2019). This is the court's "gatekeeping function," and the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Importantly, *Daubert* does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Daubert*, 509 U.S. at 589–90).

II.     Discussion

The government moves to exclude three witnesses Lopez has identified as experts. The court addresses each proposed expert in turn.

**A. The motion to exclude Suzanne M. Stuckwisch, M.B.A., M.S. Economics, is granted in part and deferred in part.**

The government moves to exclude the following opinions proffered by Ms. Suzanne M. Stuckwisch as irrelevant, unreliable, and unduly prejudicial. *See* mtn. to exclude, ECF No. 585. Specifically, the government moves to exclude the following opinions:

1. Registered nurses and licensed practical nurses have numerous choices of employers in the Las Vegas market (ECF No. 586, ¶ 34);

2. Nurses choose where to work based on more than just the wage rate (*id.* at ¶ 35);
3. There is significant nurse mobility in the Las Vegas market (*id.* at ¶ 36);
4. Nurse compensation is "complex and nuanced" (*id.* at ¶ 37);
5. The wage data does not support the allegation that the co-conspirators fixed wages rates "within a range," during the alleged conspiracy period of March 2016 to May 2019 (*id.* at ¶ 31);
6. The data and evidence do not support the conclusion that the co-conspirator companies implemented the alleged fixed wage rate during the conspiracy period (*id.* at ¶ 38);
7. The data and evidence do not support the conclusion that the co-conspirator companies enforced adherence to the alleged wage-fixing agreement (*id.* at ¶ 39);
8. Maxim Healthcare Services ("Maxim"), one of the alleged co-conspirator companies, did not implement the alleged agreement (*id.* at ¶ 44);
9. The Las Vegas home healthcare labor market is not conducive to collusion (*id.* at ¶ 30); and
10. The wage data, public data, other evidence, and general economic literature do not support the allegation that the co-conspirator companies paid RNs and LPNs at collusive and noncompetitive rates (*id.* at ¶ 33).

*See* ECF No. 585. The government argues that Ms. Stuckwisch's methodology for performing her analysis of the wage date is neither reliable nor verifiable, and further that the proposed testimony is likely to confuse or mislead the jury. *Id.* In opposition, Lopez argues that Stuckwisch's proposed expert testimony is relevant and reliable, noting she will testify about the "economic structure of the Las Vegas Home Health labor market is inconsistent with the alleged agreement to fix wages," and that her testimony will "assist the jury in understanding the essential context for the government's allegation of conspiracy—the economic structure of the market for hiring and compensating LPNs and RNs," and "will assist the jury in understanding how the wage data in the case relates to the alleged agreement and is inconsistent with the existence of such an agreement." Opp'n, ECF No. 604.

As a threshold matter, I find that Stuckwisch's opinion that registered nurses and licensed practical nurses have numerous choices of employers in the Las Vegas market, that nurses choose where to work based on more than just the wage rate, and that there is significant nurse mobility in the Las Vegas market are irrelevant as they do not have any tendency to make a fact of consequence in this case more or less probable. Fed. R. Evid. 401. Accordingly, if Ms. Stuckwisch is permitted to testify, she is precluded from testifying about these topics.

The superseding indictment alleges that Lopez and his co-conspirators "knowingly entered into and engaged in a price-fixing conspiracy to suppress and eliminate competition for the services of nurses employed by the co-conspirators companies by agreeing to fix the wages of those nurses." Sup. indictment, ECF No. 49 at 5, ¶ 17. It does not allege a specific range, nor is the government requirement to prove a range. Indeed, 15 U.S.C. § 1 states "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." The statute does not require a specific range, just that there is, as relevant here, a conspiracy to restrain trade or commerce. Stuckwisch's proposed expert testimony may be relevant, to include testifying regarding RN and LPN wage rates throughout the alleged conspiracy and among the alleged co-conspirators. However, because the court has questions regarding her conclusions and the principles and methodology utilized to reach those conclusions, the court will require Stuckwisch to appear for a *Daubert* hearing during which she can be questioned by the parties so the court can better perform its gatekeeping function regarding Stuckwisch's proposed testimony. Accordingly, Ms. Stuckwisch must appear for that hearing on Friday, April 4, 2025, at 9:30 am.

