UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

United States of America,

        Plaintiff

v.

Eduardo Ruben Lopez,

        Defendant

Case No. 2:23-cr-00055-CDS-DJA

**Order Precluding Intent to Repay Defense**

At the end of jury trial day nine, the court heard argument regarding the permissible scope of testimony for certain proposed defense witnesses, namely if defense could present: (1) additional witnesses to discuss the terms of an indemnification provision contained in the Purchase Agreement and (2) evidence related to the consequences or implications of the indemnification provision once Solace learned that Community Health was under federal criminal investigation in the spring of 2022. The court took the arguments of the parties under advisement. For the reasons explained herein, I preclude Lopez from presenting an intent to repay defense.

I.    Discussion

Lopez is charged with multiple wire fraud counts related to the sale of his home healthcare business, Community Health, to a company known generally as Solace Nevada at the end of 2021. To complete the sale, the parties entered into a Purchase Agreement, part of which included an indemnification provision, which states in relevant part:

> 6.2    <u>Indemnification by the Seller and Principal.</u> Subject to each of the other terms, conditions and limitations set forth in this <u>SectionSECTION 6 [sic]</u>, after the Closing, the Seller and Principal, on a joint and several basis, shall indemnify and hold harmless Buyer, each of its Affiliates, and each of their respective officers, directors, employees, stockholders, members, agents, representatives, Affiliates, successors and permitted assigns (each, a **"Buyer Indemnified Party,"** and together, the **"Buyer Indemnified Parties"**) from and against any and all Losses which a Buyer Indemnified Party suffers, sustains or becomes subject to as a result of or in connection with:

    (a)    any inaccuracy or breach of any representation or warranty made by any of the Company and/or the Seller in this Agreement or any certificate delivered by or on behalf of any of the Company and/or the Seller in connection herewith;

    (b)    any failure to perform or breach of any covenant or agreement to be performed by any of the Company, Principal and/or the Seller pursuant to this Agreement;

    (c)    any Pre-Closing Taxes;

    (d)    any unpaid Indebtedness or Transaction Expense of any of the Company and/or Seller, including arising out of the PPP Loan, outstanding as of the Closing to the extent not deducted in the determination of the Closing Cash Purchase Price;

    (e)    any litigation, audit, investigation or proceeding by a third party or Governmental Authority outstanding or threatened against the Company as of the Closing Date or arising from facts and circumstances existing prior to the Closing; and

    (f)    any Fraud on the part of any of the Company and/or Seller.

*See* Purchase Agreement § 6.2, Gov.'s Ex. 148 (emphasis in original). Because it is relevant to the charges, the entirety of the Purchase Agreement has already been moved into evidence and presented to the jury. As a result, the existence and contents of the indemnification provision have also been introduced to the jury.[1] Lopez seeks to introduce additional evidence regarding the indemnification provision, to include evidence related to what occurred after Solace learned that Community Health was under federal investigation.

        "[W]ire fraud requires the intent to deceive *and* cheat—in other words, to deprive the victim of money or property by means of deception." *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020) (emphasis in original). A defendant's intent to repay the victim the money taken by means of deception, however, "is not a defense to wire fraud." *Id.* at 1103. Based on the

---

[1] When the court pronounced this decision on the record on March 4, 2025, counsel for Lopez argued that the court was essentially picking and choosing what part of the Purchase Agreement would go before the jury. This is inaccurate. The Purchase Agreement is already in evidence. This order precludes Lopez from presenting an intent to repay defense pursuant to Ninth Circuit precedent.

arguments and evidence before the court, it is now clear that Lopez is seeks to present an intent to repay defense disguised as the indemnification provision in the Purchase Agreement. Lopez has repeatedly argued that the indemnification provision is evidence that Lopez did not intend to deceive or cheat because "all the risk" was on him. Stated otherwise, Lopez argues that at the time he entered into the negotiations, and then ultimately sold his company to Solace, he could not have intended to deceive or cheat them because he committed to repaying them in full if the indemnification provision was ever implicated. But *Miller* makes clear this sort of defense is improper, as an intent to repay is irrelevant. *See United States v. Johnson*, 2016 U.S. Dist. LEXIS 8478, at *5–6 (D. Utah Jan. 24, 2016) (denying Rule 17 subpoena where defense counsel was seeking documents demonstrating: (1) that Wells Fargo agreed to "terms authorizing the set up of merchant accounts and also indemnification provisions"; (2) "how Wells Fargo drew on . . . reserve accounts, or was indemnified with money in those accounts"; and (3) the "amount [Wells Fargo] received by way of an indemnification provision associated with accounts that [First Data, Inc.] and/or [CardFlex, Inc.] set up for iWorks and related entities" as irrelevant and inadmissible).

