PILLSBURY WINTHROP SHAW
PITTMAN LLP (pro hac vice)
MARK L. KROTOSKI (pro hac vice)
California Bar No. 138549
2550 Hanover Street
Palo Alto, CA 94304-1115
Telephone: (650) 233-4500
Email: mark.krotoski@pillsburylaw.com

PILLSBURY WINTHROP SHAW
PITTMAN LLP (pro hac vice)
RICHARD P. DONOGHUE (pro hac vice)
New York Bar No. 2511236
31 W 52nd Street
New York, NY 10019
Telephone: (212) 858-1000
Email: richard.donoghue@pillsburylaw.com

CLARK HILL PLLC
PAOLA M. ARMENI
Nevada Bar No. 8357
1700 South Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Telephone: (702) 862-8300
Email: parmeni@clarkhill.com

ANDERSON KILL, P.C. (pro hac vice)
SAMUEL M. BRAVERMAN (pro hac vice)
New York Bar No. 2553808
7 Times Square, 15th Floor
New York, NY 10036
Telephone: (212) 278-1008 Email:
SBraverman@AndersonKill.com

Attorneys for Defendant, Eduardo Lopez

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00055-CDS-DJA |
| Plaintiff, | |
| vs. | **DEFENDANT LOPEZ'S THIRD MOTION FOR MISTRIAL** |
| EDUARDO RUBEN LOPEZ, | |
| Defendant. | |

# TABLE OF CONTENTS

I.      Factual Background ...........................................................................................5

II.     Legal Standard ...............................................................................................9

III.    The Government Violated the Fifth and Sixth Amendment Rights of Mr. Lopez and

        Violated this Court's Order to Redact the Identity of Counsel.................................10

IV.     A Mistrial Is Required Based on the Refusal to Provide Several Theory of Defense Jury

        Instructions...................................................................................................14

V.      Conclusion ...................................................................................................21

# TABLE OF AUTHORITIES

**CASES**

*Biggs v. Chicago Bd. of Educ.*
2022 WL 1591577 (N.D. Ill. May 19, 2022) ........................................................ 13

*Bowen v. Maynard*
799 F. 2d 593 (10th Cir. 1986) ........................................................................ 16

*Carriger v. Stewart*
132 F.3d 463 (9th Cir. 1997) ........................................................................... 16

*Chambers v. Mississippi*
410 U.S. 284 (1973) ........................................................................................ 13

*Clarke v. Am. Com. Nat. Bank*
974 F.2d 127 (9th Cir. 1992) ........................................................................... 11

*Illinois v. Somerville*
410 U.S. 458 (1973) ........................................................................................ 10

*In re Grand Jury*
23 F.4th 1088 (9th Cir. 2021) ..................................................................... 10, 13

*In re Search Warrant Issued June 13, 2019*
942 F.3d 159 (4th Cir. 2019) ........................................................................... 12

*Kyles v. Whitley*
514 U.S. 419 (1995) ........................................................................................ 16

*Luxpro Corp. v. Apple Inc.*
2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) ................................................. 19

*Mohawk Indus., Inc. v. Carpenter*
558 U.S. 100 (2009) ........................................................................................ 10

*Nordstrom v. Ryan*
762 F.3d 903 (9th Cir. 2014) ........................................................................... 12

*Old Republic Ins. Co. v. Ness, Motlet, Loadholt, Richardson & Poole, P.A.*
2006 WL 3782994 (N.D. Ill. Dec. 21, 2006) ................................................... 12

*Pac. Pictures Corp. v. United States Dist. Court*
679 F.3d 1121 (9th Cir. 2012) ......................................................................... 13

*RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*
2023 WL 2403258 (E.D.N.Y. Mar. 7, 2023) ................................................... 12

*Sosa v. DIRECTV, Inc.*
    437 F.3d 923 (9th Cir. 2006) ........................................................................ 19

*United States v. Aulicino*
    44 F.3d 1102 (2d Cir. 1995) ......................................................................... 12

*United States v. Bear*
    439 F.3d 565 (9th Cir. 2006) ........................................................................ 15

*United States v. Bello-Bahena*
    411 F.3d 1083 (9th Cir. 2005) ...................................................................... 20

*United States v. Brugman*
    655 F.2d 540 (4th Cir. 1981) ........................................................................ 12

*United States v. De Bright*
    742 F.2d 1196 (9th Cir. 1984) ................................................................ passim

*United States v. Escalante*
    637 F.2d 1197 (9th Cir. 1980) ...................................................................... 10

*United States v. Gonzalez*
    113 F.3d 1026 (9th Cir. 1997) ...................................................................... 10

*United States v. Klein*
    582 F.2d 186 (2d Cir. 1978) ......................................................................... 10

*United States v. Lemus*
    847 F.3d 1016 (9th Cir. 2016) ...................................................................... 10

*United States v. Stepney*
    246 F. Supp. 2d 1069 (N.D. Cal. 2003) .................................................. 12, 13

*United States v. Zolin*
    491 U.S. 554 (1989) ................................................................................. 10, 13

*United States v. Zuniga*
    6 F.3d 569 (9th Cir. 1993) ........................................................................... 15

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*
    2018 WL 3135847 (N.D.N.Y. *June 27, 2018*) ............................................ 12

