JEFFREY CRAMER (NYSBN 2621779)
MIKAL JENNA CONDON (CABN 229208)
ANDREW MAST (CABN 284070)
PARADI JAVANDEL (CABN 295841)
CONOR BRADLEY (NJBN 373722021)
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 941092
Tel: 415.934.5300 / Fax: 415.934.5399
andrew.mast@usdoj.gov

SIGAL CHATTAH
Interim United States Attorney
District of Nevada
Nevada Bar No. 8264
RICHARD ANTHONY LOPEZ
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702.388.6551 / Fax: 702.388.6418
tony.lopez@usdoj.gov
*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>EDUARDO RUBEN LOPEZ,<br>　　a/k/a "Edward Lopez"<br><br>Defendant. | Case No. 2:23-CR-00055-CDS-DJA<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S THIRD MOTION FOR MISTRIAL [Dkt. No. 654]** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A. The Government's Use of Non-Privileged Documents Was Appropriate ................... 1

    B. The Government's Rebuttal Argument Was Appropriate ........................................... 5

    C. Defendant's Jury Instructions Were Baseless and Improper........................................ 6

        1. There Was No Basis for an Investigatory Techniques Instruction ......................... 7

        2. The Jury Was Sufficiently Instructed on Defendant's Knowledge ........................ 8

        3. The Jury Was Sufficiently Instructed on Conspiratorial Conduct ......................... 8

        4. There Was No Basis for a Nurse Mobility Instruction..........................................11

        5. There Was No Basis for a First Amendment Instruction .....................................11

III. CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   Page

*Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127 (9th Cir. 1992) ...................................................... 2, 4

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974) .............................................................................. 6

*In re Coordinate Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432 (9th
    Cir. 1990) ...................................................................................................................................... 11

*In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992) ................................................... 2, 4

*In re Pacific Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012) ............................................................. 3

*Johnson v. Cullen*, 704 F. Supp. 2d 869 (N.D. Cal. 2010) ................................................................ 9

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) ............................. 12

*Merced v. McGrath*, 426 F.3d 1076 (9th Cir. 2005) ........................................................................ 11

*Schrader Cellars, LLC v. Roach*, 129 F.4th 1115 (9th Cir. 2025) ................................................. 11

*Siemens v. Seagate Tech.*, No. SACV 06-788JVS (ANx), 2009 WL 8762978 (C.D. Cal. 2009) 2

*United States v. Davis*, 663 F.2d 824 (9th Cir. 1981) ........................................................................ 5

*United States v. Escalante*, 637 F.2d 1197 (9th Cir. 1980) .............................................................. 1

*United States v. Escobar de Bright*, 742 F.2d 1196 (9th Cir. 1984) ............................................... 6

*United States v. Garrett*, 898 F.3d 811 (8th Cir. 2018) .................................................................... 8

*United States v. Ibarra*, No. 23-1282, 2024 WL 2746747 (9th Cir. May 29, 2024) ...................... 8

*United States v. Magdaleno*, 43 F.4th 1215 (9th Cir. 2022) .......................................................... 10

*United States v. Olano*, 62 F.3d 1180 (9th Cir. 1995) ...................................................................... 4

*United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009) .................................................................... 3

*United States v. Sandoval-Gonzalez*, 642 F.3d 717 (9th Cir. 2011) ............................................. 12

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) ..................................................... 11

*United States v. Thomas*, 612 F.3d 1107 (9th Cir. 2010) ................................................................. 7

**Other Authorities**

2 McCormick On Evidence (8th ed. Jan. 2020) .................................................................. 12

**Federal Rules**

Fed. R. Civ. P. 26(b)(5)(A) ................................................................................................... 1

## I. INTRODUCTION

After a thirteen-day trial, Defendant was convicted of one count of wage fixing and five counts of wire fraud. The morning the jury returned its verdict, Defendant filed his third motion for a mistrial.[1] Contrary to Defendant's arguments, the government did not violate Defendant's privileges or constitutional rights by referencing non-privileged documents during closing argument. Nor did it do so by referring to job mobility and allegedly pointing at defense counsel during rebuttal. And the Court did not err by declining to give Defendant's multiple, redundant, and (in at least one instance) legally incorrect theory-of-the-defense instructions. Defendant's mistrial motion should be denied.

