# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No. 2:23-cr-00055-CDS-DJA |
| Plaintiff | **Order Denying Defendant's Motion for Mistrial, Denying Defendant's Motion for a New Trial, and Denying Defendant's Motion for Judgment of Acquittal** |
| v. | |
| Eduardo Ruben Lopez, | |
| Defendant | [ECF Nos. 654, 666, 667] |

On April 14, 2025, after a fourteen-day trial, a jury returned a guilty verdict against defendant Eduardo Ruben Lopez on all counts set forth in the superseding indictment. Verdict, ECF No. 662. That same day, Lopez filed a motion for mistrial. Mot. for mistrial, ECF No. 654. The government filed its opposition on April 18, 2025. Opp'n, ECF No. 664. That motion is now fully briefed. Reply, ECF No. 665.

On April 28, 2025, Lopez filed a motion for a new trial (ECF No. 666) and a motion for judgment of acquittal (ECF No. 667). The government filed its opposition to both motions on May 12, 2025. Opp'n, ECF Nos. 675, 676. These motions are now fully briefed.[1] Replies, ECF Nos. 679, 680.

After careful consideration of the motions, I find Lopez fails to carry the heavy burden demonstrating his case is exceptional, so his motion for a new trial is denied. He also fails to demonstrate that, after viewing the evidence in the light most favorable to the government, any rational trier of fact could not have found the essential elements of the crimes he was charged with beyond a reasonable doubt, so his motion for judgment of acquittal is denied. Finally, his motion for mistrial is denied.

---

[1] On May 27, 2025, the government filed a motion for leave to file notice of supplemental authority, arguing that a recent Supreme Court decision is relevant to this court's decision on both of Lopez's motion. ECF No. 682. That motion was granted on May 30, 2025. Order, ECF No. 687.

I. **Legal authority**

  A. **Motion for a new trial**

Federal Rule of Criminal Procedure 33 permits a district court to vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal," and the court may thus weigh the evidence itself and judge the credibility of witnesses. *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992). However, Rule 33 motions are generally disfavored and should only be granted in "exceptional" cases. *United States v. Del Toro–Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012) (citing *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981)). The heavy burden of proving a new trial is warranted rests with the defendant. *See United States v. Halali*, 2017 WL 3232566, at *2 (N.D. Cal. July 28, 2017) (quoting *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009)). Indeed, a "motion for a new trial is directed to the discretion of the district judge. It should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *Pimentel*, 654 F.2d at 545 (internal quotation marks omitted).

  B. **Motion for judgment of acquittal**

Federal Rule of Criminal Procedure 29 provides that "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). When evaluating a motion for judgment of acquittal the court must "review the evidence presented against the defendant in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hernandez-Herrera*, 273 F.3d 1213, 1218 (9th Cir. 2001) (quoting *United States v. Neill*, 166 F.3d 943, 948 (9th Cir. 1999). Further, "it is not the district court's function to determine witness credibility when ruling on a Rule 29 motion[,]" *United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002), as those conditions are within the exclusive function of the jury, *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977). Rather, "after viewing the evidence in the light most favorable to the

government," the relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Cordova Barajas*, 360 F.3d 1037, 1040 (9th Cir. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If a rational trier of fact could find the essential elements of the crime(s) beyond a reasonable doubt, then motion must be denied. *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).

### C. Motion for mistrial

The decision whether to grant a mistrial is "reserved to the 'broad discretion' of the trial judge," and is highly fact-dependent. *Renico v. Lett*, 559 U.S. 766, 774 (2010) (quoting *Illinois v. Somerville*, 410 U.S. 458, 462 (1973)). The Supreme Court has long held that, "[w]here, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial," manifest necessity dictates a mistrial should be declared. *Gori v. United States*, 367 U.S. 364, 368 (1961). "[M]anifest necessity exists when the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn*, 400 U.S. 470, 485 (1971). The district court should take all relevant circumstances into account when deciding whether to grant a mistrial, rather than apply some "abstract formula." *United States v. Sommerstedt*, 752 F.2d 1494, 1498 (9th Cir. 1985).

## II.  Discussion

### A. Lopez's motion for a new trial is denied.

 Lopez raises thirteen individual arguments in support of his motion for a new trial. As to his last argument, Lopez argues cumulative error warrants a new trial. I address each argument in turn.

#### 1.  *There was no constructive amendment to the charges.*

Lopez has long maintained the government constructively amended the charges. Indeed, he claimed amendment even before trial commenced. *See* Mot., ECF No. 297. I adopted the magistrate judge's report and recommendation (R&R) that this motion be denied because the

superseding indictment properly alleged wire fraud and because the R&R correctly determined that Lopez's omission that his company was under criminal investigation "went to the nature of the bargain of the sale of his company because it went to the quality and other essential aspects of the transaction like potential liability." Order, ECF No. 303 at 7 (citing R&R, ECF No. 237 at 7).

Then, Lopez raised similar arguments as a motion for reconsideration of my order granting the government's motions in limine. *See* Mot. for recons., ECF No. 568. That motion was denied on the record for several reasons. *See* Trial tr., ECF No. 571 at 13–29. First, it was denied because Lopez raised an argument that was not included in his opposition to the motion, making it improper to ask for reconsideration based on that argument.[2] Second, some arguments in the motion for reconsideration were premised on disputes about jury instructions, which had not yet been settled, making them premature. And third, it was denied because it appeared Lopez's counsel misunderstood the scope of what was excluded. *See id.*

Lopez again raised arguments that the government had constructively amended the superseding indictment after the sixth day of trial. *See* Mot. ECF No. 608. That motion was denied on the record after the court determined that, despite Lopez's arguments to the contrary, the allegations of wrongdoing against Lopez had not changed. As explained to Lopez, the allegations lodged against him were that he lied, by omission or otherwise—on the specific dates alleged in the wire fraud counts—and that those lies were material to Solace's decision to purchase Community Health. *See* Trial tr., ECF No. 627 at 65–66. The court further determined that the government's allegations were not, nor had they been, that Solace bought Community Health for a definite amount of dollars and that Solace thought they were buying a company that was more valuable or less valuable than it was. *Id.* at 66. Rather, since the superseding indictment was unsealed, and throughout the government's case-in-chief, Lopez was alleged to

---

[2] *See Schanen v. U.S. Dept. of Just.*, 762 F.2d 805 (9th Cir. 1985) (holding that refusal to consider an argument not raised until the motion for reconsideration stage was not an abuse of the district court's discretion).

have committed wire fraud by failing to disclose his company was under criminal investigation, and his failure to do so resulted in Solace acquiring a company burdened with potential criminal liability, which was neither what Solace wanted nor bargained for. *See id.* at 66–67.

Lopez now argues that the jury instructions constructively amended the indictment. This new twist on an old argument fails because omitted from this section of Lopez's motion[3] is any citation to authority supporting his argument that the instructions provided to the jury constructively amended the superseding indictment, which alone is grounds to deny his requested relief. *See* Local Rule LCR 47-3 ("The failure of a moving party to include points and authorities in support of the motion constitutes a consent to denying the motion."). Nonetheless, the court addresses the deficiencies.

