**CLARK HILL PLLC**
PAOLA M. ARMENI
Nevada Bar No. 8357
Email: parmeni@clarkhill.com
1700 South Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Telephone: (702) 862-8300
Attorney for Defendant, Eduardo Ruben Lopez

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00055-CDS-DJA |
|---|---|
| Plaintiff, | **DECLARATION OF PAOLA M. ARMENI, ESQ. IN RESPONSE TO ORDER TO SHOW CAUSE AGAINST ATTORNEY MARK KROTOSKI, ESQ., AND TRIAL CO-COUNSEL** |
| vs. | |
| EDUARDO RUBEN LOPEZ, | |
| Defendant. | |

I, Paola M. Armeni, Esq., declare under penalty of perjury of the laws of the State of Nevada[1] and United States of America[2] that the following is true and correct.

1. I am an attorney with the law firm of Clark Hill, PLLC, prior counsel for the Defendant Eduardo "Edward" Lopez in the above-entitled case.

2. I have personal knowledge of the facts set forth herein, except as to those matters set forth based upon information and belief, and as to those matters, I believe them to be true and correct. If called upon to testify about these matters, I could truthfully testify to the facts set forth herein.

3. This declaration is made in Response to the Order to Show Cause Against Attorney Mark Krotoski, Esq., and Trial Co-Counsel filed on June 17, 2025. (Dkt. 693).

4. I am aware of the Nevada Rules of Professional Conduct and specifically Rule 3.3 and Model Rules as cited in LR 11-7(a).

5. I take my ethical responsibilities very seriously and would never intentionally or

---

[1] NRS 53.045.
[2] 28 U.S.C. §1746(2).

knowingly make a false statement of fact or law to any tribunal or fail to correct a knowingly false statement.

6. I have tremendous respect for our courts and the judges that serve. As such, I would never intentionally do anything so that the Court would question my ethical standards. I am disappointed that I have found myself in a position that the Court seeks clarification in my participation in the conduct to which she has expressed a concern about.

7. Considering what the Court is evaluating, I deem it important to provide some background about myself. I was licensed by the State Bar of Nevada in 2003 and was admitted in the United States District Court, District of Nevada that same year. I have been recognized in Best Lawyers of America since 2017 and currently have an AV preeminent rating with Martindale Hubbell. I have actively served the Nevada Legal community since 2003. I sat on the Board of Governors for the State Bar of Nevada for approximately 12 years, ultimately holding the office of President. I was the Chair of the Young Lawyers Section of the State Bar of Nevada, President of the UNLV Boyd Alumni Association and President of the Nevada Attorneys for Criminal Justice. I currently sit on the Justice Douglas Pre-Law Fellowship board and was appointed to the Nevada Judicial Branch Security Commission. I have been recognized for my pro bono work in our community. Years ago, I was awarded the Myrna Williams CAP attorney of the year. I am active in representing inmates through the Federal Pro Bono Project and consistently represent children in the abuse and neglect system as a CAP attorney through Legal Aid of Southern Nevada. I have been appointed by the US District Court, District of Nevada as a CJA lawyer for almost 20 years. This District has also appointed me as Chair on numerous occasions to the Merit Selection Panels for the Appointment and Reappointments of Magistrate Judges in our District. I have taught several continuing legal educations on the topic of civility and ethics for a Trial Attorney.

8. To provide my best recollection of the events that the Cout has cited in its order, I have reviewed my time entries and emails. While I believe this is the most accurate way to assist my memory, it is possible that even a review of those items may not provide a 100% accuracy, but I do in good faith believe that is the best evidence to rely on.

9. I was one of three law firms that Mr. Lopez retained in his representation in the

underlining matter. My primary role was as local counsel or resident attorney as stated in LR 11-2 as co-counsel was a not a member of the State Bar of Nevada.

10. As several attorneys were working on Mr. Lopez's matter, it was important that not all attorneys were working on the same tasks. This provided the most efficient and cost-effective method for Mr. Lopez. To my knowledge, Mr. Krotoski's firm took the lead on most if not all pleadings filed with the Court.

11. All attorneys are subject to rules of Professional Responsibility regardless of where they are barred. As such, when working with co-counsel, I have an expectation that those rules will be followed. I must have a level of trust that the attorneys I am working with will conduct themselves in the same manner I do, that is taking my ethical obligations seriously. As such, I would have no reason to disbelieve co-counsel unless I had personal knowledge to the contrary.

12. As it relates to expert Suzanne Stuckwisch, she was not a witness that I was responsible for. In other words, counsel had divided up witnesses, and Ms. Stuckwisch was not a witness to which I was going to examine. Further, I did not have any substantive conversations with her about travel or scheduling. Therefore, my interaction this witness was nominal.

13. It is my understanding Ms. Stuckwisch had spoken with the Government's designees on the afternoon of April 4, 2025. I also believed she was going back to California that night. My best memory is I learned that information while the defense team was leaving the courthouse after the adjournment for the day. In review of my emails, it appears the Government acknowledged that she met with Ms. Grinberg on April 4th.

14. If communications were had with Ms. Stuckwisch regarding further meet and confers and her plans for the weekend, I was not privy to those.

15. I never spoke to or participated in any communications with Ms. Stuckwisch on April 5, 2025. To the extent there was communication on this day, I have no personal knowledge of any communications that occurred between Mr. Krotoski and Ms. Stuckwisch on this day.

16. I have participated in several meet and confers with the Government throughout this case. I do not remember participating in the meet and confer with the Government on April 5, 2025. My time slips confirm that.

17. I never spoke to or participated in any communications with Ms. Stuckwisch on April 6, 2025. To the extent any communication took place between Mr. Krotoski and Ms. Stuckwisch on this day, I have no personal knowledge what was discussed.

