JEFFREY CRAMER (NYSBN 2621779)
MIKAL JENNA CONDON (CABN 229208)
ANDREW MAST (CABN 284070)
CONOR BRADLEY (NJBN 373722021)
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 941092
Tel: 415.934.5300 / Fax: 415.934.5399
andrew.mast@usdoj.gov

SUE FAHAMI
Executive Assistant United States Attorney
District of Nevada
Nevada Bar Number 5634
RICHARD ANTHONY LOPEZ
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702.388.6551 / Fax: 702.388.6418
tony.lopez@usdoj.gov
*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>   vs.<br><br>EDUARDO RUBEN LOPEZ,<br>    a/k/a "Edward Lopez"<br><br>            Defendant. | Case No. 2:23-CR-00055-CDS-DJA<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL [Dkt. No. 722]** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ..................................................................................................2

     A.    Maxim's Conditional Leniency Agreement .......................................... 2

     B.    Trial Argument and Testimony About Restitution ............................. 5

     C.    Defendant Obtains Sentencing Counsel .............................................. 8

III.    ARGUMENT .......................................................................................................9

     A.    There is No *Napue* Violation Because There Was No False Testimony ......... 10

     B.    There Was No *Brady* Violation Because Nothing Was Suppressed ................ 10

     C.    Defendant Cannot Meet the *Napue* or *Brady* Materiality Requirement .......... 11

IV.    CONCLUSION...................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*, 373 U.S. 83 (1963)...................................................................... 9

*Hampton v. Shinn*, 43 F.4th 1047 (9th Cir. 2025)......................................................9, 10

*Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005)........................................................11, 13

*Jackson v. Brown*, 513 F.3d 1057 (9th Cir. 2008) ...................................................... 11

*Napue v. People of State of Ill.*, 360 U.S. 264 (1959) ................................................. 9

*United States v. Bagley*, 473 U.S. 667 (1985)............................................................ 11

*United States v. Bates*, 677 F. Supp. 3d 1200 (D. Nev. 2023)................................... 12

*United States v. Jernigan*, 492 F.3d 1050 (9th Cir. 2007) ......................................... 9

*United States v. Olsen*, 704 F.3d 1172 (9th Cir. 2013)............................................... 9

*Watkins v. Miller*, 92 F. Supp. 2d 824 (S.D. Ind. 2000) ............................................. 12

**Statutes**

15 U.S.C. § 7a-7a2...................................................................................................... 3

18 U.S.C. § 3663A ...................................................................................................... 4

**Congressional Reports**

150 Cong. Rec. S. 6327 (Apr. 2, 2004)....................................................................... 4

**Other Authorities**

Antitrust Division Corporate Leniency Policy (dated August 10, 1993).............................. 3

Frequently Asked Questions About the Antitrust Division's Leniency Program

    (dated January 26, 2017) .........................................................................................3, 4

## I.    INTRODUCTION

Defendant's motion for a new trial—filed just seven days before sentencing—alleges constitutional violations based on Maxim's restitution obligations as defined by the Antitrust Division's Leniency Policy.  But the government did not suppress exculpatory evidence; Maxim's restitution obligations were disclosed.  There was no "side agreement" with Maxim.  The government also did not elicit false testimony or make misleading arguments to the jury; Dan Lubinsky testified truthfully.  There was no *Napue* or *Brady/Giglio* violation, and no new trial is warranted.

Maxim's restitution obligations were disclosed in a conditional leniency agreement that was an exhibit at trial.  That leniency agreement made express reference to Frequently Asked Questions ("FAQs") about the Antitrust Division's leniency policy.  The FAQs make clear that the leniency applicant's restitution obligations are limited by the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA"), which eliminates a leniency applicant's joint-and-several liability, making an applicant responsible for restitution only to its own victims.  As specified in Maxim's conditional leniency letter, those FAQs are publicly available on the Antitrust Division's webpage.  That Defendant misunderstood those obligations is not a *Brady/Giglio* violation.

