UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| United States of America, | Case No. 2:23-cr-00055-CDS-DJA |
|---|---|
| Plaintiff | **Order Granting Motion for Preliminary Order of Forfeiture** |
| v. | |
| Eduardo "Edward" Lopez, | [ECF No. 710] |
| Defendant | |

On August 22, 2025, the United States of America filed a preliminary order of forfeiture asking this court to enter a money judgment in the amount of $10,459,817.50 against defendant Eduardo "Edward" Lopez. Mot. Prelim. Forfeit., ECF No. 710. Lopez opposes the motion. Opp'n, ECF No. 713. The motion is now fully briefed. Reply, ECF No. 714. For the reasons set forth herein, the court grants the government's motion for a preliminary order of forfeiture.

## I.     Legal standard

Title 18, United States Code, Section 981(a)(1)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable" to mail fraud, wire fraud or a conspiracy to commit mail and wire fraud is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C). The focus of criminal forfeiture is the disgorgement of a defendant's ill-gotten gains. *United States v. Shkreli*, 779 F. App'x. 38, 41 (2d Cir. 2019). For this reason, forfeiture statutes, and their resulting actions, are generally broad, so funds acquired either directly or indirectly from an underlying qualifying offense are subject to forfeiture. *See United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016).

To successfully seek forfeiture, the government first must prove, beyond a reasonable doubt, that the defendant is guilty of the crimes, and then must prove, by a preponderance of the evidence, a nexus between the property and the crimes. *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) (discussing criminal forfeiture); *United States v. Christensen*, 828 F.3d 763, 822 (9th

Cir. 2015) ("[A] district court or jury need only find facts warranting forfeiture by a preponderance of the evidence."). If proceeds or directly forfeitable property are unavailable, the court "shall order" the forfeiture of substitute assets up to the value of the unavailable assets. 21 U.S.C. § 853(p); *United States v. Newman*, 659 F.3d 1235, 1240 (9th Cir. 2011) (if forfeiture is applicable, it is mandatory).

Further, the court may order forfeiture of a sum of money (a money judgment) representing the amount of money involved in the offense and "the court must determine the amount of money that the defendant will be ordered to pay." *See* Fed. R. Crim. P. 32.2(b); *see also United States v. Nejad*, 933 F.3d 1162, 1165 (9th Cir. 2019) (ruling that "nothing in *Honeycutt* (or any other recent Supreme Court decision)" overrules Ninth Circuit precedent "permitting entry of a personal money judgment"); *Lo*, 839 F.3d at 792–94 (upholding a forfeiture money judgment in the amount the defendant received from mail and wire fraud offenses); *United States v. Daniel*, 676 F. App'x 675, 678 (9th Cir. 2017) (The court, and not the jury, determines the appropriate amount of a forfeiture money judgment.).

Last, when a defendant's own actions have thwarted the ability of the court to order forfeiture, § 853 authorizes the forfeiture of substitute property. *United States v. Harbour*, 2023 U.S. Dist. LEXIS 198548, at *4–5 (D. Ariz. Nov. 3, 2023).

## II.     Background

On April 14, 2025, a jury returned a guilty verdict against defendant Eduardo "Edward" Lopez on all counts in the superseding criminal indictment. Verdict, ECF No. 662. The superseding indictment charged Lopez with one count of wage-fixing in violation of 15 U.S.C. § 1, and five counts of wire fraud in violation of 18 U.S.C. § 1343. Sup. indictment, ECF No. 49. The superseding indictment included a forfeiture allegation that noticed Lopez that the government would seek a criminal forfeiture money judgment of "at least $12,506,250" pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), or in the alternative, the government would

seek other property as substitute assets in accordance with 21 U.S.C. § 853(p). *Id.* at 15–16, ¶¶ 49–50.

III.   Discussion

The government moves this court for a preliminary order of forfeiture against Lopez as a forfeiture money judgment in the amount of $10,459,817.50. *See* ECF No. 710 at 2. The government argues that the specific amount sought "correspond[s] to the illegal proceeds obtained by [Lopez] in the commission of the wire fraud" convictions. *Id.* Lopez does not contest that the procedural framework for seeking forfeiture has been met.[1] Rather, his opposition asserts that the government's motion is overbroad and that 18 U.S.C. § 981(a) is inapplicable here. *See* Opp'n, ECF No. 713. In the alternative, Lopez argues that if forfeiture is ordered, "offset" is necessary. *Id.* at 10–11. Last, Lopez argues that ordering forfeiture here would constitute excessive punishment in violation of the Eighth Amendment. *Id.* at 11–13.