      **B.  The motion to exclude David Lampron, Executive Director of the Nevada State Association for Home Care and Hospice, is granted in part and denied in part.**

The government moves to exclude the proffered expert testimony of David Lampron, arguing his opinions are not the proper subject of expert testimony, are not relevant, and are unreliable. *See generally* Lampron mot. to exclude, ECF No. 594. It further argues that Lampron's opinions merely attempt to justify and excuse the wage-fixing agreement as either necessary or ineffective, both of which are inadmissible and/or irrelevant. *Id.* at 2. Lopez responds that "Mr. Lopez will rely on the expert opinions of David Lampron to put into context for the jury the facts and circumstances of the market for hiring RNs and LPNs in Las Vegas. Opp'n, ECF No. 602 at 6. Lopez also argues that he has "already been prejudiced by the government's motions,

even if they are denied. Mr. Lopez has a constitutional right to effective assistance of counsel at trial, but the government's tactics have created a sideshow requiring extensive briefing in parallel to the ongoing criminal trial." *Id.* at 9. Lopez contends that the government has created a sideshow by seeking to exclude the Lopez's proposed expert witnesses after the jury was sworn. *Id.* This last argument is simply not persuasive as it was defense counsel who moved to continue the expert disclosure deadline, not the government.[2]

Because the existence of a conspiracy is at issue, some of Lampron's testimony may be relevant. So, while the court has serious concerns about the reliability of Lampron, as his report is lacking in sufficient authority or explanation regarding what he reviewed in order to prepare his report, and, as noted by the government, he seemingly plagiarizes at least one online site (*see* ECF No. 594 at 7),[3] Lampron will be permitted to testify regarding certain topics as set forth in this order.

Specifically, Lampron is permitted to testify regarding the definition of licensed home health care agencies (HCCAs), the licensing and regulations of HCCA in Nevada, and the definitions RNs and LPNs and their differences. *See* Lampron report, ECF No. 595 at 13, 14, 19, 20. He may also testify regarding the differences between Medicare/Medicaid Home Health and Private Duty Services. Mr. Lampron may also testify regarding factors that may influence nurse choice in employment opportunities. *Id.* at 24–25.

---

[2] After the motions to exclude were docketed, counsel for Lopez argued that the government waived its right to lodge challenges to the proposed expert testimony because the motions were filed after trial started. *See* March 27, 2025, Trial tr., ECF No. 584 at 8 (counsel stating "So there's a number of cases that say that the failure to bring a timely Daubert challenge waives it for trial. We can't think of an instance where Daubert is coming up on the fourth day of trial. Usually, it's resolved so that the expert reports can be adjusted, if needed, and any expert issues can be dealt with in advance of trial."). When asked what case counsel was relying on to support his argument, counsel cited *Marbled Murrelet v. Babbitt*, 83 F.3d 1060 (9th Cir. 1996). That case does not stand for the proposition that challenges to expert testimony must be addressed in advance of trial. Rather, it held a party from precluded challenging the sufficiency of the evidence related to certain scientific evidence on appeal because that party failed to request a ruling on its *Daubert* objections to admissibility of the evidence in the district court. *Marbled Murrelet*, 83 F.3d at 1068.

[3] Should the government seek to voir dire the witness, it may do so. Regardless, these issues are fodder for cross-examination.

The court defers ruling on whether Lampron can testify regarding the number of RNs and LPNs in Nevada and Clark County (*id.* at 20–22) until counsel for Lopez proffers further information regarding its relevance.[4]

Lampron is precluded from testifying regarding the alleged impact of being an at-will employment on a nurse's employment choices as it is irrelevant. *Id.* at 25–26. He is also precluded from testifying regarding nurse bargaining power. *Id.* at 26–29. The only citation noted under the "Nurse Bargaining Power" section of his report is one website: https://www.nursingworld.org/practice-policy/work-environment/ (*Last accessed on* Apr. 2, 2025). That website, which states it is operated by the American Nurses Association, provides general information about a variety of subjects. *See generally id.* However, it does not address alleged bargaining power as it relates to the relevant time period or Nevada. Further, his report makes broad conclusions without providing *any* support as to how those conclusions were reached. For example, in paragraph 65, Lampron concludes:

> Shared governance models also play a pivotal role in empowering nurses. Many healthcare employers utilize these models to involve nurses in decision-making processes related to clinical practice, staffing, and patient care policies. By having a seat at the table, nurses can actively shape their work environments and push for changes that benefit both employees and patients. Relatedly, political advocacy is another mechanism through which nurses can assert their influence. Through lobbying efforts and public awareness campaigns, nurses can highlight workplace issues, advocate for fair compensation, and gain community support to pressure employers and policymakers. Similarly, nurses have access to legal avenues to address grievances such as unsafe working conditions or unfair labor practices, further reinforcing their ability to negotiate from a position of strength.

ECF No. 595 at 26, ¶ 65. There is zero authority or explanation as to how Lampron reached this conclusion, so it is excluded.[5]

---

[4] This proffer shall take place outside the presence of the jury before Lampron is called as a witness. Failure to comply will result in striking any testimony as to this subject matter.

[5] This is but one explanation of unsupported conclusions from Lampron. In another paragraph, Lampron opines: "Payer reimbursement plays a pivotal role in shaping nurse compensation and determining the scope of services provided in home healthcare settings. Since the introduction of government and private insurance reimbursement models for home healthcare, the industry has undergone significant changes, influenced by shifts in payer policies and evolving care delivery standards." ECF No. 595 at 34, ¶ 94.