     Even if Lopez is attempting to argue that the indemnification provision is evidence that he did not intend to permanently deprive Solace of money or property, because again, if the indemnification provision was triggered, he would be required to repay them, this too is just another version of an "intent to repay" defense. *United States v. Treadwell*, 593 F.3d 990, 996–98 (9th Cir. 2010), *overruled on other grounds by*, *Miller*, 953 F.3d 1095) ("[T]he intended deprivation under [wire fraud] need not be a permanent taking away of money or property. One can intentionally deprive another of property while at the same time intending to restore it at a later date."); *see also United States v. Lillie*, 669 F. Supp. 2d 903, 907 (N.D. Ill. 2009) ("Put differently, evidence that a defendant planned or hoped to repay fraudulently obtained money is not relevant to the question of intent to defraud.").

Simply put, Lopez's proffered defense that his decision to agree to the indemnification clause is inconsistent with the requisite intent to defraud is an attempt to disguise an "intent to repay" defense, which is squarely rejected by the Ninth Circuit. *Miller*, 953 F.3d at 1103; *see also United States v. Hansen*, 2022 WL 1186456, at *2 (W.D. Wash. Apr. 21, 2022), *aff'd*, 2024 WL 3026785 (9th Cir. June 17, 2024), *opinion amended and superseded on denial of reh'g*, 2024 WL 3423222 (9th Cir. July 16, 2024), *and aff'd*, 2024 WL 3423222 (9th Cir. July 16, 2024) (explaining that defendants' "intent to honor their agreement" argument is akin to an "intent to repay" argument, which was squarely rejected by the Ninth Circuit in *Miller*: the "intent[ ] to pay back the funds . . . deceptively obtained . . . is not a defense at all." 953 F.3d at 1103. To prove mail or wire fraud, the government did not need to prove that defendants intended to "permanently deprive a victim of money or property," as defendants here seem to suggest. *Id.*); *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986) ("While an honest, good-faith belief in the truth of the misrepresentations may negate an intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all.").

As a result, Lopez is precluded from introducing evidence or argument that the indemnification provision is evidence that Lopez did not intend to deceive or cheat Solace.[2] Lopez is also precluded from introducing (1) any additional evidence that the indemnification provision somehow "guaranteed" repayment if ever triggered or enforced, (2) any evidence related to Solace's (or any interested party's) belief about how the indemnification provision

---

[2] Similar reasoning makes the "True Up" provision of the Purchase Agreement irrelevant. Lopez has attempted to show (to some degree, successfully) that Solace receive additional funds after the Purchase Agreement was executed. But that is irrelevant to whether, at the time of the alleged wires charged in the superseding indictment, Lopez intended to deceive and cheat Solace out of money. *See United States v. Leahy*, 464 F.3d 773, 787 (7th Cir. 2006) ("[A] defendant's honest belief that his actions will ultimately result in a profit and not a loss is **irrelevant** for determining whether a violation [of the mail fraud statute] has occurred." (emphasis added)). Accordingly, Lopez is precluding from introducing evidence about or arguing that the "True Up" provision, under which Solace received additional funds as a result of the sale of Community Health, demonstrates that Lopez lack the requisite intent to commit wire fraud. The belief that Solace would get more money is not relevant to whether he intended to deprive the victim of money or property by means of deception.

worked or what it would call for, (3) that the indemnification provision was in fact triggered and pursued by Solace (or any interested party), and (4) any evidence related to the results from any effort to enforce the indemnification provision. Lopez is further precluded from arguing in closing statements that the indemnification provision meant he could not have had the requisite intent to deceive and cheat Solace.

Dated: April 4, 2025

_____
Cristina D. Silva
United States District Judge