*Williams v. Woodford*
    384 F.3d 567 (9th Cir. 2004) ........................................................................ 12

Defendant Lopez hereby requests that the Court declare a mistrial on three separate grounds based on the government's closing argument: (a) using a privileged communication to argue intent and the violation of the wire fraud statute in violation of the Fifth Amendment right to a fair trial and Sixth Amendment right to effective assistance of counsel; (b) separately calling attention to defense counsel changing firms in violation of the Court's redaction order and the Sixth Amendment; and (c) because of the prejudicial impact of the privileged evidence on the Sherman Act count.  The government's argument invited the jury to speculate about Mr. Lopez's  privileged communication with counsel and whether defense counsel changed firms from Morgan Lewis.  Under these circumstances, as outlined below, Mr. Lopez did not receive a fair trial and his constitutional rights, including his right to effective assistance of counsel, were violated.

As a separate ground, a mistrial is also required because the Court denied several jury instructions requesting various theories of defenses.  The Ninth Circuit has held that the failure to provide the theory of defense jury instructions is reversible error.  In order to ensure that Mr. Lopez receives a fair trial, a mistrial is required on this independent basis.

## I.    Factual Background

A central issue in this case concerns the government's introduction of evidence concerning privileged communications. Over defense objection,[1] the government was allowed to introduce a number of documents that told the jury that Mr. Lopez had a privileged communication with his counsel on legal matters. The government introduced evidence of more than just the fact such a communication occurred, but has told the jury the subject of those privileged communications, and the type of legal advice that Mr. Lopez sought from counsel. Among the documents introduced by the government was Mr. Lopez's privilege log which revealed the substance of the privilege and which the government used in its argument as substantive proof of the wire fraud counts.

---

[1]  The defense renews and preserves all prior objections before trial and at trial to the exhibits used by the government to disclose privileged communications, including for Government Exhibits 204, 206, 152R and 151.  *See, e.g.*, ECF No. 521, at 32-43 (objecting to the admission of privileged communications under the Fifth Amendment, Sixth Amendment, Due Process, hearsay and Rule 403 grounds).

Government Exhibit 204 is a privilege log. *See* **Exhibit A**. The privilege log shows that Mr. Lopez sought legal advice from his counsel concerning a search warrant.

Government Exhibit 206 is an April 9, 2021 notification from google to the Defendant, which attached the search warrant that Google received. *See* **Exhibit B**.

Government Exhibit 152R is an email dated October 28, 2021, where, the defendant, Mr. Lopez, emailed his assistant Miriam, an October 28, 2021 letter from Morgan Lewis which states that Mr. Lopez had engaged the firm in April 2021. *See* **Exhibit C**.

Government Exhibit 151 is an email dated September 18, 2021 where, the defendant, Mr. Lopez, emailed to himself his attorney contacts. *See* **Exhibit D**. This document identifies Morgan Lewis as "antitrust counsel." *Id.*

Government Exhibit 156 is a spreadsheet of legal expenses prepared by Riveron. *See* **Exhibit E**. The spreadsheet lists Morgan Lewis expenses.

When this issue was argued before trial, the Court correctly noted the substantial risk of prejudice and a mistrial:

> THE COURT: So it doesn't sound like they're going to introduce evidence regarding the conversation. They're going to introduce the letter that the -- that was the validation -- I'm going put that in quotes -- regarding the purpose for retaining the attorney.
>
> MR. BRAVERMAN: But what are they going to --
>
> THE COURT: That's different.
>
> MR. BRAVERMAN: But what would they say about it? In the end –
>
> THE COURT: They told you what they would say about it.
>
> MR. BRAVERMAN: I understand that, Judge, but the actual words that the Government's -- that are going to come out of the Government's mouth won't be just that. It will be to the jury, **from this fact, you should infer something. Not only should you infer defendant's *mens rea*, which is the only relevant thing, but you should infer what the conversation was, and from there, the *mens rea*.**
>
> THE COURT: I mean, **wouldn't that be grounds for a mistrial?**
>
> MR. BRAVERMAN: **I think it would be** -- well, I think it would be --

1

2

3

4

5

6

THE COURT: If I let it in. We're not even there, right?

MR. BRAVERMAN: I think it would be. Because I think it would be well past the jury's province. It would be well past the Government's ability to argue. I think it would be barred by 403. I think it would be barred by 402. I just don't think the Government ever gets to a position where they can say what that content is and, therefore, they are -- **by definition, they are speculating**, and, therefore, the inferences to be drawn would not be logical

inferences from objective evidence. So I think for those reasons, it fails there….

7

8

9

10

Calendar Call Transcript, at 61-63 (March 11, 2025) (emphasis added). The Court clearly recognized that the evidence about the privilege communications carried a high risk of a mistrial based on the prejudicial nature of the evidence.  The unfair prejudice occurs even before the constitutional rights are considered.