## II. ARGUMENT

A mistrial is appropriate where "there is a manifest necessity . . . , or the ends of public justice would otherwise be defeated." *United States v. Escalante*, 637 F.2d 1197, 1202 (9th Cir. 1980) (quoting *United States v. Klein*, 582 F.2d 186, 190 (2d Cir. 1978)). But this "power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Id.* at 1202 (quoting *Klein*, 582 F.2d at 190). Defendant has shown no such exigent, plain or obvious circumstance here, and no mistrial is warranted.

### A.   The Government's Use of Non-Privileged Documents Was Appropriate

First, as the Court ruled before and multiple times during trial, the communications the government introduced at trial were not privileged. The privilege log (Government Exhibit 204) was not privileged. Fed. R. Civ. P. 26(b)(5)(A); *In re Grand Jury Investigation*,

---

[1] Although Defendant identifies the instant motion as his third request for a mistrial, it is actually the fourth time Defendant has sought such relief. (*See* Mot. for Mistrial, Dkt. No. 609; Trial Tr., Dkt. No. 627, at 63:18-23 ("Your Honor, with due respect – sorry – we move for a mistrial because the Court has recast our theory of defense as an intent to repay."); Trial Tr., Dkt. No. 643, at 90:14 ("And we're going to move for a mistrial, your Honor."); Mot. for Mistrial, Dkt. No. 654.)

1

974 F.2d 1068, 1071 (9th Cir. 1992); *see also Clarke v. Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992). That is because the facts contained in the privilege log do not identify Defendant's "motive . . . in seeking representation, litigation strategy, or the specific nature of the services provided." *Clarke*, 974 F.2d at 129. At most, the log reveals the "general purpose of [the] work" that Morgan Lewis performed for Defendant, which is not protected. *Id.* Accordingly, the Court found the privilege log relevant and admissible.[2] The Court made this ruling the week before trial started, three times during trial, and once during closing arguments.[3] Defendant makes no new arguments, cites no new legal precedent, and identifies no new reason that those multiple rulings are incorrect. They are not.

Nor is Defendant's September 18, 2021 email to himself identifying his multiple attorneys (Government Exhibit 151R)[4] privileged. As the Court noted in response to Defendant's first motion for a mistrial: "As for the email listing out counsel, there's no way to assert privilege over that document. That document wasn't privileged." (Trial Tr., Dkt. No. 639, at 103:3-5.)[5] That is because it is not a communication between a client and his

---

[2] To the extent Defendant argues that privilege logs are never admissible, he is wrong. *See, e.g., Siemens v. Seagate Tech.*, No. SACV 06-788JVS (ANx), 2009 WL 8762978, at *8 (C.D. Cal. 2009) (admitting a privilege log despite a hearsay objection).

[3] (Order, Dkt. No. 546, at 2 n.2 ("[T]he purpose of work set forth in the privilege log . . . is not protected"); Trial Tr., Dkt. No. 600, at 89:14-90:11 ("The Ninth Circuit has found that privilege logs are not privileged."); Trial Tr., Dkt. No. 605, at 12:5-9 ("I'll reiterate it here today, that privilege logs are not privileged."); Trial Tr., Dkt. No. 639, at 100:16-20 ("[S]o long as the privilege logs are generic enough, they're not privileged."); Trial Tr., Dkt. No. 650, at 112:14-17 ("I have already made a determination … that privilege logs, if general enough, are not privileged in the Ninth Circuit.").)

[4] As Exhibit D to his motion, Defendant attaches the unredacted version of Exhibit 151R. That is not the version that was admitted and shown to the jury. Instead, consistent with the Court's pretrial rulings, the admitted version of Exhibit 151R redacts the names of all lawyers referenced in the email.

[5] (*See also* Trial Tr., Dkt. No. 605, at 9:12-19 ("[T]here's no dispute that this is not privileged."); *id.* at 12:12-15 ("[T]his e-mail merely sets forth the names of attorneys and then . . . [Defendant] identifies which attorney is which. [It] doesn't contain any substance of any communication.").)