Relying on *United States v. Davis*, Lopez states a constructive amendment is per se reversable. 854 F.3d 601 (9th Cir. 2017). While an accurate statement of the law, Lopez fails to demonstrate how this case constitutes either of the two types of potential constructive amendment. As discussed in *Davis*, the two types of constructive amendment are: "first, where 'there is a complex set of facts [presented at trial] distinctly different from those set forth in the charging instrument,' and, second, where 'the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved.'" *Davis*, 854 F.3d at 603 (quoting *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002) (in turn quoting *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984))). Lopez fails to point out how the facts presented at trial were **distinctly different** from the allegations in the superseding indictment, nor how the crime charged in the superseding indictment was **substantially altered** to the degree it was impossible to know whether the grand jury would have indicted for the crimes actually presented. Instead, he summarily contends that the jury instructions presented "an uncharged theory" (ECF No. 666 at

---

[3] This section of the motion also includes a renewed request for grand jury transcripts, which is a violation of Local Rule IC 2-2(b) which prohibits raising two separate requests for relief in the same filing. *See* LR IC 2-2(b). Accordingly, this second request is denied without prejudice.

9) while simultaneously claiming that he needs the grand jury transcripts to prove his argument. Lopez certainly had the opportunity to point out differences in grand jury testimony from any grand jury transcripts he received related to witnesses who testified at trial to support his claim of a constructive indictment but fails to do so. Likewise, Lopez has had the benefit of the daily trial transcripts[4] since trial began, thus he could cite to the record to support his argument that the evidence presented at trial was starkly different than what was charged in the superseding indictment, but he also fails to do so. Finally, he fails to cite any authority to support his argument that jury instruction 28[5] constitutes a constructive amendment. Accordingly, Lopez's motion for a new trial on this ground is denied.

### 2. The court excluded the testimony of proposed expert Susan Stuckwisch after the attorney defied a court order and failed to comply with Rule 16 and limit the scope of testimony for two additional expert witnesses.

Lopez misrepresents about what occurred with three defense witnesses.[6] Lopez wholly fails to acknowledge the events that led up to striking proposed expert Stuckwisch. His failure to acknowledge what occurred, together with the underlying conduct, as well as other misrepresentations, are the subject of a separately issued order to show case.

To be clear, the court struck proposed defense expert witness, Suzanne Stuckwisch, because Lopez failed to comply with this court's order to have the expert meet and discuss some reports produced using a program called Tableau and what data (or subset of data) was used to create certain charts and results from that data. *See generally* Trial tr. 4/4/25 A.M., ECF No. 627 at 56–61. The court continued the mid-trial *Daubert* hearing that commenced on a Friday morning over a weekend so the parties could meet and confer to resolve issues so the court could then complete the *Daubert* hearing the following week.[7] Counsel for Lopez, Mark Krotoski, not only

---

[4] Lopez requested daily copies of the transcripts.
[5] Jury instruction 28 can be found at ECF No. 661 at 32–33.
[6] The court notes that the government sought to exclude four defense witnesses. I denied one motion in its entirety. *See* Trial tr., ECF No. 600 at 113. Lopez declined to call that witness (Dr. Becker) at trial and I issued an order for the remaining three. *See* Order, ECF No. 616.
[7] The court began the *Daubert* hearing on April 4, 2025. During the hearing, it became clear there were disagreements about what had and had not been disclosed, as well as outstanding questions about how

failed to comply with the order to meet and confer, but lied in an email to the government about the availability of the expert witness, stating "[Stuckwisch] has been traveling today and was unreachable" and that the defense "needed to sort an important work product issue." ECF No. 630-2. The court had questions regarding the witness's alleged weekend unavailability as it was illogical the witness would be traveling over the weekend when she was due back in Las Vegas for the continuation of the *Daubert* hearing on Monday morning. So on Monday morning, Stuckwisch was recalled to the witness stand. She testified she traveled back from Las Vegas to California on Friday evening, and that she spent her Saturday, *not traveling*, but running errands and getting a mammogram. Trial tr. 4/7/25 A.M., ECF No. 638 at 20–22. Thus, Krotoski's representation to the government that the witness was "traveling" was a lie. At no time when Stuckwisch was on the stand, or following her testimony, or even in any post-trial briefing, has Krotoski attempted to correct his lie. Indeed, he now pivots and claims Stuckwisch was "unexpectedly unavailable." ECF No. 666 at 16. In Stuckwisch's declaration that accompanies this motion, she states:

> I did not inform Mr. Krotoski of my weekend schedule including a previously set medical appointment. It was not until approximately 4pm that I was able to check my messages at which time I had several emails and voicemail messages from Mr. Krotoski. At 4:05pm, Mr. Krotoski and I spoke on the phone, and it was the first time we spoke all day.

ECF No. 666-3 at 5, ¶ 15.

It was not that Stuckwisch was unexpectedly unavailable—counsel for Lopez never bothered to ask for her availability to ensure compliance with the court's order to meet and confer and with Rule 16, proceeded to lie about her unavailability, and then failed to correct the record. His failure to ask her weekend availability demonstrates he had no intention of complying with the court's order or his obligations under Rule 16.

---

certain conclusions were reached, upon which data those conclusions were based, and the witness's use of a program called Tableau.

Krotoski's misrepresentation that the expert was "traveling," was unacceptable and demonstrative of bad faith. His actions also caused delays in disclosing discovery related to expert testimony and caused trial delays, so I also addressed the untimeliness of the disclosures under Rule 16. After conducting an analysis under Rule 16, I struck Stuckwisch so she was not allowed to testify. *Id.*

As noted on the record when I struck the proposed expert witness, the court consistently gives everyone the benefit of the doubt because the court understands trials can be stressful and busy, among other adjectives. *See generally* Trial tr. 4/7/25 A.M., ECF No. 638 at 23. Striking the witness was the appropriate sanction under Rule 16, given that counsel did not fully meet and confer to resolve the outstanding issues with Stuckwisch and then lied about the expert witness's alleged unavailability.[8] As noted above, to date, Krotoski has never attempted to correct,[9] or even explain, his lie. Instead, he omits the true reason Stuckwisch was excluded, has Stuckwisch submit a declaration seemingly shifting the blame onto her, and then argues that Lopez is entitled to a new trial based on her exclusion. Krotoski's conduct during the trial, especially in regard to Stuckwisch, and now exacerbated by his failure to address why she was actually stricken, is further evidence that Krotoski purposely and willfully disregarded the court's meet and confer order, then lied to justify it, in an attempt to conclude the *Daubert* hearing without complying with discovery obligations in order to "obtain a tactical advantage."