18. I did not draft the Rule 33 Motion for New Trial. I did review the Motion before it was filed, but I did not review the accompanying exhibits. In reviewing the motion, I understood addressing the striking of a key expert witness as I believe this was an important issue for our client. I perceived the argument as a challenge to the severe sanction and the suggestion that other less severe sanctions were available. As the striking of Ms. Stuckwisch occurred in this Court, I know that the Court was privy to all the facts, so I did not believe that this argument was an attempt to suggest the witness was struck for any reason other than why the Court struck her. I suggested to co-counsel after my review of the Motion that we address in our Motion the Court's statement during trial that evidence was withheld as I thought it was important to acknowledge the Court and explain if we in fact had an explanation.

19. As it relates to the Court's concern regarding representations related to Exhibit 151 (151R) I offer the following explanation. I did not draft the Motion for Mistrial (Third Request) that was filed on April 14, 2025. I did review the Motion but not the accompanying exhibits. Within that Motion several exhibits were cited (204, 206, 152R, 151, 156). I had no reason to believe the exhibits as identified were inaccurate.

20. Previously, if there was a concern about an exhibit being admitted or not, there was a discussion, and one of the defense team would review the Court's exhibit list to verify if it was admitted or not. No such discussion took place related to the above exhibits. As such, I believed in good faith that if my co-counsel included representations about certain exhibits that it was accurate. I did not go back and look at every exhibit to attest to the accuracy of the representations in the Motion. I would have no reason to believe that a misrepresentation regarding trial exhibits would have been intentionally made. Had I suspected that any of the representations about the exhibits were inaccurate, I would have advised co-counsel to make the change. I in no way would have intentionally or knowingly misrepresented to the Court that exhibit was admitted that was not.

21. While I do not believe that this was a basis for the Order to Show Cause, it was

important enough to the Court to discuss it within the Order and as such I feel compelled to offer some explanation – that is – in response to the allegation that the Government pointed at Mr. Krotoski during their rebuttal argument.

22. While I cannot recall one way or another if I saw the pointing or the gesture towards Mr. Krotoski during the rebuttal argument, I do believe that something occurred that allowed Mr. Krotoski to have a good faith belief this occurred. I personally witnessed the Government stare continually at Mr. Krotoski throughout their rebuttal argument. Immediately after the rebuttal argument and the case was submitted to the jury, there was a discussion of this gesture by not only the defense team but members of the audience that had been present during the rebuttal argument that had appeared to witness the action. The Court is correct that no record was made of the action at the time. I understand the Court's concern that the record doesn't support this action. I think the purpose of the Motion for Mistrial was to bring this action to light in writing and as such the Motion for Mistrial was filed within days to document the perceived action.

23. While I understand the Court is skeptical about certain representations made and as such is likely looking at other actions in a more careful light, I do not believe the above statements were made in bad faith.

24. Additionally, as I also don't believe that this is the basis for the Order to Show Cause, I want to address the Court's statement that there was a "lackadaisically retrieval of witnesses". To the extent this statement is about or partially in reference to David Lampron, I would like the Court to be clear that his tardiness was not a result of any intentional delay tactics by defense counsel.

25. On April 4th at 12:37 pm, while in Trial, I recognized the pace of the trial was moving quicker than I anticipated. As such, I emailed my paralegal Clarissa Reyes (marking the email high importance) and asked her to advise Mr. Lampron to head to the courthouse now. I had spoken to Mr. Lampron the morning of April 4th and advised he would likely be testifying after lunch, but I would contact him to let him know when to head to the courthouse. When Mr. Lampron was not at the courthouse at the time he was set to testify, I called him at 2:16p.m. wherein he advised he was downtown. Then I called again at. 2:24pm, 2:27pm, 2:31pm. 2:36pm, 2:40pm to

ascertain his status (my memory is most of those calls, he did not pick up) as well as texted him at 2:29pm asking if had found a parking spot. At 2:26pm, I texted Ms. Reyes and asked what time she spoke to Mr. Lampron because he still was not at the courthouse. She advised that she spoke to him at 1:28pm (I learned later that Ms. Reyes was at lunch when I originally emailed her) and then again at 2:14pm and that he should be there any minute because he had just called asking for the building number. I will take responsibility that our witness should have been present and ready to testify and the Court should not have been forced to take a break for his appearance. However, by no means was the delay an intentional action to somehow prolong the trial or gain some advantage.

26. I did my best to address the Court's concerns; however, if the Court believes that I did not address a specific concern, I would ask the Court to allow me to supplement this declaration.

Dated this 3rd day of July 2025.

_____
PAOLA M. ARMENI

ClarkHill\L4516\451038\282561913.v1-7/1/25

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Richard (Tony) Anthony Lopez    tony.lopez@usdoj.gov, CaseView.ECF@usdoj.gov, jackie.bryant@usdoj.gov

Paradi Javandel    paradi.javandel@usdoj.gov, Andrew.Mast@usdoj.gov, Diego.ariaserazo@usdoj.gov, Edward.Bernard@usdoj.gov, Jan.Joaquin@usdoj.gov, Leslie.Wulff@usdoj.gov, Mikal.Condon@usdoj.gov, Ruth.Schoenfeld@usdoj.gov, Steven.Taylor@usdoj.gov, hillary.phan@usdoj.gov

Mikal Condon    mikal.condon@usdoj.gov

Andrew Jon Mast    andrew.mast@usdoj.gov, Diego.Ariaserazo@usdoj.gov, Edward.Bernard@usdoj.gov, Manish.Kumar@usdoj.gov

Jeffrey Cramer, I    Jeffrey.Cramer@usdoj.gov

Conor Michael Bradley    conor.bradley@usdoj.gov

An Employee of CLARK HILL PLC