Nor did the government elicit false testimony about Maxim's (disclosed) restitution obligations.  The government elicited *no* testimony about restitution.  Lubinsky testified truthfully about his own cooperation obligations, as well as his understanding of the status of Maxim's obligations.  (It was his understanding Maxim had not paid restitution, which was correct.)  The amount of Maxim's total restitution obligations was not in evidence.  Restitution—by term or concept—was referenced only six times in twelve trial days.  It was

never defined. The concept of joint-and-several liability was not introduced. No *Napue* violation occurred.

Defendant's motion is factually and legally incorrect. It is also untimely. The government explained Defendant's mistake to him in July, and he could have raised the issue—if he truly believed it had merit—at any point thereafter. Instead, he chose to wait until the eve of sentencing to try to further delay proceedings with frivolous argument. Defendant's delay tactic here should be seen for what it is, a last-ditch effort to avoid punishment for his crimes. His motion should be denied.

## II.     BACKGROUND

### A.     Maxim's Conditional Leniency Agreement

In July 2021, the Antitrust Division entered into a conditional leniency agreement with Maxim. (GX 174.) That conditional leniency agreement provides in relevant part:

> This Agreement is conditional and depends upon Applicant (1) establishing that it is eligible for leniency as it represents in paragraph 1 of this Agreement, and **(2) cooperating in the Antitrust Division's investigation as required by paragraph 2 of this Agreement.** [...] Applicant represents that it is fully familiar with the Antitrust Division's Corporate Leniency Policy dated August 10, 1993 (attached), which is incorporated by reference herein.[1]
>
> _____
> [1] For a further explanation of the Antitrust Division's Corporate Leniency Policy and how the Division interprets the policy, see Frequently Asked Questions About the Antitrust Division's Leniency Program and Model Leniency Letters (Jan. 26, 2017), https://www.justice.gov/atr/ leniency-program."

(GX 174 (emphasis added).) Paragraph 2, defining Maxim's cooperation obligations, provides:

> 2. **Cooperation**: Applicant agrees to provide truthful, full, continuing, and complete cooperation to the Antitrust Division in connection with the anticompetitive activity being reported, including, but not limited to, the following: [...]

2

(c) using its best efforts to secure the truthful, full, continuing, and complete cooperation of the current directors, officers, and employees of Applicant (collectively "covered employees") [...]

(g) making all reasonable efforts, to the satisfaction of the Antitrust Division, to pay restitution to any person or entity injured as a result of the anticompetitive activity being reported, in which Applicant was a participant.

(GX 174 ¶ 2.)

The provisions of Paragraph 4 of the conditional leniency agreement relate to the obligations of covered employees (which include Dan Lubinsky):

4. **Nonprosecution Protection For Covered Employees:** [...] the Antitrust Division agrees that covered employees who admit to the Division their knowledge of, or participation in, and provide truthful, full, continuing, and complete cooperation with the Division in its investigation of the anticompetitive activity being reported shall not be prosecuted criminally by the Antitrust Divison for any act or offense committed during their period of employment at [Maxim] prior to the date of this letter in furtherance of the anticompetitive activity being reported. [subparts further define a covered employee's truthful, full, continuing, and complete cooperation obligations.]

(GX 174 ¶ 2.)

Maxim's restitution obligations, like those of all leniency applicants, are limited by ACPERA, 15 U.S.C. §§ 7a-7a-2. That limitation is set forth in the Antitrust FAQs, expressly incorporated by reference into the conditional leniency agreement. (GX 174 ¶ 1 & n.1.) The conditional leniency agreement was governed by the Division's then-effective Corporate Leniency Policy (dated August 10, 1993) and Frequently Asked Questions (dated January 26, 2017).[1] (*Id.*)

//

//

---

[1] In 2022, the Antitrust Division made updates to its leniency policy and FAQs. The ACPERA limitations on a leniency applicant's restitution obligations were not affected by those updates.

The 2017 FAQs include FAQ 19:[2]

19. What is the meaning of the qualifier in the Corporate Leniency Policy that states "[w]here possible, the corporation makes restitution to injured parties"?