Section 981(a)(1)(C) of Title 18[2] provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" the mail and wire fraud statutes "is subject to forfeiture to the United States." 18 U.S.C. § 981(a)(1)(C); *see also Lo*, 839 F.3d at 791 (finding criminal forfeiture is authorized for wire fraud where the government includes a criminal forfeiture allegation pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c)); *United States v. Pollard*, 850 F.3d 1038, 1041–42 (9th Cir. 2017) (ruling that the government may seek criminal forfeiture for a violation of any federal statute "for which the civil or criminal forfeiture or property is authorized" (quoting 28 U.S.C. § 2461(c))).

---

[1] Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 981 sets forth the framework for forfeiture.

[2] 21 U.S.C. § 981 addresses civil forfeitures and 21 U.S.C. § 982 addresses criminal forfeitures. The court only addresses § 981 here because the superseding indictment only sets forth a civil forfeiture allegation. *See* ECF No. 49 at 15–16. While 18 U.S.C. § 981 governs civil forfeiture actions, 28 U.S.C. § 2461(c) "permits the government to seek criminal forfeiture whenever civil forfeiture is available and the defendant is found guilty of the offense[.]" *United States v. Newman*, 659 F.3d 1235, 1239 (9th Cir. 2011) (emphasis omitted), *abrogated on other grounds by*, *Honeycutt v. United States*, 581 U.S. 443, 454 (2017).

Here, the jury found Lopez guilty of multiple counts of wire fraud, which arose from Lopez's failure to disclose the ongoing federal investigation into a wage-fixing conspiracy to Solace, the company seeking to purchase Lopez's business, Community Home Healthcare (CHH). *See* Verdict, ECF No. 662. Witnesses testified during the trial that but for Lopez's misrepresentations, they would not have purchased CHH.[3] But, because Lopez failed to disclose the federal investigation, Solace entered into the Purchase Agreement[4] with Lopez and purchased CHH.[5] In accordance with that Purchase Agreement, Solace wired $10,459,817.50 to Lopez via his account with First Savings Bank in Las Vegas, Nevada.[6] The money judgment sought by the government equates to the amount of money sent by Solace to Lopez when they purchased CHH. Stated otherwise, the $10,459,817.50 money judgment the government seeks here constitutes or is derived from the proceeds traceable to the wire fraud scheme Lopez was convicted of at trial. *See Lo*, 839 F.3d at 791 (finding forfeiture is authorized for a wire fraud conviction pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c) because § 2461(c) works in conjunction with both § 981 and § 982 and does not invalidate either provision).

Lopez's arguments that the government is required to show something beyond a wire fraud conviction to seek forfeiture also fail.[7] *See* ECF No. 713 at 5. As explained in a recent Ninth

---

[3] *See, e.g.*, Trial tr., Day 6, PM Session, ECF No. 606 at 51 (witness testifying that a criminal investigation would have stopped the sale of CHH to Solace from going forward); Trial Tr., Day 7, AM Session, ECF No. 611 at 123 (witness from Solace testifying Solace would have walked away from the deal if the federal criminal investigation had been disclosed); Trial tr., Day 9, AM Session, ECF No. 622, at 66 (different Solace witness providing similar testimony about not going through with the purchase of CHH if the criminal investigation had been disclosed).

[4] *See* Purchase Agreement, Govt.'s Ex. 148, ECF No. 658 at 16.

[5] *Id.*

[6] The First Savings Bank account was in the name of "Edward Lopez, the Golden 2013 Trust." *See* Trial tr. Day 7, ECF No. 606 at 73; *see also* Govt.'s Exs. 229R, 233R.