6

Lampron may testify regarding nurse compensation for home health care or private duty nurses during the relevant period. *See generally* ECF No. 595 at 29–35. However, Lampron is precluded from testifying regarding about what a nurse's specific job preference might be, as he would have no personal knowledge regarding those preferences (job- or facility-wise) and it is not relevant to the charges in the superseding indictment. Lampron may testify about reimbursement codes to the extent it is relevant so long as it relates to the evidence in this case. The superseding indictment does not allege any sort of billing fraud, or other coding illegality, so any testimony regarding this must be narrowly tailored. Finally, Lampron is also precluded from testifying regarding "nurse mobility" and "nurse turnover" rates because this proposed testimony is irrelevant to the charges. *Id.* at 37–38.

### C. The motion to exclude Wayne Brown, Financial Analyst and valuation professional is granted in part and denied in part.

The government moves to exclude Wayne Brown, arguing his testimony should be excluded pursuant to prior rulings that valuation evidence is not relevant and may not be introduced during the trial. Mot. to exclude Brown, ECF No. 588. Lopez opposes the motion arguing Brown's testimony is relevant as it addresses the Purchase Agreement order that has been introduced as evidence in this case, and further that contrary to the government's argument, this testimony is not limited to merely "valuation" of Community Health care. *See generally* Opp'n, ECF No. 603.

In his report, Brown states he will testify about some "major conclusions" related to the Purchase Price Agreement (the "Purchase Agreement"), including determining whether the financial and other records indicate that Solace received the full sale price of the Community Health, and will examine the specific way the parties negotiated to determine the full sales price under the terms of the Purchase Agreement after it was signed, and whether any alleged

---

Again, zero authority or explanation as to how this conclusion is reached is provided. Instead, the following paragraphs explain reimbursement rates generally, and state he reviewed curtained LPN rates (*see id.* at ¶ 99). It is unclear if the documents Lampron reviewed were provided to the government.

7

misrepresentation affected potential liability or quality issues under the Purchase Agreement. *See* Brown report, ECF No. 589 at 6–9. I find that Brown's testimony is relevant in part, so I deny the motion in part.

Accordingly, if his qualifications are established at trial, Brown will be permitted to testify about the "typical purchase process," discussed on his report at pages 26–34 because this information is relevant. *Id.* at 26–34. However, Brown is not permitted to proffer any testimony related to paragraph (ii)(ii) on page 31 of his report, as that information is improper. Brown has no personal knowledge of how or why the indemnification provision was crafted the way it was, and further attempts to opine on the impact of that provision are irrelevant and confusing to the jury.[6] Likewise, Brown is precluded from testifying regarding the indemnification provision discussed in his report on pages 33–34. Brown is not permitted to testify about "valuation"[7] (meaning the value of the company at the time of the sale (*id.* at 8); that there was no "objective financial damage to Community [Health] after the Purchase Agreement (*id.* at 9); that Solace received *more than* the full expected value (*id.* at 15, 36–39). Beyond explaining that there was a difference in the total sale price, Brown is not permitted to testify about emails or communications relating to potential impacts of the later-revealed DOJ anti-trust investigation. *See id.* at 21–24.[8]

Brown is also not permitted to testify that Lopez's failure to disclose his 2016 bankruptcy caused no financial damage to Solace. *Id.* at 24. A limiting instruction has also been given to the jury regarding how they can evaluate that evidence, and Brown lacks personal knowledge to opine on how Riveron or Solace would have evaluated that information.

---

[6] This paragraph starts with the sentence "[t]he indemnification terms negotiated in purchase agreement are strong and highly protective against negative financial consequences and damage for misrepresentations and risks."
[7] I incorporate my prior ruling and reasoning in excluding valuation as if fully set forth herein.
[8] This order also precludes Brown from testifying about an investigation into Sonas in July of 2021. Expert report at 24.

Further, he is not permitted to testify regarding the results/findings of an audit that was published on November 15, 2022—*almost a year* after the parties signed the Purchase Agreement and well after the DOJ investigation was revealed to Solace—as irrelevant. *See id.* at 32–33.

### III.     Conclusion

IT IS HEREBY ORDERED that the motion to exclude the proposed expert witness Stuckwisch **[ECF No. 585] is granted in part and deferred it part**, as set forth in this order.

IT IS FURTHER ORDERED that Ms. Stuckwisch must appear for a *Daubert* hearing on Friday, April 4, 2025, at 9:30 a.m. in LV Courtroom 6B.

IT IS FURTHER ORDERED that the motion to exclude the proposed expert witness Lampron **[ECF No. 594] is granted in part, denied in part, and deferred in part**, as set forth in this order.

IT IS FURTHER ORDERED that the motion to exclude proposed expert witness Brown **[ECF No. 588] is granted in part and denied in part**, as set forth in this order.

Dated: April 2, 2025

_____
Cristina D. Silva
United States District Judge