11

12

13

14

In ruling on the government's motion to admit exhibits concerning privileged communications, the Court noted the Sixth Amendment rights at stake. ECF No. 546.  The Court instructed that one measure to protect this fundamental constitutional right would be to require redaction of counsel's name:

15

16

17

18

19

20

Inclusion of Mr. Krotoski's name on any of the legal documents the government seeks to introduce **would unfairly prejudice Lopez's right to a fair trial**. It potentially invites the jury to speculate about the relationship between Mr. Krotoski and Lopez, why Mr. Krotoski is not testifying, or why Mr. Krotoski is representing Lopez in this matter, among other potential speculation. This could impact Lopez's **Sixth Amendment rights**. To vitiate against the potential prejudice, the government must redact not only Mr. Krotoski's name, but the name of any attorney referenced in the legal documents. Redaction of all attorney names will not draw undue attention to the redaction of just Mr. Krotoski's name.

21

Order Granting Government's Motion in Limine 5, ECF No. 546, at 4:11-18 (emphasis added).

22

23

During closing argument, government counsel made multiple references to Mr. Krotoski's prior firm and linked the evidence to intent, for example:

24

25

26

27

28

Look at this quickly. This is a search warrant issued by the Northern District of California on March 29, 2021. **And the next thing that the defendant does is he sends that search warrant to the Morgan Lewis** law firm that same day. **Remember that name, "Morgan Lewis."** You can see that at Government's Exhibit 204. **An e-mail from the defendant** goes to someone at **Morgan Lewis** and it **attaches a search warrant**, that same warrant that was served on the defendant's Gmail that you just saw at Exhibit 206. And

who is **Morgan Lewis**? Well, you'll see that from defendant in just a second. That's his antitrust lawyer.

Now, it is a bedrock principle of our legal system that you have every right to consult an attorney and that you absolutely cannot infer that someone is guilty merely because they decided to consult with counsel. But you can infer **the defendant knew of this search warrant when he sent it to his antitrust lawyer at the Morgan Lewis law firm**. All I want you to do is recognize that **this evidence shows Eddie Lopez was very aware of the Government's ongoing criminal investigation at this time**.

Trial Transcript, at 93:7-25, 94:1 (April 9, 2015) (emphasis added).

Government counsel made further references to the law firm:

And that's where the lies about **Morgan Lewis** begin. Let's walk through those lies. It starts with this spreadsheet on October 15, 2021. And this is Exhibit 156. You can see it right here. The defendant told Riveron that his company had spent $100,000 with the law firm **Morgan Lewis**. And he told them that this was lawyer fees for start-ups and other matters. Mr. Doesburg told you why this $100,000 was important. It was a lot of money and it was recent in time. And those are the types of expenses that are the most important for due diligence.

Trial Transcript, at 96:19-25, 97:1-3 (April 9, 2015) (emphasis added).

So Mr. Doesburg and his team had a lot more questions about the **Morgan Lewis** expense and the defendant had a lot more lies. So let's look at them.

Exhibit 155. So here, three days after that first e-mail, Lopez says again that the Morgan Lewis $100,000 is lawyer fees for start-up and other matters. But this time he adds that these fees will not transfer.

Trial Transcript, at 97:9-15, 97:1-3 (April 9, 2015) (emphasis added).

Let's look at Exhibit 154. Mr. Doesburg told you what this meant. "Need **Morgan Lewis Bockius**," "please confirmation from MLB that you paid them a retainer of $100,000." Eddie had provided invoices for all the other law firms but he hadn't provided anything from **Morgan Lewis**. Instead, Eddie told Riveron that there were no invoices from that firm. A $100,000 payment that Eddie claimed that there were no documents showing the nature of those legal services.

So instead, defendant provided a letter from the **Morgan Lewis** firm. Let's look at that letter. It's 152-R. This is pretty different from those detailed invoices. It doesn't describe the specific services that **Morgan Lewis** provided to the defendant. No explanation of what that retainer was for. No details. Nothing.

Trial Transcript, at 98:6-19 (April 9, 2015) (emphasis added).

Government counsel argued the content of a privileged communication to the jury connecting the Google search warrant to the legal payment. This argument informed the jury about more than just the fact that Mr. Lopez consulted with counsel, but the subject of that consultation and the nature of the legal advice sought. This type of evidence about privileged communications should never be heard in any criminal case.

> So how do we know that everything Eddie Lopez told Riveron about that **Morgan Lewis** expense was a lie? Remember that Google notification back in April? And that warrant to search and seize his e-mails? Well, the very next day, he sent that warrant to **Morgan Lewis**. Then, five days later, he pays **Morgan Lewis** $50,000. And then another $50,000.
>
> …
>
> Remember, Miriam's his secretary. And he list a bunch of contacts. And the very first one is **antitrust attorney**, and it list a contact at **Morgan Lewis**.

Trial Transcript, at 99:6-11, 99:17-19 (April 9, 2015).

> MR. CRAMER: And again, so he knew about the investigation.
>
> Look at the **Morgan Lewis**. **That clearly shows he knew what was going on** because he didn't give that invoice.

Trial Transcript, at 199:6-11, 99:17-19 (April 9, 2015) (emphasis added).

Government counsel also turned and pointed directly to defense counsel Mr. Krotoski when he discussed moving "job to job" and that "[l]awyers do it":

> You got to be able to move job to job. Lawyers do it. [Pointing directly to defense counsel Mr. Krotoski] I, frankly, made more money per hour than you do as a government lawyer. I should have, frankly, stuck with that. You got to be able to move. That's the essence of the antitrust.

Trial Transcript, at 194:17-21 (April 9, 2015). At the reference to "Lawyers do it," government counsel pointed directly to defense counsel.