2

attorney; much less a confidential communication seeking or relaying legal advice. It is just a list of Defendant's attorneys. Defendant does not explain how such a list is privileged.[6] And, even if it were privileged (it is not), Defendant waived that privilege when he failed to claim privilege over the document at any point until after trial.[7]

The Morgan Lewis letter (Government Exhibit 152) is also not privileged. It contains no privileged information. The letter does not even identify the purpose of Morgan Lewis's representation of Defendant, much less is it a confidential communication between Defendant and his attorney for the purpose of obtaining legal advice. And Defendant provided the letter to a third-party (Riveron) during due diligence in the Solace transaction, which would have waived any privilege had it existed.[8] So, too, would Defendant's failure to claim privilege over the letter until after trial. But the multiple ways in which Defendant might have waived privilege are irrelevant, as the document was never privileged in the first place.[9]

---

[6] In support of his belated privilege claim, Defendant's motion notes only that the email was "equivalent [to] a private note." (Mot. for Mistrial, Dkt. No. 654, at 11.) Private notes are also not privileged.

[7] Defendant vigorously contested privilege over a number of documents produced to the government, including (1) dozens of communications over which Defendant's prior counsel had expressly waived any privilege, and (2) several documents that were screened as privileged and never reviewed by the government. In response, the government's filter team engaged in lengthy motions practices before the Magistrate Judge to resolve the claims and issues in dispute. At no point in this nearly year-long, motion-heavy process did Defendant claim privilege over the September 18, 2021 email or the Morgan Lewis letter, discussed below.

[8] *See, e.g., In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege."); *United States v. Ruehle*, 583 F.3d 600, 612 (9th Cir. 2009) ("*Any* voluntary disclosure of information to a third part waives the attorney-client privilege, regardless of whether such disclosure later turns out to be harmful." (emphasis in original)).

[9] Defendant also attaches to his motion an email from Google containing the search warrant for Defendant's Gmail account, and a spreadsheet of legal expenses prepared by third-party Riveron. (Mot. for Mistrial, Dkt. No. 654, Exs. B & E.) Defendant does not explain more.

Second, the government's use of those nonprivileged documents in closing did not infringe on Defendant's privileges or constitutional rights. The documents revealed that Morgan Lewis was Defendant's antitrust counsel, which is not a privileged fact. *Clarke*, 974 F.2d at 129; *In re Grand Jury Investigation*, 974 F.2d at 1071 (counsel's identity is not privileged). And because the documents were not privileged, the government's use of those documents could not invade a privilege.

Indeed, the Court's pre-trial ruling allowed the government to use the disputed documents to show that Defendant "purposely concealed and misrepresented the federal criminal investigation into his wage fixing conduct." (Order, Dkt. No. 546, at 3.) To address counsel's Sixth Amendment concerns, the Court required that defense counsel's name (but not the identification of law firms) be redacted from the documents. (*Id.* at 4.) The government abided by that ruling when admitting the documents into evidence at trial. And, in closing, the government used the documents for the limited purpose identified by the Court: "All I want you to do is recognize that this evidence shows [Defendant] was very aware of the [g]overnment's ongoing criminal investigation." (Trial Tr., Dkt. No. 650, at 93:23-25.) The government did not impermissibly ask the jury to speculate about Defendant's "motive . . . in seeking representation, litigation strategy, or the specific nature of the services provided" by Morgan Lewis. *Clarke*, 974 F.2d at 129.[10] Use of the non-

---

In any event, neither of those documents is privileged and Defendant has never objected to them on such grounds.

[10] *See also United States v. Olano*, 62 F.3d 1180, 1205 (9th Cir. 1995) ("Roth's testimony falls into the category of unprotected communication. Roth stated that he had opened a bank account for Olano, had reviewed and completed certain condominium documents, and had conveyed certain messages from McCuin to Olano. None of these statements divulged Olano's motives, strategies or goals in the sale of the Dauphine Condominiums. Roth's testimony, instead, provided only general descriptions of the work that he performed on Olano's behalf. It was not privileged.").

4

privileged materials to appropriately show Defendant's intent and to rebut a defense of mistake or lack of knowledge neither violated the Court's pretrial ruling nor deprived Defendant of due process.[11]

Nor was Defendant prejudiced on the Sherman Act count by the use of the contested documents to show intent or lack of mistake on the fraud counts. The government did not introduce (or, indeed, have access to), reference, or invite speculation into the content of any privileged communications. And it was careful to caution the jury that it could not "infer that someone is guilty merely because they decided to consult with counsel." (Trial Tr., Dkt. No. 650, at 93:19-21.) There is no reason to believe that the jury inferred guilt on the Sherman Act count based on the Morgan Lewis documents or references thereto.