---

[8] Even after striking Stuckwisch, defense counsel persisted in gamesmanship. For example, on April 8, 2025, two weeks after the trial commenced, Lopez's counsel filed an amended exhibit list that ballooned from 17 pages to 158 pages. *Contrast* Original list, ECF No. 543, *with* Am. list, ECF No. 640; *see also* Trial tr. 4/10/24 P.M., ECF No. 649 at 69–70 (discussing ballooned exhibit list on the record). The same morning Stuckwisch was stricken, the court needed to resolve late-disclosed charts because the charts that were disclosed to the court and the Government were different than charts shown to defense witness Stanton while he was on the stand. *See* Trial tr., 4/7/25 A.M., ECF No. 638 at 58–62; *id.* at 86–88 (discussing examples of changes the government could identify in the charts during the direct examination of the witness). Ultimately, those charts were shown to the jury but were not admitted because Lopez did not verify what underlying data was used to create the charts, nor verify that he reviewed all of the underlying records for accuracy. *Id.* at 89–112; *see also* Trial tr., 4/7/25 P.M., ECF No. 639 at 8–30. Further, the court observed repeated acts of unprofessionalism by Lopez's counsel such as lackadaisically retrieving witnesses and not providing direct answers to direct questions which appeared purposeful as to delay the trial. *See* ECF No. 638 at 22–23 (discussing other purposeful delays caused by Krotoski).
[9] *See* Krotoski decl., ECF No. 666-1.

*Cf. United States v. Peters*, 937 F.2d 1422, 1426 (9th Cir. 1991) (finding the district court erred in excluding expert testimony of forensic pathologist because no willful or blatant discovery violation occurred).

Lopez also errs in his argument that the court did not consider a lesser sanction. Although experts' disclosures were untimely, and the court had questions about the timeliness of Lopez's subpoenas related to material needed for the expert reports, the court did not take issue with the late disclosures because the defense argued they had only recently received the underlying data. As a result, and as explained above, the court held a mid-trial *Daubert* hearing to address the scope of Stuckwisch's testimony, and even continued that hearing over a weekend to ensure a fulsome *Daubert* hearing. But for Krotostki's failure to meet and confer, and subsequent lie about Stuckwisch's alleged unavailability, the court could have concluded that hearing that permitted her to testify, as the court had already determined her proffered testimony was relevant.[10] Order, ECF No. 616 at 2–4.

Even though Stuckwisch was stricken, Lopez was able to present other evidence of wage information. Indeed, the wage records for several companies were admitted into evidence. *See* ECF No. 658, Gov't Exs. 182, 183 (wage data); ECF No. 659, Def.'s Ex. 503R, 505R (wage acknowledgement forms for CHC); Def.'s Ex. 568 (KanTime wage records); Def.'s Ex. 573 (Springview QuickBooks); Ex. 800 (St. Dominic's Home Health Pay Spreadsheet); Def.'s Exs. 1118–40 (Community wage data). Further, on day eleven of the trial, defense witness Dave Stanton testified about certain charts showing wage data. The charts were not introduced because they did not comply with Rule 1006 because the defendant could not demonstrate that the summary exhibits were reasonably accurate and correct in their characterizations of the underlying materials. *See United States v. Soulard*, 730 F.2d 1292, 1300 (9th Cir. 1984). Thus, although not through Stuckwisch specifically, Lopez was nonetheless able to introduce some

---

[10] As represented by Lopez, Stuckwisch would have presented an "analysis of the market structure and wages" and "wage information for each company" at issue during the trial. *See* ECF No. 666 at 14–16.

wage evidence during the trial. Accordingly, exclusion of Stuckwisch does not warrant a new trial.

Second, although the header suggests the court also excluded defense witnesses Wayne Brown and David Lampron (*see* ECF No. 666 at 9 ("Excluding Three Defense Experts Denied the Right to Present a Complete Defense and Constitutional Right to a Fair Trial")), that is inaccurate. Both Brown and Lampron were permitted to testify, however the scope of their testimony was limited. *See* Order, ECF No. 616. Notably, in the sections discussing how the court limited the scope of Brown's testimony, Lopez fails to cite any authority to support his argument that the court erred in its reasoning to limit their testimony. *See* ECF No. 666 at 13–14. Further, in that same section, Lopez concedes that he sought to introduce additional testimony from Brown to explain "that the Purchase Agreement required indemnification and a funded escrow account for indemnification and the negotiated indemnification shifted all the risk to [Lopez] in 'an amount that equates to the full amount paid at close of $12,506,250, or in other words, a full-money back guarantee for Solace per Section 6.2(a) through 6.2(e) of the Purchase Agreement.'" *Id.* at 13 (quoting ECF No. 589). Stated otherwise, Lopez sought to introduce the expanded scope of Brown's testimony to again introduce an "intent to repay" defense, which I excluded. *See* Order, ECF No. 625. Accordingly, Lopez fails to demonstrate that limiting Brown's testimony is grounds for a new trial.

Lampron's testimony was limited for several reasons. First, his report proffered several opinions without any citation or explanation as to how those conclusions were reached. *See* Order, ECF No. 616 at 6–7. His testimony was further limited because he sought to testify about what specific nurses' specific job preferences might be which was not relevant to the charges in the indictment, and further because Lampron lacked the requisite personal knowledge to testify about nurses' individual job preferences (job-or-facility-wise) and the reasons behind those preferences. And further, I precluded testimony about billing fraud or other coding illegality, nurse mobility, and nurse turnover rates as irrelevant. *Id.* at 7. Lopez provides no explanation or

authority explaining how the court's limiting order was erroneous. Instead, he summarily contends that limiting Lampron's testimony is reversible error. ECF No. 666 at 14. Accordingly, Lopez fails to demonstrate that he is entitled to a new trial because the court limited the scope of Lampron's testimony.

### 3. A unanimity instruction and special verdict form were not required and therefore no new trial is warranted on these grounds.

The Ninth Circuit has long held that "a general instruction that the verdict must be unanimous will be sufficient to protect the defendant's rights." *United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir. 1989) (quoting *United States v. Echeverry*, 719 F.2d 974, 974 (9th Cir. 1983)). However, in some cases, a specific unanimity instruction is necessary "where it appears that 'there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed . . . acts'" consisting of different legal elements. *See, e.g., United States v. Gordon*, 844 F.2d 1397, 1400–02 (9th Cir. 1988) ("When there is such a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the trial judge is obligated to give curative instructions or submit special interrogatories to ensure a unanimous verdict.").[11] Stated otherwise, if confusion is a possibility, a specific unanimity instruction should be given instructing the jury to not return a guilty verdict unless it "unanimously agree[s] to a particular set of facts." *Anguiano*, 873 F.2d at 1319 (quoting *Echeverry*, 719 F.2d at 975).