[…] Paragraph 2(g) of the model corporate conditional leniency letter requires that the applicant make "all reasonable efforts, to the satisfaction of the Antitrust Division, to pay restitution." Thus, the applicant must demonstrate to the Division that it has satisfied its obligation to pay restitution before it will be granted final leniency. Restitution is normally resolved through civil actions with private plaintiffs. *The Antitrust Criminal Penalty Enhancement and Reform Act of 2004, also referred to as ACPERA, limits the liability for civil damages claims in private state or federal antitrust actions for a qualifying leniency applicant. For claims against a corporation that enters into an antitrust leniency agreement with the Division or a cooperating individual covered by such an agreement, a claimant cannot recover damages exceeding the "portion of the actual damages sustained by such claimant which is attributable to the commerce done by the applicant in the goods or services affected by the violation."*

2017 FAQ 19 (emphasis added).[3]

The conditional leniency agreement (GX 174) is the only agreement between the government and Maxim relating to the Las Vegas wage-fixing conspiracy. (Condon Decl. ¶ 2.) The government's understanding of Maxim's restitution obligations was that the agreement required restitution consistent with ACPERA, as the cross-references to the 1993

---

[2] The 2017 FAQs are archived on the Division's website and are available at https://www.justice.gov/atr/page/file/926521/dl?inline.

[3] ACPERA's limitation on recovery serves two purposes. The first is to strengthen criminal antitrust enforcement by addressing the concern that the threat of treble damages and joint and several liability serve as a disincentive to self-report criminal antitrust violations and by providing "increased incentives for participants in illegal cartels to blow the whistle on their coconspirators and cooperate[.]'" 150 Cong. Rec. S. 6327 (Apr. 2, 2004) (Statement of Sen. Hatch). The second purpose is to ensure compensation to victims of antitrust crimes. Because restitution is not mandatory under the MVRA for victims of Sherman Act violations, *see* 18 U.S.C. § 3663A (listing specific crimes but not identifying the Sherman Act), mandating that a leniency applicant pay restitution to its victims ensures that at least some victims receive recompense for the harms caused by the conspiracy. However, Defendant's interpretation that a leniency applicant must be on the hook for restitution to *all* victims of the conspiracy is illogical. That supposes a world in which the leniency applicant is on the hook for all the damages caused by the conspiracy it/he helped bring to justice, but convicted defendants need not pay any restitution to victims at all.

4

Corporate Leniency Policy and 2017 FAQs make clear.  (Condon Decl. ¶ 3.)  That was true at the time the conditional leniency agreement was signed, during trial, and remains true today.  (*Id.* ¶ 3.)  There is no other agreement regarding Maxim's restitution obligations in this case.  (*Id.* ¶ 2.)

Maxim's conditional leniency agreement has been in Defendant's possession since the government produced it in its first round of discovery in April 2023.  The FAQs have been publicly available at all times.

### B.    Trial Argument and Testimony About Restitution

There was very little mention at trial of Maxim's restitution obligations.  Those obligations were referenced six times over the course of twelve days: twice by the government and four times by the defense.  (The government never used the word "restitution."  The defense used the term seven times but never defined it.)

The government told the jury in its opening that:

> Dan Lubinsky, defendant's coconspirator, was not charged for his participation in the conspiracy.  That's because he received immunity under a whistleblower program.  Under the whistleblower program, a company and its employees won't be prosecuted *if they tell the Government what they did before they get caught and they pay the victims for the losses they caused*.

(Dkt. No. 576, Tr. 11:18-23 (emphasis added).)  It did the same in closing: "I want to be clear.  It doesn't mean that they get a totally free pass.  They have to cooperate for years, ***they have to pay back the victims of their crime***, but it is true that they don't get prosecuted." (Dkt No. 650, Tr. 127:4-7 (emphasis added).)

At no point did the government elicit testimony or argue that Maxim's restitution obligations required it to pay *all* victims of the wage-fixing conspiracy, as Defendant incorrectly alleges.  (Motion, Dkt. No. 722, at 2:1-4.)  The government did not introduce or attempt to explain the concept of joint and several liability.  It did not say that Maxim was

required to pay every victim of the crime for the losses caused by conspiracy.  It just said "the victims."