[7] The court notes that while Lopez cites to sections of 18 U.S.C. § 981(a), he fails to cite any case law in this, or any circuit, to support his position that the government most prove something more than Lopez's wire fraud convictions to seek forfeiture. That is likely because 28 U.S.C. § 2461(c) was amended so that its application to general mail and wire fraud charges can no longer be disputed. *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109–177, § 410, 120 Stat 192 (2006); *see also United States v. Harris*, 2018 WL 6184878, at *5 (D. Haw. Nov. 27, 2018), *aff'd*, 842 F. App'x 28 (9th Cir. 2020) (discussing the interplay between 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and how it authorizes personal money judgments as a form of criminal forfeiture for violations of the wire fraud statute); *United States v. Hampton*, 732 F.3d 687, 697 (6th Cir. 2013) (finding forfeiture "arising from

Circuit decision, money generated through **supposedly legitimate transactions** [is] appropriate." *United States v. Omidi*, 125 F.4th 1283, 1288–89 (9th Cir. 2025) (citation modified) (citing *United States v. Warshak*, 631 F.3d 266, 333 (6th Cir. 2010)).[8] Indeed, *Omidi* explicitly rejected arguments only illegitimate funds could be forfeited, holding the district court did not err when it ordered forfeiture of "[a]ll proceeds directly or indirectly derived from" the healthcare scheme alleged in that case. *Id.* at 1289. This is consistent with the plain language of § 981 that mandatorily subjects to forfeiture all property traceable to the "proceeds" of unlawful activity and defines "proceeds" as anything obtained directly or indirectly as a result of the unlawful activity, not limited to net gain or profits. 18 U.S.C. § 981(a)(2)(A). Finally, there is no authority to support Lopez's contention that "Congress did not intend fraud committed in the process of obtaining an otherwise lawful purchase agreement of a valid and ongoing business to be punished by forfeiture." ECF No. 713 at 9. This suggests the government needs to prove that the property was obtained at the loss to another or the market, but that is inapposite to the plain language of 18 U.S.C. § 981(a).

Last, Lopez's argument that forfeiture would constitute excessive punishment and that offset is required also fail at this juncture.[9] Forfeiture is excessive under the Eighth Amendment

---

conviction for general wire fraud is authorized by § 2461(c)'s incorporation of the provision authorizing civil forfeiture" in 18 U.S.C. § 981(a)(1)(C)).

[8] In *Warshak*, the Sixth Circuit rejected the defendants' arguments that only the proceeds from their fraudulent sales—and not their legitimate sales—could be forfeited. 631 F.3d at 330–31. The court explained that even the proceeds of these "potentially legitimate sales" are still "directly or indirectly" generated from the fraudulent scheme. *Id.* at 332. While certainly distinguishable, similar reasoning applies here. Though CHH was a legitimate business that Solace purchased for a legitimate purpose, the sale was tainted by Lopez's fraudulent omission of the antitrust investigation. The jury determined that Lopez's omission was material, as it misled to believe that it was purchasing a "clean" company rather than one potentially saddled with criminal liability. *See* Jury instr. 28, ECF No. 661 at 32 (as part of wire fraud jury instruction, directing jury to determine if the Lopez's statements were material). Thus, the government need not show something more than wire fraud to seek forfeiture here.

[9] The court notes this is a motion for a *preliminary* order of forfeiture. Before entering a final order, the court must consider (1) the seriousness of the offense triggering forfeiture; (2) whether the property was related to any other illegal activity; (3) whether the defendant fit into the class of persons for whom the statute was principally designed; (4) the maximum sentence and fine that could have been imposed for the offense under then-mandatory United States Sentencing Guidelines; (5) the statutory maximum sentence and fine; and (6) the harm caused by the underlying offense. *See United States v. Bajakajian*, 524 U.S. 321, 327–328 (1998).

if it is "grossly disproportional to the gravity of the offense." *Bajakajian*, 524 U.S.at 334. Here, the money judgment sought by the government is not "grossly" disproportionate to the offenses of conviction. Rather, the government seeks the precise amount of funds Lopez received via wire transfer from Solace. Further, Title 18, United States Code, Section 981(a)(2)(C) provides that "the court shall allow the claimant a deduction from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim." This provision ensures that forfeiture does not exceed the actual harm caused to the victim in such cases. But this is not a § 981(a)(2)(C) case, so Lopez's request for offset is denied. *See United States v. Davis*, 706 F.3d 1081 (9th Cir. 2013) (affirming district court's denial of defendant's request for offset where he was ordered to pay forfeiture to the Department of Justice and restitution to the Federal Bureau of Investigation).

## IV.     Conclusion

IT IS HEREBY ORDERED that the government's motion for a preliminary order of forfeiture **[ECF No. 710] is GRANTED**. A separate preliminary order of forfeiture to issue.

Dated: October 8, 2025

_____
Cristina D. Silva
United States District Judge