## II.  Legal Standard

"[I]t has been widely held that '[c]ourts have the power to declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity.'" *United States*

*v. Escalante*, 637 F.2d 1197, 1202 (9th Cir. 1980) (quoting *United States v. Klein*, 582 F.2d 186, 190 (2d Cir. 1978). Declaring a mistrial is appropriate when the jury cannot reach an impartial verdict, or a verdict of conviction could be reached, but would almost certainly be reversed on appeal because of a procedural error at trial. *Illinois v. Somerville*, 410 U.S. 458, 464 (1973). Although sometimes a cautionary instruction is sufficient to remedy the introduction of inadmissible evidence, a "mistrial is appropriate . . . where there has been so much prejudice that an instruction is unlikely to cure it." *United States v. Lemus*, 847 F.3d 1016, 1024 (9th Cir. 2016) (citing *United States v. Escalante*, 637 F.2d 1197, 1202–03 (9th Cir. 1980)).

### III. The Government Violated the Fifth and Sixth Amendment Rights of Mr. Lopez and Violated this Court's Order to Redact the Identity of Counsel

The government's closing argument violated the Sixth Amendment right to counsel and the redaction Order of the Court in three significant ways.

First, by using Mr. Lopez's confidential and privileged communications with counsel against him in its closing argument, the government invaded the attorney-client relationship, violated Mr. Lopez's Fifth Amendment right to a fair trial and Sixth Amendment right to effective assistance of counsel.

"Clients must be free to make full disclosure to their attorneys . . . in order that the client may obtain 'the aid of persons having knowledge of the law and skilled in its practice,'" free from fear that one day those disclosures will be used against them in court. *United States v. Zolin*, 491 U.S. 554, 562 (1989) (cleaned up); *see generally United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997) ("The Sixth Amendment guarantees the right to the effective assistance of counsel at all critical stages of a criminal proceeding."). As the Ninth Circuit has noted, the attorney-client privilege "provid[es] a sanctuary for candid communication about any legal matter." *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021). Our system is based on the fundamental premise of the right of individuals to obtain legal advice. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009). A criminal defendant should not be punished for exercising this right.

During closing argument, the government used a privilege log referring to a privileged communication Mr. Lopez sent on April 9, 2021 to his counsel to obtain legal advice on a "Search

Warrant." *See* **Exhibit A** (Government Exhibit 204).



| No. | Bates Begin | Bates End | Document Type | Date | Author/From | To | Cc |
|-----|-------------|-----------|---------------|------|-------------|-----|-----|
| 58 | GOOG-ELI002-001-00020481 | GOOG-ELI002-001-00020481 | Email | 4/3/2021 7:17 | Edward Lopez <eddielopeznv@gmail.com> | ████████████ @morganlewis.com> | |
| 59 | GOOG-ELI002-001-00020482 | GOOG-ELI002-001-00020488 | Search Warrant | 3/5/2021 11:28 | U.S. District Court, Northern District of California | Edward Lopez | |

As the Ninth Circuit has held, anything that "reveal[s] the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall[s] within the privilege," and is therefore inadmissible. *Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992). The use of the privilege log disclosed what should always have been a confidential and privileged communication. Here, the government used it against Mr. Lopez in this criminal case.

Government counsel impermissibly argued the content of this privileged communication with counsel. Government counsel told the jury that "the defendant knew of this search warrant when he sent it to his antitrust lawyer at the Morgan Lewis law firm" and "that this evidence shows Eddie Lopez was very aware of the Government's ongoing criminal investigation at this time." Trial Transcript, at 93:7-25, 94:1 (April 9, 2015).

This privileged communication was further linked with other exhibits and used by the government to argue that Mr. Lopez obtained legal advice from his antitrust counsel and offered by the government to show intent. The evidence included the original Google notification which Mr. Lopez used to seek legal advice. *See* **Exhibit B** (Government Exhibit 206). The government then used a privileged email on September 18, 2021 to himself listing his counsel against him and for further linkage. The email is the equivalent a private note which happens to be stored on a confidential email account. There was no evidence that anyone else had access to this secure email account. Further, this

1  listing lacks meaning without the privilege log and was used to reinforce the substance of the email to

2  counsel on the privilege log.  Once again, linkage to the privilege log was part of the government's

3  argument.

4        The introduction of Mr. Lopez's confidential communications with counsel and references to

5  it during the closing argument violated his Sixth Amendment.[2] This Court has already noted the Sixth

6  Amendment applies to the privileged communications in this case.  *See, e.g.*, Order Granting

7  Government's Motion in Limine 5, ECF No. 546, at 4:11-18.

8        Privilege logs are not admissible evidence, particularly when its only evidentiary use would

9  require speculation as to the substance of the communications withheld. *See Utica Mut. Ins. Co. v.*

10 *Munich Reinsurance Am., Inc.*, 2018 WL 3135847, at *13 (N.D.N.Y. *June* 27, 2018); *see also Old*

11 *Republic Ins. Co. v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 2006 WL 3782994, at *12-13

12 (N.D. Ill. Dec. 21, 2006) (finding plaintiff's privilege log was inadmissible because its "probative value

13 [was] substantially outweighed by the probability of jury confusion and noting that the "privilege log

14 itself [was] not evidence; rather, the document named in the privilege log [was] the evidence"); *RVC*