### B.   The Government's Rebuttal Argument Was Appropriate

The government did not violate the Court's rulings or Defendant's constitutional rights by arguing in rebuttal that lawyers and other employees should be able to change jobs while allegedly pointing at defense counsel. (*See id.* at 194:17-21 ("You got to be able to move job to job. Lawyers do it. . . . I should have, frankly, stuck with that. You got to be able to move. That's the essence of antitrust.") For one, the government's recollection differs from Defendant's version of events. Defendant contends the government "pointed directly" at defense counsel, (Mot. for Mistrial, Dkt. No. 654, at 9); the government does not believe this occurred. And, Defendant did not object to the government's allegedly egregious conduct at the time. *United States v. Davis*, 663 F.2d 824, 833 (9th Cir. 1981) (no

---

[11] Defendant argues that his due process rights were violated because he had an expectation of privacy in his privilege logs and private notes to himself about his antitrust counsel. That Defendant had a mistaken view of what was privileged, or that certain private things might see the light of day, does not implicate due process.

abuse of discretion in denying mistrial based on jury's observation of defendant in manacles "in light of [his] failure to raise any objection to the alleged exposures during trial").

Nevertheless, even assuming *arguendo* that Defendant's version of events is correct, it is irrelevant (and certainly does not warrant a mistrial). The government's rebuttal argument did not reference defense counsel, Morgan Lewis, defense counsel's current firm, the disputed documents, or in any way suggest that defense counsel was the unidentified Morgan Lewis lawyer. Defendant's lawyers did not introduce themselves by law firm, and other than when Defendant called a partner from Pillsbury to the witness stand, no reference was made to any of those firms in front of the jury. The jury could not have assumed from the facts in evidence that defense counsel worked as a partner at Morgan Lewis and then moved to his current firm. Therefore, it would have defied logic for the jury to make that connection during the rebuttal argument. Thus, the government's comments, which were made while discussing the Sherman Act count rather than the wire fraud charges, could not have led the jury to any impermissible inference or infringed Defendant's right to counsel. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations").

### C.     Defendant's Jury Instructions Were Baseless and Improper

Nor is a mistrial warranted because the Court did not give certain of Defendant's proposed jury instructions. A theory-of-defense instruction must have some foundation in the evidence and be supported by law. *United States v. Escobar de Bright*, 742 F.2d 1196, 1198 (9th Cir. 1984). And, even where a theory-of-the defense instruction has an evidentiary foundation and is supported by law, refusing to give the instruction is not reversible error

6

(and, therefore, does not warrant a mistrial) if "other instructions, in their entirety, adequately cover [the] defense theory." *United States v. Thomas*, 612 F.3d 1107, 1120 (9th Cir. 2010) (internal quotation marks omitted). Here, Defendant argues that the Court incorrectly failed to give separate instructions regarding (1) investitive techniques not used by the government, (2) Defendant's knowledge of a pending or threatened investigation, (3) several examples of conduct that were insufficient on their own to constitute a wage-fixing conspiracy, (4) nurse mobility, and (5) the First Amendment. The Court did not err (much less commit reversible error meriting a mistrial) by declining to give any of the proposed defense instructions.

### 1.   There Was No Basis for an Investigatory Techniques Instruction

The Court correctly held that Defendant did not establish an evidentiary foundation warranting an investigative techniques instruction. Defendant did not proffer any evidence attacking the investigative techniques used in this case; rather, Defendant merely challenged the scope of the investigation. (Trial Tr., Dkt. No. 649, at 169:2-3.) That issue was properly addressed elsewhere in the jury instructions. For example, the Court instructed the jury that reasonable doubt "may arise from a careful and impartial consideration of all the evidence, or from lack of evidence." (Final Jury Instructions, Dkt. No. 661, at 5.) Defendant's mistrial motion still fails to identify any investigative techniques the government should have used. Instead, Defendant merely states (baselessly) that the government never reviewed the wage data it collected from the co-conspirator companies. (Mot. for Mistrial, Dkt. No. 654, at 16.) The Court already found that this assertion attacks the scope of the investigation and provides no basis for an investigative techniques instruction. And, in any event, Defendant was still able to present this argument to the jury: the Court instructed the jury that "[e]vidence that the defendant and the alleged coconspirators actually competed

has been admitted to assist you in deciding whether they entered into an agreement to fix wages," (Final Jury Instructions, Dkt. No. 661, at 22-23), and defense counsel argued extensively at closing that the government's case was deficient because it did not present the jury with wage data, (*see, e.g.*, Trial Tr., Dkt. No. 650, at 147:5-14).