Lopez contends that the jury should have been given a unanimity instruction requiring the jury to find one other co-conspirator and if there were multiple conspiracies. ECF No. 666 at 18–19. In the one paragraph dedicated to argument in support of this relief, Lopez fails to cite

---

[11] As discussed in *United States v. Lapier*, 796 F.3d 1090, 1097 (9th Cir. 2015), when evaluating whether such a "genuine possibility" exists, the court should evaluate a non-exhaustive list of factors including: (1) the text of the indictment, *see, e.g., United States v. Frazin*, 780 F.2d 1461, 1468 (9th Cir. 1986); (2) the clarity and presentation of the government's argument, *see, e.g., United States v. Gilley*, 836 F.2d 1206, 1212 & n.8 (9th Cir. 1988); (3) the complexity of the evidence, *see, e.g., Jeffries v. Blodgett*, 5 F.3d 1180, 1195 (9th Cir. 1993); and (4) the clarity or ambiguity of the jury instructions, *see, e.g., United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir. 1983). Lopez does not address any of these factors in his motion.

authority to demonstrate either of these was required, fails to cite any authority requiring (1) identification of a co-conspirator and (2) unanimity as to the identity of that co-conspirator, and further fails to cite any trial testimony supporting his suggestion that Lopez was charged with, or that the government presented evidence that, Lopez was involved in more than one conspiracy that would have necessitated an unanimity instruction. The charged conspiracy was one of wage fixing through suppression and elimination of competition. *See* Superseding indictment, ECF No. 49 at 5. As jury instruction 21 explained, suppression or elimination can be accomplished through fixing, controlling, raising, lowering, maintaining, or stabilizing wages. *See* Jury instruc. No. 21, ECF No. 661 at 22–24. It was up to the jury to decide if Lopez conspired to commit wage fixing (the object of the conspiracy) through suppression or elimination of competition. Thus, Lopez's attempts to argue there were multiple objects of the conspiracy fails and a new trial is not warranted on this ground.

### 4. *The alleged improper dual expert and lay testimony from FBI Supervisory Special Agent (SSA) Singh.*

Lopez argues that SSA Anand Singh impermissibly proffered dual expert and lay testimony. ECF No. 666 at 19–21. SSA Singh testified over the course of two days. *See* Mins. of proceedings, ECF Nos. 598; 601. After a weekend recess of his first day of testimony, and the day after SSA Singh concluded testifying, Lopez filed a motion for a mistrial based on similar arguments related to Singh's testimony. *See* Mot. for mistrial, ECF No. 609. As explained on the record when the court denied Lopez's request for a mistrial, SSA Singh's use of "conspiracy" and "co-conspirator" was generic. Trial tr., 4/7/25 P.M., ECF No. 639. Indeed, as relevant here, SSA Singh testified to the following:

| | |
|---|---|
| Q (by AUSA): | Agent Singh, in your experience with the FBI, are conspiracy crimes sometimes difficult to detect? |
| A (by SSA Singh): | They generally are, by nature of the conspiracy, it is a group of individuals that have gotten together to try to conceal illegal activity. |

| | | |
|---|---|---|
| Q: | | How does the Antitrust Division's leniency policy help detect criminal conspiracies? |
| A: | | By allowing one of the conspirators to shine a light on the conspiracy, then we're able to see it and investigate it properly. |
| Q: | | Now, under the leniency policy, can a company obtain immunity if it doesn't report its conduct until after the Antitrust Division or the FBI has developed a substantial amount of evidence against that company? |
| A: | | No, our tenets of the policy is that you have to bring to us a conspiracy that we're not already aware of. |

ECF No. 600 at 47–48.

| | | |
|---|---|---|
| **Q (by AUSA):** | | When did the investigation become overt? |
| **A (by SSA Singh):** | | On October 30th, 2019. |
| Q: | | And how did the investigation become overt? |
| A: | | We conducted a series of knock and talks in the Las Vegas area of various witnesses and conspirators. |
| Q: | | What is a knock and talk? |
| A: | | A knock and talk is an exercise when we have agents approach witnesses and effectively just knock on their door and ask if we can speak to them about the investigation . . . . |

*Id.* at 51.

| | | |
|---|---|---|
| **Q (by AUSA):** | Were all the interviews on October 30th conducted at approximately the same time? |
| **A (by SSA Singh):** | Yes, they were. |
| **Q:** | Why did you organize it that way? |
| **A:** | As is common in conspiracies, once one conspirator is notified of the investigation, they tend to communicate with the others, and then they all usually get together and create the same lie. |
| **Lopez's counsel:** | Your Honor, I'm going to object as to the witness's going into the purview of the jury as to a conspiracy. |
| **The Court:** | I'm going to overrule the objection and remind the jury that you are -- you are the individuals who decide the question of fact here, and remind counsel to perhaps rephrase some questions. |

*Id.* at 52–53.

| | | |
|---|---|---|
| **Q (by AUSA):** | What does the first text say? |
| **A (by SSA Singh):** | It says "FBI is at my house." |
| **Q:** | Who is the sender of the first three texts in all the texts in blue bubbles in this exhibit? |
| **A:** | Mr. Lopez. |
| **Q:** | Can you read the first three texts to the jury? |
| **A:** | Sure. "FBI is at my house." "As out Spring View." "And community call Andrew." |
| **Q:** | And then who did you say the sender of the -- or the responder of these text messages was? |

| | | |
|---|---|---|
| A: | That is Jennifer Basilio. | |
| Q: | Can you read those next two texts? | |
| A: | She says, "Why are they there for?" "What did you do?" | |
| Q: | Agent Singh, is this text thread an example of why the FBI conduct interviews at the same time without preannouncing their presence? | |
| A: | It is. Coconspirators often communicate with each other once an investigation is known. | |
| Lopez's Counsel: | Objection, Your Honor, as to the term "coconspirators." | |
| The Court: | That is overruled. | |

*Id.* at 60–61.

"Rule 701 allows a lay witness to offer opinions that are (a) 'rationally based on the witness's perception,' (b) 'helpful' to the jury, and (c) 'not based on scientific, technical or other specialized knowledge within the scope of' expert testimony." *United States v. Gadson*, 763 F.3d 1189, 1206 (9th Cir. 2014) (quoting Fed. R. Evid. 701). Stated otherwise, a lay witness's opinion is permissible so long as it is not "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The Ninth Circuit has permitted some testimony about the investigative activities that could have supported a witness's lay opinions. *See, e.g.*, *United States v. Barragan*, 871 F.3d 689, 703 (9th Cir. 2017) (affirming admission of lay opinion testimony where "[t]he agents made clear that their interpretations were based on their review of hundreds of calls and text messages during the investigation"); *Gadson*, 763 F.3d at 1209 (holding that lay opinion testimony was admissible where it was based in part on law enforcement witness's review of hundreds of hours of phone calls).