The conditional leniency agreement was introduced at trial through Lubinsky, who testified as a "covered employee" under that agreement.  (GX 174; Dkt. No. 580, Tr. 11:3-11.)  On direct examination, Lubinsky was not asked any questions and provided no testimony about Maxim's restitution obligations.  His only testimony about the conditional leniency agreement pertained to his obligations as a covered employee (which, notably, include no restitution obligation).  (*See* Dkt. No. 580, Tr. 13:22-17:27.)

After asking Lubinsky about his cooperation obligations, the government then asked whether *Lubinsky* had any other agreements with the government:

> Q.    Other than this agreement that we've been talking about,
>       are there any other agreements that you have with the
>       Government?
> A.    No.
> Q.    And does anything else other than what we talked about
>       here and that you've mentioned, any other promises made to you?
> A.    No.

(Dkt. No. 580, Tr. 17:28-24.)

Lubinsky's only testimony about restitution came on cross-examination, when defense counsel elicited testimony that Maxim had not paid any restitution:

> Q.    Okay. Another requirement is the applicant -- here,
>       Maxim -- must make best efforts to make restitution.
>       Has Maxim made restitution to the nurses?
> A.    Not that I'm aware of.

(Dkt. No. 599, Tr. 26:17-20.)  Neither the question nor the testimony defined "restitution" or what "best efforts to make restitution" meant.

Defense counsel also asked Lubinsky numerous questions about the benefits Maxim and Lubinsky received pursuant to the conditional leniency agreement, and effectively demonstrated to the jury that Lubinsky had a bias that went to his credibility:

> Q. If you were convicted of wage fixing, you could be debarred from the healthcare industry, correct?
>
> A. Correct.
>
> Q. Which means you could not work in the healthcare industry, right?
>
> A. Correct.
>
> Q. You'd have to find a whole new industry to work and support your family?
>
> A. Correct.
>
> Q. You've avoided that risk based on the Government's promise not to prosecute you, correct?
>
> A. Correct.
>
> Q. Maxim, as one of the largest healthcare companies in the United States, has also avoided the risk of debarment, correct?
>
> A. Correct.

(*Id.*, Tr. 75:7-21.) Defense counsel also obtained testimony that Lubinsky personally had not made any restitution to the nurses (again without defining or explaining the term):

> Q. You have not made restitution to any of the nurses as a result of your wage fixing conduct in this case, correct?
>
> A. Correct.

(*Id.*, Tr. 75:22-24.) The government did not redirect Lubinsky on the issue of restitution or otherwise introduce any evidence of Maxim's future intention to meet its restitution obligations. Thus, the only evidence before the jury was that Maxim had failed to meet one of the key elements of its leniency obligations. Defense counsel emphasized this failure twice in closing, arguing that Maxim/Lubinsky avoided paying *any* restitution:

> Mr. Lubinsky, he told you, has been able to profit, get higher salaries, **not pay any restitution, and avoid paying nurses money that they earned.** […]

And then he was asked – remember this point about the program, shines a light on conduct, and **there's an obligation to pay restitution.** Well, just about two weeks ago, **Mr. Lubinsky was asked, "You have not made restitution to any of the nurses as a result of your wage fixing conduct in this case?" "Correct." Where is the restitution? When is it going to come?** The Government emphasizes it as a key part of its case. **Yet, Mr. Lubinsky, since July 2019, has been able to avoid any of these obligations.**

(Dkt. No. 650, Tr. 136:23-25; *id.* Tr. 140:17-141:2 (emphasis added).)

### C.    Defendant Obtains Sentencing Counsel

After his conviction, Defendant obtained new counsel for sentencing. The government engaged in communications with sentencing counsel in July regarding the parties' positions on guidelines calculations and enhancements and other sentencing issues, including restitution. As part of that meet and confer, the government explained that it was seeking restitution from Defendant for the nurse victims, other than those employed by Maxim, because restitution "can be ordered joint and several." (Ex. A, July 21, 2025 A. Mast email.) The government also explained that "Maxim's restitution obligations are limited under ACPERA. 15 U.S. Code § 7a-1(a). This is also explained in our FAQs on leniency." (*Id.*) The parties had an in-person meeting on August 12 in which they discussed their relative positions and disagreement over Maxim's restitution obligations. The prosecution team had no further discussions with sentencing counsel about this issue until Defendant's motion for new trial was filed seven days before the sentencing hearing.