15 *Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, 2023 WL 2403258, at *10 (E.D.N.Y. Mar. 7,

16

17

18

19 [2]  The attorney-client privilege supports the Sixth Amendment's guarantee of effective assistance of
20 counsel." *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175-80 (4th Cir. 2019), *as*
   *amended* (Oct. 31, 2019). The ability of a defendant to "communicate candidly and confidentially
21 with his lawyer is essential to his defense." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014);
   *see also United States v. Brugman*, 655 F.2d 540, 546 (4th Cir. 1981) ("The essence of the Sixth
22 Amendment right to effective assistance of counsel is, indeed, privacy of communication with
   counsel."). And "[w]hen the government deliberately interferes with the confidential relationship
23 between a criminal defendant and defense counsel, that interference violates the Sixth Amendment
   right to counsel if it substantially prejudices the criminal defendant." *Nordstrom v. Ryan*, 762 F.3d
24 903, 910 (9th Cir. 2014) (quoting *Williams v. Woodford,* 384 F.3d 567, 584-85 (9th Cir. 2004));
   *United States v. Aulicino,* 44 F.3d 1102, 1117 (2d Cir. 1995) (unintentional interference with
25 attorney-client relationship may violate defendant's Sixth Amendment rights where government
   gains confidential information and prejudice results); *United States v. Stepney*, 246 F. Supp. 2d 1069,
26 1074 (N.D. Cal. 2003) ("An intrusion by the government into an attorney-client relationship in order
   to obtain confidential information may be deemed a violation of a defendant's Sixth Amendment
27 right to effective assistance of counsel . . .").
28

2023) (privilege log inadmissible at trial to show bad faith).[34] Ultimately, "[c]lients must be free to make full disclosure to their attorneys . . . in order that the client may obtain 'the aid of persons having knowledge of the law and skilled in its practice," free from fear that one day those disclosures will be used against them in court. *Zolin*, 491 U.S. at 562 (cleaned up); *see also In re Grand Jury*, 23 F.4th at 1093 (noting the attorney-client privilege "provid[es] a sanctuary for candid communication about any legal matter").

The introduction of Mr. Lopez's confidential communications with counsel and reference during the closing argument separately violated his due process rights under the Fifth Amendment. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973). The affirmative use of Mr. Lopez's consultations with legal counsel against him, years later, in a criminal prosecution is fundamentally unfair when Mr. Lopez justifiably expected that such communications would remain confidential. *United States v. Stepney*, 246 F. Supp. 2d 1069, 1074 (N.D. Cal. 2003) (noting that government intrusion into the attorney-client relationship may constitute "a violation of Fifth Amendment due process rights").

Before trial, Mr. Braverman prophetically noted the high risk that the government would use the privileged communication with Mr. Lopez's counsel about the search warrant to establish intent.

---

[3] Privilege logs are also hearsay. *See, e.g.*, ECF No. 521, at 36 (citing *Biggs v. Chicago Bd. of Educ.*, No. 18-CV-6183, 2022 WL 1591577, at *9 (N.D. Ill. May 19, 2022) (finding defendant's "privilege log is inadmissible hearsay to the extent [p]laintiff offers it for the truth of the matter contained in the log entries")).

[4] The government has stated that the Ninth Circuit has held that privilege logs are admissible. No case has been found to support this position, which is contrary to other cases cited above by the defense. The sole case, *Pac. Pictures Corp. v. United States Dist. Court*, 679 F.3d 1121, 1126 (9th Cir. 2012), cited by the government with respect to Riveron materials, is inapplicable to privilege logs and makes no reference to privilege logs. Further, the privilege log was never shown to Riveron as noted at sidebar during trial. Additionally, as a civil case, it does not consider the Fifth Amendment right to due process and a fair trial, or the Sixth Amendment right to effective assistance of counsel, based on the cases cited above. No authority has been found to support the admission of the privilege log and other exhibits disclosing privileged communications in a criminal case.

The Court correctly asked, "**wouldn't that be grounds for a mistrial?**"  Calendar Call Transcript, at 61-63 (March 11, 2025) (emphasis added).  Based on the government's closing argument, including but not limited to the privileged communications, linkage of the exhibits bearing on the privilege, and the pointing to defense counsel (as noted below), a mistrial is warranted to ensure that Mr. Lopez receives a fair trial.  These constitutional errors cannot be corrected.  Only a mistrial now can protect Mr. Lopez's rights to a fair trial.

Second, government counsel violated this Court's redaction order and the Sixth Amendment right to effective assistance of counsel, by discussing how lawyers also change firms and then pointing directly to Mr. Krotoski. *See* Trial Transcript, at 194:17-21 (April 9, 2015).  Government counsel talked about how lawyers also change firms. Trial Transcript, at 194:17-21 (April 9, 2015).   At the reference to "Lawyers do it," government counsel stepped towards the defense counsel table and pointed directly at Mr. Krotoski.

There was no reason for the closing argument or the pointing to counsel other than to highlight that Mr. Lopez's counsel had changed firms, from Mogan Lewis.  The pointing in the courtroom invited the jury to speculate about counsel and whether there was a connection to the multiple references to Morgan Lewis. This constituted a separate violation of the Sixth Amendment.  This calculated and impermissible conduct by government counsel during closing argument separately deprives Mr. Lopez of his fair trial rights.