### 2. The Jury Was Sufficiently Instructed on Defendant's Knowledge

The Court also did not err in declining to give Defendant's proposed instruction regarding his alleged lack of knowledge of a threatened or pending criminal investigation. At the charge conference, the Court correctly recognized that Defendant's proposed instruction was merely an argument regarding how the jury should interpret certain facts in the record. (Trial Tr., Dkt. No. 649, at 172:16-17.) Defense counsel made this argument during his closing, (Trial Tr., Dkt. No. 650, at 162:24-166:7), and the jury was properly instructed that, to find Defendant guilty of wire fraud, it had to find that he "knowingly devised a scheme or plan to defraud" and that he acted with "intent to defraud." (Final Jury Instructions, Dkt. No. 661, at 32.)  That is sufficient to address Defendant's theory of the defense. *United States v. Ibarra*, No. 23-1282, 2024 WL 2746747, at *1 n.2 (9th Cir. May 29, 2024) ("Because [Defendant's] proffered argument concerned the government's proof of his knowledge, the instruction given to the jury regarding that element adequately covered his defense theory."); *see also United States v. Garrett*, 898 F.3d 811, 815 (8th Cir. 2018) (district court properly instructed jury as to the elements of the defense and allowed defense counsel to argue that the defendant's intoxication negated those *mens rea* elements).

### 3. The Jury Was Sufficiently Instructed on Conspiratorial Conduct

Defendant was not entitled to any of his proposed instructions itemizing standalone conduct that is insufficient to establish a wage-fixing conspiracy, including instructions that (1) the exchange of wage information with competitors alone is not unlawful, (2) obtaining

8

a competitors' wage information alone is not unlawful, (3) meeting with your competitors alone is not unlawful, and (4) independent decision-making does not violate the Sherman Act.

Defendant was free to argue (and did argue) that he engaged only in the lawful behaviors identified in his instructions and, therefore, did not reach a "mutual understanding" with his competitors to fix wages, as the Court instructed the jury was required for wage-fixing liability. (Final Jury Instructions, Dkt. No. 661, 22.) The Court's instructions also incorporated the relevant legal principles included in Defendant's instructions and identified specific examples of facts insufficient to support a wage-fixing conviction. The Court instructed the jury that:

- "[i]t is not enough . . . that [Defendant and his competitors] simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another," (*id.* at 21);
- "[t]he mere fact that defendant and his competitors have paid similar wages, made parallel wage rate changes, or engaged in similar practices by themselves may not demonstrate a conspiracy to fix wages," (*id.* at 23);
- "[a] business may lawfully copy its competitor's wage policies and wage changes . . . as long as it does so independently and not part of an agreement . . . to fix wages," (*id.*).

The jury was additionally instructed to consider "whether the wages offered resulted from the independent acts or business judgment of [Defendant and his competitors.]" (*Id.*) Where, as here, "the given instructions adequately embody the defense theory," Defendant "is not entitled to have jury instructions raised in his or her precise terms." *Johnson v. Cullen*, 704 F. Supp. 2d 869, 906 (N.D. Cal. 2010).

9

Moreover, the inclusion of conduct insufficient to support a wage-fixing conviction in the wage-fixing conspiracy jury instruction was the result of negotiation and compromise between the parties. After coming to an impasse during the first day of the charge conference, the parties agreed to submit to the Court supplemental jury instructions regarding the wage-fixing conspiracy and other Sherman Act elements. (*See* Gov.'s Supplemental Conspiracy Jury Instruction, Dkt. No. 644; Def.'s Supplemental Conspiracy Jury Instruction, Dkt. No. 645.) As a compromise, the government's proposed supplemental instruction included the legal principles embodied in several of the standalone theory-of-defense instructions proposed by Defendant. The next day, the Court proposed its own wage-fixing instruction that similarly sought to "combine[] and distill[] down" Defendant's theories into one instruction regarding the definition of a wage-fixing conspiracy. (Trial Tr., Dkt. No. 650, at 24-25.) Defense counsel noted that he "appreciate[d] the [Court's] efforts." (*Id.* at 25:16-17). And, while defense counsel "st[oo]d by" his proposal that separate instructions were appropriate, (*id.* at 25:18-19), he never objected to the *content* of the singular wage-fixing conspiracy instruction proposed, and ultimately given, by the Court. Thus, Defendant cannot now argue that the content of the instruction, incorporating elements he requested, constitutes reversible error warranting a mistrial. *See United States v. Magdaleno*, 43 F.4th 1215, 1219-20 (9th Cir. 2022) ("The doctrine of invited error prevents a defendant from complaining of an error that was his own fault." (internal quotation marks omitted)).