There are only two parts of SSA Singh's testimony that could potentially be considered expert testimony: (1) "As is common in conspiracies, once one conspirator is notified of the investigation, they tend to communicate with the others, and then they all usually get together

and create the same lie" and (2) in response to the question "is this text thread an example of why the FBI conduct interviews at the same time without preannouncing their presence?" SSA Singh stated: "It is. Coconspirators often communicate with each other once an investigation is known." As to the second statement, this testimony was proffered after phone records showed Lopez was in touch with an alleged co-conspirator later in the morning on the same day both were interviewed by FBI agents. ECF No. 600 at 61–62. This testimony was very limited, and importantly, neither particularly complicated nor specialized. If a witness's observations are "'common enough' to 'require such a limited amount of expertise,'" they may be appropriately admitted as lay witness testimony. *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1245 (9th Cir. 1997) (quoting *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995)); *see also United States v. Pinillos-Prieto*, 419 F.3d 61, 71 (1st Cir. 2005) (holding that case agent's testimony regarding his experience with general operation of drug conspiracies was permissible lay opinion testimony under Rule 701). That is what occurred here, especially given there was already significant evidence regarding the existence and scope of the conspiracy. *United States v. Egwumba*, 2025 U.S. App. LEXIS 11790, at *7 (9th Cir. May 15, 2025) (holding the district court did not abuse its discretion admitting WhatsApp chats between the defendant that were direct evidence of the conspiracy, in part because there was already "some evidence, aside from the proffered statements, of the existence of the conspiracy and the defendant's involvement." (quoting *United States v. Mikhel*, 889 F.3d 1003, 1049 (9th Cir. 2018))). Although the two statements walk the line, I do not find they warrant a new trial, especially in light of the significant evidence against Lopez, *see United States v. Wathogoma*, 2024 U.S. App. LEXIS 26794, at *3 (9th Cir. Oct. 23, 2024) (finding a new trial was not required because the evidence against the defendant "was overwhelming" (citing *Barragan*, 871 F.3d at 708 (citation omitted))), and because the jury was specifically instructed that they alone decided the questions of fact, *see* ECF No. 666 at 53 (reminding the jury they alone decide the questions of fact). The instruction was clear and

direct, and juries are presumed to follow instructions. *See United States v. Morris*, 827 F.2d 1348, 1351 (9th Cir. 1987); *United States v. Reyes*, 660 F.3d 454, 468 (9th Cir. 2011).

### 5. The purchase agreement process was not excluded, it was limited in accordance with Ninth Circuit law.

The purchase agreement (PA) between Lopez and Solace was admitted into evidence. *See* Gov't Ex. 148R, ECF No. 658. Lopez contends the court erred by excluding evidence about the final price of the sale between Lopez (for CHC) and Solace, and by excluding the testimony about the "true-up" provision in the PA. ECF No. 666 at 22–23. Relying on *United States v. Milheiser*, Lopez maintains that this evidence needed to be presented to the jury so the jury could properly evaluate whether Lopez's failure to disclose that his company was under federal criminal investigation went to the nature of the bargain between Lopez and Solace. 98 F.4th 935 (9th Cir. 2024).

Lopez misapprehends the holding in *Milheiser*. As previously explained by this court,[12] the *Milheiser* court found that the government had charged an overbroad theory of fraud because it did not require the jury to find that the defendants deceived the victims of the nature of the bargain. *See id.* at 938. That theory was overbroad because it allowed for finding fraud even if the victim-businesses received the product they ordered at the agreed price, and further that the government inaccurately argued in closing arguments that any lie that caused someone to part with money constituted fraud. *Id.* at 945. Relying on Ninth Circuit precedent, the Ninth Circuit held that a misrepresentation must go to the nature of the bargain to constitute fraud. *Id.* at 944.

There is no *Milheiser* issue present here. The superseding indictment alleged, and the evidence introduced at trial demonstrated, that Lopez made misrepresentations during the due-diligence process (ECF No. 49 at 10–13) that his company was not under investigation, threatened or otherwise, and that those misrepresentations "intended to, and did, deceive Company G, and caused Company G to wire transfer the cash purchase price for Company F to

---

[12] *See* Order overruling objs., ECF No. 330 at 6–9.

Lopez." *Id.* at 14 ¶ 42. Purchasing a company that was potentially saddled with criminal liability goes to the heart of the nature of the bargain; thus, the final price, valuation, and the indemnity provisions of the PA were irrelevant. This is also why Lopez's argument that the court erroneously instructed the jury about materiality fails.

The court utilized the post-*Milheiser* standard Ninth Circuit jury instruction for an 18 U.S.C. § 1343 violation. *See* Jury instruct. No. 28, ECF No. 661 at 32–33; Trial. tr., ECF No. 649 at 143–47 (charge conference discussing use of updated § 1343 instruction). During the charge conference, counsel for Lopez argued the *Milheiser* court rejected use of the "had the natural tendency to influence or capable of influencing a person to part with money or property" language in the model instruction. ECF No. 649 at 146. This is an incomplete argument. *Milheiser* determined this language permitted the jury to convict on an overbroad theory of fraud because the jury was *not* instructed that in order "to support a conviction for fraud, a false statement must directly or indirectly deceive the victim about the nature of the bargain." *Milheiser*, 98 F.4th at 945. Again, that issue is not present here. Although not included in Lopez's briefing, the jury was instructed as follows:

> To convict a defendant of wire fraud, the false or fraudulent pretenses, representations, promises, or omitted facts must directly or indirectly deceive the victim about the nature of the bargain. **A misrepresentation will go to the nature of the bargain if it goes to the price or quality, or otherwise to essential aspects of the transaction.** Whether a misrepresentation goes to the nature of the bargain may depend on the specific transaction at issue.

ECF No. 661 at 32 (emphasis added).

In reality, Lopez wanted a modified materiality instruction to support his claim it was error to exclude valuation evidence, as well as the PA's true-up and indemnity provisions so he could present "an intent to repay defense," which the court had already excluded. *See* Order precluding intent to repay defense, ECF No. 625. Lopez's misrepresentations about whether his company was subject to potential criminal investigations during due diligence were material, and those material misrepresentations occurred *before* Solace entered into the purchase

agreement with Lopez, so valuation, as well as the true-up and indemnity provisions, were irrelevant. Lopez's argument that Solace "got exactly what the paid for" (ECF No. 666 at 24 (citing *Milheiser*, 98 F.4th at 940)) is simply untrue. They wanted a company that was not saddled with potential criminal liability: as the jury determined, they did not get what they bargained for.

### 6. *There was no violation of attorney-client privilege, nor Lopez's Fifth and Sixth Amendments rights.*

Lopez opens this section of his argument by writing "[n]o case supports the use of the privileged communication in this criminal trial." ECF No. 666. He then discusses privilege logs and argues that the court erred when it relied on unfounded claims that privilege logs are not privileged, so a new trial is warranted. Lopez's argument is convoluted at best. First, Lopez fails to cite or discuss the logs he claims were erroneously introduced, so the motion lacks clarity as to what warrants a new trial. The court can only assume Lopez is referencing exhibit 204.[13] Exhibit 204 was a redacted privilege log that was introduced by the government at trial. *See* Gov't Ex. 204, ECF No. 654-1 at 2. The information contained in the log was limited to the following: (1) a document number, (2) a bates range, (3) the document type,[14] (4) the date of the document, (5) the author/from of the document, and (5) who the document was sent to. As relevant here, exhibit 204 shows a document identified as an "email" was sent to someone at the Morgan, Lewis & Bockius ("Morgan Lewis") law firm on April 9, 2021. *Id.* The name of the person at Morgan Lewis was redacted. *Id.* The same exhibit shows a document called "Search Warrant" dated March 9, 2021, from the Northern District of California. *Id.* This was introduced for the sole purpose of demonstrating that Lopez had knowledge of the criminal investigation into his company when he repeatedly failed to disclose that fact during the due diligence process in the fall of 2021. The court admitted it after finding the log was generic enough not to be

---

[13] To the extent Lopez was referencing some other exhibit, a request for a new trial based on information not provided or cited to the court is denied.