//
//
//
//
//
//

## III.    ARGUMENT

"In *Napue*,[4] the Supreme Court held 'that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.'" *Hampton v. Shinn*, 43 F.4th 1047, 1068 (9th Cir. 2025) (quoting *Panah v. Chappell*, 935 F.3d 657, 664 (9th Cir. 2019)).  A *Napue* claim succeeds only if a defendant shows: "(1) testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material."  *Id*.  "A *Napue* claim never succeeds if the defendant cannot prove actual falsity." *Id.*

*Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny cement the principle that, to comport with a criminal defendant's constitutional due-process rights, the government has an "affirmative duty to disclose evidence favorable to a defendant," including impeachment materials.  To show a *Brady* violation warranting a new trial, Defendant must prove three elements: (1) "the suppressed evidence must be favorable to the accused," *i.e.*, it must be exculpatory; (2) "the evidence must have been suppressed by the government, either willfully or inadvertently"; and (3) "the suppressed evidence must be material to the guilt or innocence of the defendant."  *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007). It is, of course, axiomatic that there is no *Brady* violation if no evidence was suppressed. *United States v. Olsen*, 704 F.3d 1172, 1182 (9th Cir. 2013) ("In order for a Brady violation to have occurred, the favorable evidence at issue must have been suppressed").

Here, nothing was suppressed and there was no false testimony.

//

---

[4] *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959).

### A.    There is No *Napue* Violation Because There Was No False Testimony

There was no false testimony, and, thus, "no *Napue* claim." *Hampton*, 43 F.4th at 1069.  Defendant contends that Lubinsky's testimony about the conditional leniency agreement was false.  (Dkt. No. 722, at 7:19-8:6 (quoting Lubinsky's direct examination at Dkt. 580, Tr. 17:18-24).)  But that testimony did not pertain to Maxim's restitution obligations.  It was specific to Paragraph 4 of the conditional leniency agreement; *i.e.*, what covered employees like Lubinsky must do to provide complete cooperation with the investigation, such as testifying truthfully.  (*See* Dkt. 580 at 13:22-17:24.)  After asking Lubinsky about his cooperation obligations, the government then asked whether *Lubinsky* had any other agreements with the government, and he testified "no."  (Dkt. No. 580, Tr. 17:18-24.)

That testimony was true.  Other than the promise in Paragraph 4 that he would not be prosecuted if he provided complete cooperation as set forth in that paragraph, Lubinsky had no other agreements with the government.  Paragraph 4 has no restitution obligations, and Lubinsky is not required to pay any restitution.  There was no false testimony and no *Napue* violation.

### B.    There Was No *Brady* Violation Because Nothing Was Suppressed

There was also no *Brady* violation because the government did not suppress any evidence.  There is no "side agreement" with Maxim.  Maxim's restitution obligations are set forth in the conditional leniency agreement.  That agreement was produced to Defendant in April 2023 and introduced as an Exhibit at trial.  The conditional leniency agreement incorporates by express reference the 1993 Leniency Policy and refers to the 2017 FAQs as a guide to interpreting the policy.  And FAQ 19 makes clear that the leniency applicant's restitution obligations are limited by ACPERA, which eliminates a leniency applicant's

joint-and-several restitution obligations.  In short, the agreement that Maxim make

restitution only to its own employees is set forth in the conditional leniency agreement,

which was in evidence.  There was no secret side deal, and nothing more to disclose under

*Brady/Giglio*.[5]

Even assuming that the government's publicly available interpretation of its own

Leniency Policy somehow constitutes undisclosed *Brady/Giglio* material (it does not), it is

preposterous to conclude (as Defendant claims) that any nondisclosed information was

favorable to the Defendant.  Restitution was not central to either the government's or

defense's case.  Over the course of a twelve-day trial, there were just two references to the

fact that Maxim owed restitution, and four references that Maxim had not paid restitution.

The word restitution was never defined or explained to the jury.  No one defined "victims"

to include all victims of the conspiracy.  And there was no evidence that *Defendant* might

have restitution obligations upon conviction, or that those obligations might increase if

Maxim's obligations were different than Defendant believed them to be.  The jury had no

concept of what the scope of those obligations were, what they required Maxim to do, or

how much Maxim was required to pay or not pay.