Third, and separately, the government's argument allowed the jury to consider Mr. Lopez's privileged communication with counsel on all counts.  There was no limitation on its use.  The jury cannot be allowed on its own to speculate how the privileged communication affects the Sherman Act count.   Only a mistrial can correct this misuse of the privileged communications during the government's closing argument which made repeated reference to the privileged communication and how it should be used by the jury.

## IV.    A Mistrial Is Required Based on the Refusal to Provide Several Theory of Defense Jury Instructions

A central aspect to a fair trial is to allow the accused to present his or her theory of defense through jury instructions.  The failure to do so results in reversible error and may constitute plain error

based on settled Ninth Circuit precedent.

As the Ninth Circuit has explained:

The right to have the jury instructed as to the defendant's theory of the case is **one of those rights "so basic to a fair trial" that failure to instruct where there is evidence to support the instruction can never be considered harmless error.** Jurors are required to apply the law as it is explained to them in the instructions they are given by the trial judge. They are not free to conjure up the law for themselves. Thus, a failure to instruct the jury regarding the defendant's theory of the case precludes the jury from considering the defendant's defense to the charges against him. Permitting a defendant to offer a defense is of little value if the jury is not informed that the defense, if it is believed or if it helps create a reasonable doubt in the jury's mind, will entitle the defendant to a judgment of acquittal.

We conclude that our cases — both before and after *Chapman* — stating that the **failure to instruct the jury on the defendant's theory of the case is "reversible error" mean that the error can never be treated as harmless.**

*United States v. De Bright*, 742 F.2d 1196, 1201-02 (9th Cir. 1984) (emphasis added). The *De Bright* precedent has been followed in other cases, mandating reversal based on the failure to provide the theory of defense jury instructions, regardless of any argument that the error may be harmless. *See, e.g., United States v. Zuniga*, 6 F.3d 569, 570 (9th Cir. 1993) (Even if the theory of defense "evidence is weak, insufficient, inconsistent, or of doubtful credibility, the instruction should be given"; citing *De Bright* and reversing and remanding for a new trial) (cleaned up). The failure to provide the theory of defense jury instruction may also constituted plain error, requiring reversal. *See, e.g., United States v. Bear*, 439 F.3d 565, 567 (9th Cir. 2006) ("We conclude that the district court committed plain error by not giving the jury, *sua sponte*, a public authority defense instruction, and we reverse Bear's conviction.").

In this case, Mr. Lopez presented several theories of defense. *See, e.g.*, ECF Nos. 641, 500. All were rejected, as presented. The Court modified one theory of defense in a manner that was inconsistent with the original theory of defense, omitted key elements, and was confusing when combined with other elements in the same Jury Instruction No. 21. *See* Trial Transcript, at 70-74 (April 8, 2025). The remaining jury instruction for the theories of defense were declined.

The denial of the multiple theory of defense jury instructions warrants a mistrial based on Ninth Circuit precedent. While no prejudice need be shown under Ninth Circuit precedent, when the Court

denied the theory of defenses, it gave the government an exclusive opportunity to argue and advocate its version of the case and denied the jury the opportunity to consider reasonable doubt based on the multiple theory of defense jury instructions. This "basic [right] to a fair trial" to present theory of defense jury instructions denied Mr. Lopez his right to a fair trial. *De Bright*, 742 F.2d at 1201.

Some examples are highlighted below.

Substantial evidence at trial showed numerous mis-steps in the government investigation which bore directly on the failure of the government to meet its burden of proof beyond a reasonable doubt. As one example, among many, the government never reviewed the wage data it subpoenaed which confirmed there was no wage fixing conspiracy that was implemented, as alleged and argued by the government. The FBI agents testified that they never reviewed the subpoenaed wage data. From the trial evidence, it was unclear who if anyone reviewed the wage data. The refusal to provide the theory of defense instruction, did not provide guidance to the jury on this central defense and that the jury could "consider such testimony and evidence in the context of evaluating that the government on the evidence and absence of evidence has satisfied its burden to prove the guilt of the defendant on trial beyond a reasonable doubt." ECF No. 641, at 4 (citing cases in support of the theory of defense); ECF No. 500, at 5 (citing cases in support). For example, the Supreme Court has noted that the defense may "attack[] the investigation" including the "thoroughness" of the investigation." *Kyles v. Whitley*, 514 U.S. 419, 442 445-451(1995). The Ninth Circuit en banc has held the defense may challenge and raise "related issues of the quality of the investigation." *Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir. 1997) (en banc); *see also Bowen v. Maynard*, 799 F. 2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation") (cited and quoted in *Kyles v. Whitley*, 514 U.S. 419, 446 (1995)). The failure to provide this jury instruction alone is reversible error. *De Bright*, 742 F.2d at 1201-02.