Finally, Defendant's proposed standalone instructions contained factual and legal deficiencies. For one, there was no evidentiary basis for Defendant's proposed instruction regarding competitive intelligence gathering. Moreover, Defendant's proposed instruction that "[i]t is not unlawful for persons to share wage information with their competitors,"

10

(Def.'s Proposed Jury Instructions, Dkt. No. 500, at 21), misstates the law because there are instances in which such exchanges are illegal, *see In re Coordinate Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 447 n.13 (9th Cir. 1990) (exchange of prices may be illegal under rule of reason analysis). Thus, the Court correctly declined to give Defendant's standalone instructions.

### 4. There Was No Basis for a Nurse Mobility Instruction

The Court also correctly declined to instruct the jury regarding nurse mobility, because there was no evidentiary or legal basis for that instruction. The Court (correctly) found that nurse mobility evidence was irrelevant because it did "not have any tendency to make a fact of consequence in this case more or less probable." (Order, Dkt. No. 616, at 3.) And there is no legal basis for a mobility instruction because nurse mobility is just a disguised, improper justifications defense. *See, e.g.*, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) (the *per se* rule does not permit an inquiry into the "economic justification" for a *per se* illegal restraint). As such, Defendant's proposed instruction would only have invited jury nullification, and the Court did not err in declining to give such an improper instruction. *See Merced v. McGrath*, 426 F.3d 1076, 1079 (9th Cir. 2005) (trial courts have a "duty for forestall or prevent" nullification (internal quotation marks omitted)).

### 5. There Was No Basis for a First Amendment Instruction

The Court correctly found there was no factual or legal basis for a First Amendment instruction because Defendant did not present any evidence of petitioning conduct. The *Noerr-Pennington* doctrine provides "an affirmative defense to liability" when individuals "petition . . . the government for redress." *Schrader Cellars, LLC v. Roach*, 129 F.4th 1115, 1125 n.12 (9th Cir. 2025). Because it is an affirmative defense, Defendant had to make a

11

"threshold showing" before presenting it to the jury. *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 723 (9th Cir. 2011) (quoting *United States v. Bailey*, 444 U.S. 394, 416 (1980)).[12] This threshold showing required Defendant to identify evidence of the petitioning conduct that the government ostensibly sought to punish (*i.e.*, the acts that the government sought to criminalize for which the *Noerr-Pennington* doctrine negated Defendant's liability). However, Defendant never identified any evidence of petitioning conduct. Instead, both at trial and in his motion, defense counsel vaguely refers to "competitor meetings [that] were conducted and incidental to petitioning Nevada Medicaid on a host of issues." (Mot. for Mistrial, Dkt. No. 654, at 19.) Those general references are insufficient to warrant a *Noerr-Pennington* instruction because counsel's assertions are not evidence. And, even further, "[t]he fact that [the defendant's actions] may eventually provoke agency action or review does not alone call the *Noerr-Pennington* doctrine into play." *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1159-60 (7th Cir. 1983). As such, there was no basis for a First Amendment instruction.[13]

## III. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's third motion for a mistrial.

Respectfully Submitted this 18th day of April, 2025.

*/s/ Conor Bradley*
Conor Bradley
Trial Attorney
Antitrust Division – United States Department of Justice

---

[12] *See also* 2 McCormick On Evidence § 336 (8th ed. Jan. 2020) (explaining that a party asserting a claim or defense must present evidence sufficient to put the claim or defense at issue).

[13] Nevertheless, defense counsel argued in closing that his conduct was protected by the First Amendment anyway. (Trial Tr., Dkt. No. 650, 149:16-16; 156:1-2.)

12