[14] The document types identified in the log were "email" or "search warrant."

1   privileged. *See* Trial. tr., 4/7/25 P.M., ECF No. 639 at 101; *see also* Trial tr., 3/29/25 P.M., ECF No.

2   600 at 89 (noting "The Ninth Circuit has found that privilege logs are not privileged" and

3   cautioning counsel "to make sure that the questions [about the log] are directed to the issue of

4   knowledge"); *see also* Order on Gov't's motion *in limine*, ECF No. 543[15] at 2, n.2 (citing *Clarke v.*

5   *American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)).

6        As outlined in Federal Rule of Civil Procedure 26(b)(5), the Ninth Circuit requires that a

7   privilege log provide sufficient information to enable other parties to assess the claim of privilege

8   without revealing the privileged information itself. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615 (D.

9   Nev. 2013). The party claiming privilege must describe the nature of the documents,

10  communications, or tangible things not produced or disclosed in a manner that allows other

11  parties to evaluate the claim. *See* Fed. R. Civ. P. 26(b)(5). This circuit has recognized that the

12  identity of the client, the amount of the fee, the identification of payment by case file name, and

13  the general purpose of the work performed are usually not protected from disclosure by the

14  attorney-client privilege. *See Clarke*, 974 F.2d at 129. This is what the court relied upon when it

15  determined that the basic information included in the log was generic enough not to be

16  privileged. For these reasons, and the reasons set forth in the order granting the government's

17  motion in limine number 5 (ECF No. 546), the court cannot find the introduction and use of the

18  privilege log warrants a new trial so his motion on this ground is denied.

19        ***7.  The court presented modified instructions regarding several defense theories
20        and excluded an affirmative defense after Lopez failed to meet his burden
        demonstrating it was warranted.***

21        The Ninth Circuit has long held that "[a] defendant is not entitled to any particular form

22  of instruction." *United States v. Lopez–Alvarez*, 970 F.2d 583, 597 (9th Cir. 1992). Rather, the court

23  enjoys "wide discretion in crafting jury instructions." *United States v. Renzi*, 769 F.3d 731, 755 (9th

24  Cir. 2014). Despite this wide discretion, Lopez argues he is entitled to a new trial because the

25  court refused to give "virtually" all his proposed theories of defense instructions. ECF No. 666 at

26

---

[15] The court incorporates the reasoning set forth in this order here, as if fully set forth herein.

27. This is incorrect. The court included several of Lopez's requested theory of defense instructions, albeit modified versions of them. ECF No. 650 at 24–26. Those modified instructions, included at jury instruction 21, addressed that (1) the mere exchange of wage information is lawful, (2) obtaining wage information from competitors is lawful, and (3) copying or setting nurse wages the same as competitors utilizing independent business judgment was not unlawful. *See* ECF No. 661 at 22–24. The court explained to Lopez's counsel that they were free to argue or challenge the thoroughness of the government's investigation as well as whether Lopez had knowledge of the pending criminal investigation during the charge conference, so it declined to give Lopez's proposed instructions on those subjects because including specific instructions on these issues was not necessary. The court also declined to give an instruction on nurse mobility because it previously determined such evidence irrelevant to the Sherman Act conspiracy charge. *See* Order, ECF No. 616. It was irrelevant to the charge because the issue at trial was wage rates and whether Lopez conspired to fix wages in the home healthcare arena.[16] Last, the court declined to give Lopez's requested First Amendment/*Noerr-Pennington* instruction because I determined it was an affirmative defense and that he failed to present evidence in support of it.[17] *See* ECF No. 650 at 22–23. Lopez's motion does not demonstrate that he is entitled to a new trial based on my denial of the three requested jury instructions.

---

[16] The court notes that it would have been relevant to introduce data regarding nurse/licensed practical nurse (LPN) mobility in the home health care arena, as opposed to nursing at large. But the proposed expert testimony by Stuckwisch and Lampron was overbroad, so the court issued the order limiting the scope of such testimony. *See* ECF No. 616.

[17] Lopez's motion does not address the case provided to counsel during the second day of the charge conference, *Schrader Cellars, LLC v. Roach*, which held that the "*Noerr-Pennington* Doctrine does not provide immunity from suit but is an affirmative defense to liability." 129 F.4th 1115, 1125 n.12 (9th Cir. 2025) (citing *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Dist.*, 711 F.3d 1136, 1140 (9th Cir. 2013)). This did not stop counsel Krotoski from arguing to the jury in closings that Lopez's actions were protected by the First Amendment. *See* ECF No. 650 at 149.

### 8. *Denial of Lopez's mid-trial motion to sever is not grounds for a new trial.*

The Federal Rule of Criminal Procedure 8(a) provides that "counts are properly joined" if they "are of the same or similar character, or are based on the same act or transaction, or are connected or constitute parts of a common scheme or plan." Reversal for improper joinder under Rule 8(a) is appropriate only if the defendant can show actual prejudice. *United States v. Rousseau*, 257 F.3d 925, 932 (9th Cir. 2001). Even when counts are correctly joined under Rule 8(a), a district court may still sever the counts under Rule 14 if joinder is "manifestly prejudicial." *United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016). Joinder is not prejudicial where "all of the evidence of the separate count would [still] be admissible upon severance." *Id.*

Lopez argues that the court should grant him a new trial because it denied his request to sever count one (the conspiracy to wage-fix) from the wire fraud counts. Lopez's motion fails to demonstrate "manifest prejudice." *Id.* Where, as here, the evidence at trial would "look the same" whether or not the counts are tried together, joinder is not prejudicial. *See id.* (rejecting argument that joining counts was prejudicial because evidence relevant to the challenged counts would also have been admissible in the trial for the unchallenged count). Instead, Lopez summarily contends "unfair prejudice" by making broad references to certain exhibits and testimony. For example, Lopez contends that the introduction of one recording that captured Lopez comparing nurses to "hookers" was "unfairly prejudicial,"[18] but this does not demonstrate manifest prejudice. None of his other arguments rise to the level of manifest injustice, either. Finally, the court instructed the jury to consider each count separately. *See* ECF No. 661 at 37 (separate crime instruction), so the motion for a new trial on this ground is denied.

---

[18] Lopez's request for a new trial based on introduction of the recording of Lopez referring to nurses as hookers is also denied. As addressed during the trial, although this evidence is prejudicial, the probative value outweighed any prejudice.