### C.    Defendant Cannot Meet the *Napue* or *Brady* Materiality Requirement

Nor was the alleged nondisclosure material under either *Napue* or *Brady*.[6]

Defendant's attorney was able to elicit testimony that Maxim did not pay its restitution

---

[5] For these reasons, Defendant's allegation that Maxim somehow got a secret "bargain" is
nonsense on its face.  Maxim got the deal available to all successful leniency applicants.
[6] The *Napue* and *Brady* materiality standards are different.  *Jackson v. Brown*, 513 F.3d 1057,
1076 (9th Cir. 2008).  A *Napue* violation is material if there is "any reasonable likelihood
that the false testimony could have affected the judgment of the jury."  *Hayes v. Brown*, 399
F.3d 972, 985 (9th Cir. 2005) (en banc).  A *Brady* violation is material if "there is a
reasonable probability that . . . the result of the proceeding would have been different."
*United States v. Bagley*, 473 U.S. 667, 682 (1985).

obligations, and used that evidence to argue that Maxim received an additional benefit: "Where is the restitution? When is it going to come? The Government emphasizes it as a key part of its case. ***Yet, Mr. Lubinsky, since July 2019, has been able to avoid any of these obligations.***" (Dkt. No. 650, Tr. 140:24-141:2 (emphasis added).) Defendant's argument (albeit untrue) that Maxim escaped *all* restitution obligations did not affect the jury's verdict.

Defendant's argument at trial was far more straightforward, and far more forceful, than the argument Defendant now claims he was unable to make. In short: Defendant claims that had he understood that Maxim did not have joint-and-several obligations, he would have explained joint-and-several liability to the jury, then explained that Maxim was not subjected to joint-and-several liability (but still had to pay some restitution) while leaving Defendant potentially exposed to partial joint-and-several liability upon conviction and only if imposed by the Court. Even if the jury tracked this logic, the takeaway would have been that Maxim paid less in restitution than they otherwise would have without the agreement with the government. But Defendant was able to argue that Maxim *did not pay anything in restitution*. Thus, it is ludicrous to suppose that, if Defendant were able to argue that Maxim might pay less in restitution than he might owe upon sentencing, it would have impacted the verdict in any way when the jury was already told that Maxim did not pay anything in restitution.

Other cases in which courts have found material *Napue* or *Brady* violations show the weakness in Defendant's argument. This was not a suppressed video showing that the defendant did not commit the crime of which he was convicted. *See United States v. Bates*, 677 F. Supp. 3d 1200, 1215-17 (D. Nev. 2023). This was not an instance in which the government suppressed eyewitness testimony indicating the defendant did not commit the crime. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 844-47 (S.D. Ind. 2000). Nor did the

government elicit false testimony that a cooperating witness received no benefits from the government.  *See Hayes*, 399 F.3d at 978-80 (en banc).

Here, Defendant simply misunderstands the terms of a letter to which he was not a party.  But the government is not to blame for that misunderstanding.[7]  The letter was disclosed, and the expressly incorporated FAQs clearly explain that ACPERA limits the restitution obligations of a leniency applicant.  Moreover, unwinding Defendant's misunderstanding would have required the introduction to the jury of complex legal terms and concepts well beyond the scope of the case.  It would never have impacted the verdict.

## IV.  CONCLUSION

Defense counsel may be confused by Maxim's restitution obligations.  But those obligations were disclosed.  And Lubinsky testified truthfully.  Defendant's confusion is not a *Napue* or *Brady* violation and does not warrant a new trial.  For the foregoing reasons, Defendant's motion for a new trial should be denied, and sentencing should proceed as scheduled on October 9th.

Respectfully Submitted this 8th day of October, 2025.

  /s/Mikal J. Condon
Mikal J. Condon
Senior Litigation Counsel
Conor Bradley
Trial Attorney
Antitrust Division – United States Department of Justice

---

[7] Defendant's motion is silent as to whether trial counsel shares current counsel's misunderstanding of the leniency letter.