On the wire fraud counts, a central defense concerned whether there was a pending or threatened investigation as required under the Purchase Agreement and other documents. The Court declined the theory of defense jury instruction on this factual issue that would allow the jury to "consider whether the defendant had actual knowledge of an investigation, the information shared by

the FBI in October 30, 2019, along with other evidence. You may consider whether there was an investigation and the scope of any investigation and the target status." ECF No. 641, at 6 (citing cases in support of the theory of defense). The FBI agents testified that after the October 30, 2019 interview, they never communicated with Mr. Lopez again. The FBI agents did not inform Mr. Lopez that he was a target or subject of any investigation. The agents showed him a few documents and he cooperated with their requests to image his cell phone. Mr. Lopez provide more than 800,000 records in response to the subpoena for Community Home Health Care that the FBI agents provided to him. That evidence confirmed that there was no agreement. This jury was "preclude[d] … from considering the defendant's defense to the charges against him," and, more fundamentally, the fundamental right to "create a reasonable doubt in the jury's mind." *De Bright*, 742 F.2d at 1201-02. Reversible error results from the failure to provide the theory of defense jury instruction. *Id*.

The government presented numerous examples and exhibits where wage rate information was exchanged. The government argued that these exchanges were nefarious and furthered the conspiracy. Instead, consistent with Supreme Court and Ninth Circuit and other cases, the exchange of wage information alone is lawful. ECF No. 641, at 6 (citing cases in support of the theory of defense); ECF No. 500, at 21-22 (same). By refusing to provide the theory of defense jury instruction, the jury was not properly guided on this key defense and the government was allowed to unfairly argue it's version of the facts and the jury was not properly allowed to consider this theory of defense and that exchanging wage information is lawful activity.

The government presented numerous examples and exhibits where competitors obtained wage information of competitors. This process is often referred to as gathering "competitive intelligence." Once again, the government argued that possession of wage information was nefarious and furthered the conspiracy. Instead, consistent with Supreme Court and Ninth Circuit and other cases, this activity does not violate the Sherman Act. ECF No. 641, at 12 (citing cases in support of the theory of defense); ECF No. 500, at 23 (same). The Court declined the theory of defense jury instruction:

> In the home health care industry, as in other businesses, companies may obtain competitors' wage information from public sources, or from non-public sources. This practice is sometimes referred to as gathering "competitive intelligence." They

1
2
3
4

> may obtain information about their competitors' wages from public sources such
> as the media, job applicants, and others involved in the home health care industry.
> For example, a nurse applicant may lawfully tell a company the wage he or she has
> or has been offered by the competitor for the purpose of trying to negotiate a better
> wage from the company. It is not illegal for a competitor to obtain, rely upon, and
> act on wage and other information received from nurses, media, internet sources,
> and others involved in the health care industry.

5  The jury was not allowed to received guidance based on several examples advanced by the

6  government.  Reversible error results from the failure to provide the theory of defense jury

7  instruction.  *De Bright*, 742 F.2d at 1201-02.

8          The government highlighted several meetings and lunches at which the competitors met and

9  suggested again that these meetings were nefarious and furthered the conspiracy.  The Ninth Circuit

10 and other cases have held that mere presences at competitor meetings is insufficient to establish guilt.

11 The Court declined the theory of defense jury instruction.  ECF No. 641, at 13 (citing cases in support

12 of the theory of defense); ECF No. 500, at 24 (same).  The jury was not permitted the opportunity to

13 hear this defense and provide context to the various meetings the government advanced as part of the

14 alleged conspiracy.  Reversible error results from the failure to provide the theory of defense jury

15 instruction.  *De Bright*, 742 F.2d at 1201-02.

16         As another example, during the opening statement, government counsel argued that some of

17 the nurses, including Tanika Hightower, were "stuck at the same wage rate for two years."  Trial

18 Transcript, at 6:23-25, 94:1 (March 25, 2015).  The nurse mobility theory of defense instruction would

19 have allowed the jury to consider the issue of nurse mobility "in the context of evaluating whether there

20 was an agreement to fix wages within a range as alleged."  ECF No. 641, at 5 (citing cases in support

21 of the theory of defense).  Yet, the Court prevented any witnesses, summary exhibits or experts from

22 testifying about nurse mobility, even though the proffered expert testimony and other witnesses

23 testified that they had options for other positions in the home health and health care industry in the Las

24 Vegas market.  Trial Transcript, at 6:19-24 (April 3, 2015).  The summary charts showed that nurses

25 that were hired by Maxim, NurseCore, Community Home Health Care, Saint Dominic's Home Health,

26 and other agencies, had a record of mobility based on the production from the government and defense.

27 The evidence rebutted the government claim that nurses were "stuck" based on the alleged wage fixing

28

conspiracy. The refusal to provide this theory of defense instruction alone requires a mistrial to safeguard Mr. Lopez's right to a fair trial. Reversible error results from the failure to provide the theory of defense jury instruction. *De Bright*, 742 F.2d at 1201-02.