9.  *The government's use of admitted evidence in closing arguments is not improper.*

Lopez contends that he is entitled to a new trial because the government "introduce[d] exhibits for uncalled witnesses by repeatedly showing them to others who lack personal knowledge of the exhibits." ECF No. 666 at 21–22. As a threshold matter, Lopez's motion suggests that he is entitled to a mistrial because the government decided to streamline its presentation of evidence by limiting the number of witnesses it decided to call. *Id.* Lopez cites no points and authorities to support this suggestion, so his request for a new trial on this ground is denied. *See* Local Rule 7-2(a) and (d) (requiring that any filed motion be supported by a memorandum of points and authorities, and failure to support a motion with points and authorities constitutes a consent to the denial of the motion).

The remainder of Lopez's arguments fail for two main reasons. First, Lopez does not address, nor claim, that the government improperly introduced the exhibits. Instead, he argues that asking witnesses questions about admitted pieces of evidence violates Rule 602 of the Federal Rules of Evidence. ECF No. 666 at 21–22. Rule 602 exists to ensure a witness has personal knowledge about the subject matter to which they are testifying. But that rule does not preclude asking witnesses questions[19] about properly admitted evidence, so it does not apply here. Second, Lopez fails to cite any authority that a party cannot question a witness about properly admitted evidence. Further, Lopez's "Exhibit A" that is included in this section includes objections to testimony and evidence introduced through the case agent (SSA Singh) who testified as a summary witness. The Ninth Circuit has long permitted the use of a summary witness to "help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." *United States v. Shirley*, 884

---

[19] The court notes that some of the questions to which Lopez objects were asked during cross-examination to demonstrate that the witness (i.e., Josephine Jorgensen) did not know about communications between Lopez and others suggesting Lopez was involved in a conspiracy to wage fix, so the witness would often answer they were unaware of certain potentially inculpatory communications.

F.2d 1130, 1133 (9th Cir. 1989) (quoting *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983)). Indeed, in any number of criminal cases brought in this circuit, case agents from any one of the alphabet soup of federal law enforcement agencies are regularly permitted to testify as summary witnesses in the government's case in chief to summarize voluminous records and witness testimony. *See United States v. Ahakuelo*, 2022 WL 7106147, at *4 (D. Haw. Oct. 12, 2022 (collecting cases)). Accordingly, this too is not grounds for a new trial. Lopez's motion for a new trial based on alleged improper use of properly admitted evidence is denied.

### 10. The government's argument during rebuttal does not warrant a new trial.

Lopez argues it was improper to ask the jury to do their job and find the defendant guilty on every single count. ECF No. 666 at 29–30. Citing *United States v. Sanchez*, Lopez contends that such comments mandate reversal. 176 F.3d 1214, 1224 (9th Cir. 1999). Indeed, the *Sanchez* court reversed a conviction based on similar comments, but the circumstances surrounding the reversal make that case distinct from this one. There, the Ninth Circuit determined the prosecutor improperly vouched for witnesses, denigrated the defense as a sham, and then told the jury that it was their job to find the defendant guilty. *Id.* at 1224–25. As to the latter finding, the *Sanchez* court noted the "fine line between a proper and improper 'do your duty' argument," and recognized that "it is probably appropriate for a prosecutor to argue to the jury that 'if you find that every element of the crime has been proved beyond a reasonable doubt, then, in accord with your sworn duty to follow the law and apply it to the evidence, you are obligated to convict, regardless of sympathy or other sentiments that might incline you otherwise." *Id.* at 1225.

Here, the prosecutor stated: "If you look at any single document, if you listen to any of his tapes, he's guilty. We proved our case. I have a job. Judge has a job. You have a job. With all due respect, you took an oath, do your job. He's guilty on every single count." ECF No. 650 at 200. He told the jurors to do their job and then stated Lopez was guilty. He did not tell the jury to find Lopez guilty, he stated that the government had proven its case and stated Lopez was

guilty, making this case more akin to the circumstances in *United States v. Gomez* and *United States v. Hernandez Becerra*. In *Gomez*, the Ninth Circuit determined the prosecutor's argument that "the United States has the burden of proof beyond a reasonable doubt" before asking: "Is the evidence that was presented in this case proof beyond a reasonable doubt? Absolutely. And now it's your duty to say the defendant is guilty[,]" was not improper. 725 F.3d 1121, 1131 (9th Cir. 2013). Likewise, in *Hernandez-Becerra*, the Ninth Circuit found that the prosecutor's argument that it was the jury's "duty to find the defendant guilty of these charges" and that the "evidence shows that [the defendant was] guilty" did not constitute plain error[20] because the statement was made "with respect to the burden of proof" and satisfied the standard set forth in the *Gomez* case. 636 F. App'x 943, 945 (9th Cir. 2016).[21] Here, the prosecutor's argument was qualified with the argument that the government had met its burden of proof, and then argued Lopez was guilty. Lopez is not entitled to a new trial on this ground.

### 11. As there was no error, Lopez's cumulative error argument fails.

Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). If the "government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors." *United States v. Macias*, 789 F.3d 1011, 1024 (9th Cir. 2015) (citing *id.*).

Here, the court did not find error nor manifest prejudice warranting a new trial, and the government presented a strong case which included direct evidence of the alleged crimes from recordings, cooperators, text messages, and emails. Consequently, Lopez's cumulative error fails and his motion for a new trial on this ground fails.

---

[20] Plain error applied because, like here, the defendant did not object at trial.

[21] *See also United States v. Colby*, 837 F. App'x 587 (9th Cir. 2021) (finding the government's rebuttal argument where the prosecutor told the jury it was their role "to find that the government has proven beyond a reasonable doubt" that the defendant was guilty was more akin to *Gomez* than *Sanchez*).

**B. Lopez's motion for a judgment of acquittal is denied.**

At the conclusion of the government's case during the trial, Lopez orally moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. *See* Trial tr., 4/1/25 P.M., ECF No. 612 at 127–38. I denied the motion. *Id.* at 138. Lopez then presented his case between April 2, 2025 and April 8, 2025. *See* Mins. of proceedings, ECF Nos. 621, 634, 637, 642, 648. The jury convicted Lopez on all counts. Verdict, ECF No. 662. On April 28, 2025, Lopez filed a renewed Rule 29 motion (ECF No. 667), which the government opposes (ECF No. 676).

In ruling on a Rule 29 motion, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Alarcon-Simi*, 300 F.3d at 1176. None of the arguments presented by Lopez demonstrate that the evidence presented at trial, which, viewed in a light most favorable to the government, would not support the verdict.

First, Lopez again argues a constructive amendment to count one of the superseding indictment. *See* Mot., ECF No. 667 at 9. This argument is not appropriate for a Rule 29(b) motion. *See United States v. Stoddard*, 150 F.3d 1140, 1144 (9th Cir. 1998) (a motion for judgment of acquittal applies the sufficiency of the evidence standard); *see also United States v. Crowe*, 563 F.3d 969, 972 n.5 (9th Cir. 2009).