The defense proposed a First Amendment theory of defense instruction. ECF No. 500, at 18-19 (citing cases in support of the theory of defense). After the trial evidence made clear that the competitor meetings were conducted and incidental to petitioning Nevada Medicaid on a host of issues including the reimbursement proposal to increase the reimbursement rate, the Court agreed to give an instruction at the close of the case. *See* Trial Transcript, at 91-92 (March 28, 2025) (afternoon session). Unexpectedly, the Court decided against any First Amendment theory of defense instruction. Not only do the facts and law support the instruction, the failure to provide the instruction undermined the breathing space to the right of petition guaranteed by the First Amendment as recognized by the Supreme Court and Ninth Circuit. *See, e.g.*, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006); *see also Luxpro Corp. v. Apple Inc.*, 2011 WL 1086027, No. C. 10-03058 JSW at *6 (N.D. Cal. Mar. 24, 2011) ("Under the breathing space principle, the First Amendment protects conduct that does not fall within the protection of the speech clause in its own right but must be protected to adequately safeguard the freedom of speech. In the petitioning context, 'to exercise its petitioning rights meaningfully, a party may not be subjected to liability for conduct intimately related to its petitioning activities.' The Ninth Circuit noted that, consistent with the breathing space principle, it had previously recognized the Noerr Pennington doctrine protects conduct incidental to the [petitioning].") (quoting *Sosa*, 437 F.3d at 934-35). Reversible error results from the failure to provide the theory of defense jury instruction. *De Bright*, 742 F.2d at 1201-02.

Dan Lubinsky testified at trial that Maxim had independently decided to set nurse wage rates within the range so LPNs were paid $21 to $23 per hour and RNs were paid $27 to $30 per hour. *See* Trial Transcript, at 66-69 (March 28, 2025). The proposed theory of defense would have explained:

> The independent action of a person or business does not violate the Sherman Act, or Count One. Thus, a business may choose to set wages identical to those charged by its competitors and still not violate the Sherman Act. Indeed, a business may adopt wage policies, wage changes, or actual wages identical to those of its competitors, so long as such actions are the result of an independent business

decision rather than an agreement or understanding among competitors.
ECF No. 641, at 8 (citing cases in support of the theory of defense); ECF No. 500, at 20 (same).  The Court gave a modified version of this theory of defense which did not fully capture the proposed theory.

The Court modified the theory of defense instruction in a manner that was inconsistent with the original theory of defense, omitted key elements, and was confusing when combined with other elements in the same Jury Instruction No. 21.  *See* Trial Transcript, at 70-74 (April 8, 2025).  For example, the modified instruction stated that, "A business may lawfully copy its competitor's wages -- competitor's wage policies and wage changes and adopt the same wages or other practices as long as it does so independently and is not part of an agreement or understanding with one or more of its competitors to fix wages." *Id*. at 73:7-11.  However, Dan Lubinsky was not copying other competitors when Maxim independently established the wage ranges before the public hearing on the reimbursement rate on September 30, 2016.  The Court's instruction limited the conduct to copying or adopting the same wages.  This undermined the theory of defense as proposed.

Additionally, the jury instruction as given created more confusion about the theory of defense.  The jury was told that it could consider evidence of competition on whether there was an agreement, yet if there was a conspiracy then actual competition was not a defense.  Then the jury was told that, "The mere fact that the defendant and his competitors may have paid similar wages, made parallel wage rate changes, or engaged in similar practices by themselves may not demonstrate a conspiracy to fix wages since such activities may be consistent with ordinary and proper competitive behavior in a free and open market."  *Id*. at 73:1-6.  This modified instruction failed to cover the theory of defense as proposed.  By including these terms in the general conspiracy instruction, it also created more confusion.  *See, e.g., United States v. Bello-Bahena*, 411 F.3d 1083, 1091 (9th Cir. 2005) ("Because the evidence warranted an instruction regarding official restraint, and because the instruction given wholly failed to cover this theory, we reverse the judgment of the district court and rem

]and for a new trial."). Reversible error results from the failure to provide the theory of defense jury instruction.  *De Bright*, 742 F.2d at 1201-02.

The failure of the Court to provide the theory of defense instructions creates reversible error, regardless of whether harm can be shown.  As the Ninth Circuit has held, "failure to instruct the jury

DEFENDANT LOPEZ'S THIRD MOTION
FOR MISTRIAL

2:23-CR-00055-CDS-DJA

on the defendant's theory of the case is 'reversible error' mean that the error can never be treated as harmless." *Id*. at 1202. Here, the failure to give any one instruction creates reversible error. The Court magnified this problem by rejecting nearly all theory of defense instructions. A mistrial is required to ensure that Mr. Lopez receives a fair trial.

## V.    Conclusion

For the foregoing reasons, a mistrial is warranted in this case as Mr. Lopez's right to a fair trial and constitutional rights, including his right to effective assistance of counsel were violated. The failure to provide the theory of defense jury instructions separately warrants a mistrial based on Ninth Circuit precedent.

Dated: April 14, 2025                    Respectfully submitted,

PILLSBURY    WINTHROP    SHAW    CLARK HILL PLLC
PITTMAN LLP (pro hac vice)

_____/s/_____                          _____/s/_____
MARK L. KROTOSKI (pro hac vice)            PAOLA M. ARMENI
2550 Hanover Street                        1700 South Pavilion Center Drive, Suite 500
Palo Alto, CA 94304-1115                   Las Vegas, Nevada 89135
Tel: (650) 233-4500                        Tel: (702) 862-8300


PILLSBURY WINTHROP SHAW                     ANDERSON KILL, P.C. (pro hac vice)
PITTMAN LLP (pro hac vice)

_____/s/_____                          _____/s/_____
RICHARD P. DONOGHUE (pro hac vice)         SAMUEL M. BRAVERMAN (pro hac vice)
31 W 52nd Street                      7 Times Square, 15th Floor
New York, NY 10019                         New York, NY 10036
Tel: (212) 858-1000                        Telephone: (212) 278-1008