Lopez's argument that his activity was protected by the First Amendment also fails. Lopez presented evidence that he attended some trainings and meetings with state officials about Medicaid updates and changes. But what was not introduced at trial, and absent from Lopez's motion, is what petitioning activity Lopez participated in—the mere fact that he attended meetings does not, alone, establish that Lopez was asserting his First Amendment right to petition. Lopez's argument that the government failed to prove the conspiracy involved interstate commerce likewise fails. Witnesses testified about various uses of interstate commerce, including FedExed checks across state lines, bank deposits, and interstate wire transfers.

Further, and contrary to Lopez's argument, the government did present evidence of a conspiracy to fix wages. From direct testimony from a co-conspirator/cooperator (Lubinsky) to text messages discussing an agreed wage rate, to phone logs between Lopez and unindicted conspirators, to an email from Lopez to co-conspirators sharing a news story about an unrelated anti-trust investigation that included an instruction to the recipients to "delete . . . once read[,]"[22] the trial evidence supports the guilty verdict for count one.[23]

The evidence for the remaining counts was also strong. Multiple witnesses testified that Solace would not have a purchased Lopez's company if he had disclosed the fact that his company was under federal criminal investigation, thus making his failure to disclose[24] material to Solace's decision to purchase, which resulted in Solace wiring Lopez several million dollars. Here, any rational trier of fact could have found Lopez guilty of each of the crimes charged in the superseding indictment beyond a reasonable doubt, so his motion for judgment of acquittal is denied.

### C. Lopez's motion for mistrial is denied.

Lopez moves for a mistrial on three grounds: (1) that his Fifth and Sixth Amendment rights were allegedly violated, (2) that the government allegedly violated this court's order to

---

[22] *See* Gov't Ex. 139 at 1.

[23] Lopez's motion concedes that there was indeed a conspiracy. *See* ECF No. 667 at 14 ("Therefore, upon Mr. Lopez leaving for Reno, **the conspiracy ended**. There is no evidence post-Reno to prove Mr. Lopez re-entered the conspiracy thus, any alleged post-Reno agreement is time barred.") (emphasis added). Lopez errs in his representation that there was no evidence showing Lopez re-entered the conspiracy. First, Lopez did not argue at trial he left the conspiracy when he left for Reno in 2017. However, evidence did show he continued to engage in wage fixing activities. For example, on August 17, 2018, Lopez and Lubinsky exchanged text messages where Lubinsky wrote: "Good for you. We have to play nice with rates," to which Lopez responded: "Yes, I'm staying within **our agreed rates.**" Gov't Ex. 17 (emphasis added). In another text message between Lopez and Lubinsky from November 28, 2018, Lubinsky asked Lopez how much he was paying LPNs, to which Lopez responded: "20-23. Which I think is the same as everyone else in town." Gov't Ex. 19. In that same exchange, Lubinsky writes that "[a] nurse just said she was taking a job doing PN at $30 per hour! I was hoping it was you." *Id.* Lopez responded: "Oh No. That's RN . . . Pay." *Id.* And, in another text exchange between Lopez and Lubinsky from July 24, 2019, Lopez texted that he and Lubinsky should have a meeting with NurseCore, writing: "Now that they have new leadership so we can all be on the same page." Gov't Ex. 23.

[24] *See, e.g.*, Gov't Ex. 141 at 6 (email from Lopez to individuals involved in the due diligence process disclosing an active civil action involving his company but failing to disclose criminal investigation or the subpoena as requested in section G).

redact the identity of counsel, and (3) that the court declined to give defense's theories of the case instructions. For the following reasons, the motion is denied. The court addresses the second argument first.

### 1. *Lopez misrepresents that an unredacted version of an exhibit was introduced in violation of a court order.*

Counsel for Lopez, Mark Krotoski, engages in an unacceptable misrepresentation in this motion for mistrial. Mot., ECF No. 654. He argues that an unredacted version of exhibit 151 was admitted and shown to the jury. *See Id.* at 10–14 (arguing that the government violated the court's order to redact the names of attorneys). Government's exhibit 151 was a list of attorneys Lopez emailed to himself and his assistant that was turned over to a third-party during the due diligence phase of the sale of Lopez's company. The argument that the unredacted exhibit was entered into evidence is directly contradicted by the record. The court did not permit the government to admit the unredacted version of exhibit 151 during the trial. Rather, on March 28, 2025, the court took the government's request to admit that exhibit under advisement and considered it over the weekend. *See* Trial tr. 3/28/25 P.M., ECF No. 600 at 96. Then, on March 31, 2025, the court addressed the admission of the *redacted version* of exhibit 151 with counsel, outside the presence of the jury. *See* Trial tr. 3/31/25 A.M., ECF No. 605 at 9–13. Indeed, during that interaction, the court specifically discussed that the attorneys' names were redacted. *Id.* at 11. In the end, I ruled exhibit **151-R** was admissible. *Id.* at 13. The government then moved exhibit 151-R into evidence through SSA Singh. *Id.* at 18–19; *see also* Gov't final ex. list, ECF No. 658 at 17 (identifying exhibit 151-R). In fact, Lopez even recognized that the **redacted** version of the exhibit was introduced and shown to SSA Singh in a previous filing. *See* Mot. for mistrial, ECF No. 609 at 10 (noting "the Government presented 151-R to Agent Singh").

Despite this clear record that the redacted version was admitted, Krotoski attached the *unredacted version* to his fourth motion for a mistrial. *See* ECF No. 654 at 6 (citing Ex. 151); Def.'s Ex. D, ECF No. 654-4 (attaching the unredacted version of Ex. 151). Krotoski does acknowledge

that the court ordered the attorney names redacted from that and other exhibits,[25] yet he still uses the unredacted version as support of his motion for mistrial and wholly fails to acknowledge that the record clearly reflects that the redacted version was admitted. Then, Lopez bootstraps this argument to allege that the government engaged in further misconduct by arguing that the government "used a privileged email [from] September 18, 2021 to himself listing his counsel against him and for further linkage." *Id.* at 11. But this email is not privileged: Lopez turned this email over to a third-party during due diligence when he was selling his company to Solace. Stated otherwise, the representation that the email was privileged is yet another misrepresentation. Accordingly, Lopez's argument that this court should declare a mistrial due to baseless accusation that an unredacted version of exhibit 151 fails, and as a result, so does his argument that his Fifth and Sixth Amendment rights were violated.

### 2. The court declines to grant Lopez's motion for a mistrial based on its decision not to give certain proposed defense jury instructions.

As discussed above, the Ninth Circuit has long held that "[a] defendant is not entitled to any particular form of instruction." *Lopez-Alvarez*, 970 F.2d at 597. The court enjoys "wide discretion in crafting jury instructions." *Renzi*, 769 F.3d at 755. I apply and incorporate that same reasoning here and deny Lopez's motion for mistrial on these grounds.

### III.    Conclusion

IT IS HEREBY ORDERED that Lopez's motion for mistrial **[ECF No. 654]**, motion for a new trial **[ECF No. 666]**, and motion for judgment of acquittal **[ECF No. 667] are DENIED.**

Dated: June 17, 2025

_____
Cristina D. Silva
United States District Judge

---

[25] *See* ECF No. 654 at 7 (citing order requiring redactions of attorney names, ECF No. 546).