DICKINSON WRIGHT PLLC
Mackenzie E. Robinson
Nevada Bar No. 16309
Email: MRobinson@dickinson-wright.com
100 West Liberty Street, Suite 940
Reno, Nevada 89501-1991
Tel:   775-343-7500
Fax:   844-670-6009

DICKINSON WRIGHT PLLC
Dan W. Goldfine
*Admitted pro hac vice*
Email: DGoldfine@dickinson-wright.com
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004-4568
Tel: 602-285-5000
Fax: 844-670-6009

DICKINSON WRIGHT PLLC
Michael M. Beckwith
*Admitted pro hac vice*
MBeckwith@dickinson-wright.com
615 National Avenue, Suite 220
Mountain View, CA 94043
Tel: 408-701-6200
Fax: 844-670-6009

DICKINSON WRIGHT PLLC
Patrick J. Masterson
*Admitted pro hac vice*
Email: PMasterson@dickinson-wright.com
500 Woodward Avenue Suite 4000
Detroit, MI, 48226-3425
Tel:   313-223-3107
Fax:   844-670-6009

*Attorney for Defendant
Eduardo Ruben Lopez*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>EDUARDO RUBEN LOPEZ,<br><br>   Defendant. | 2:23-CR-00055-CDS-DJA<br><br>**DEFENDANT'S SUPPLEMENTAL RESPONSE TO THE DIVISION'S ARGUMENT RAISED AT THE SENTENCING HEARING REGARDING LOSS** |

1

The Division's newly-raised argument is wrong. It warrants a brief response in light of the Court's efforts to prepare a written opinion on loss. Specifically, at the initial sentencing hearing, the Division argued that valuations of Community Home Health Care LLC ("Community") were not accurate because they did not account for Solace's attorneys' fees.

As a matter of economics, it is improper to include a purchaser's non-permanent legal fees in the valuation of a company. Exhibit A (Supplemental Expert Report of Roberto J. Cavazos Ph.D. and Mikhail V. Pevzner Ph.D.). Here, the objective of valuation analysis is to calculate the actual value of Community, the company Solace received, based on market comparisons and reasonable expectations of its future cash flows. *Id.* Non-permanent legal expenses tied to a specific matter do not impact that valuation analysis. *Id.* The valuations offered by Dr. Cavazos and Dr. Pevzner (over $15.6 million and $16.8 million) are conservative in that they are based on expected growth rates of 7% and 9%, respectively. ECF No. 715-1(Expert Report, at 20–28). A higher growth rate of 10% is a common estimate used by both economists and the home health industry. Exhibit A at 4. Moreover, Solace internally valued Community as a good acquisition due its growth potential. Exhibit B (Solace noting under "Merits" that Community had a "Strong Trajectory for Growth" and a "strong record of growth since being founded in 2018").

To the extent legal fees are relevant to the § 2B1.1 loss calculation, those expenses, like all pecuniary harms, are measured against the value of the company Solace received. *See United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007) (loss analysis must differentiate between fraud relating to the sale of "sham" company and fraud relating to the sale of "an otherwise legitimate company"); *see also United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir. 1997) ("value may be rendered even amid fraudulent conduct"). This case does not involve a Ponzi scheme or sale of a worthless company. Even Solace's accounting expert acknowledged Community had appreciated in value after the sale. ECF No. 725-3 (Expert Report of Brad Wilson at 20). Taking the "realistic, economic approach to determine what losses the defendant truly caused" requires taking into account the value of the company Solace received. *See United States v. Crandall*, 525 F.3d 907, 912 (9th Cir. 2008) (quoting *United States v. Stoddard,* 150 F.3d 1140, 1145–46 (9th Cir.1998)). The Guidelines expressly call for such an analysis, instructing courts to consider the "reduction

that resulted from the offense in the value of equity securities or other corporate assets". § 2B1.1, Application Note 3(B)(v). Because Community continued to appreciate in value following the discovery of the fraud, Solace did not incur an actual loss. *Id.*; *Zolp*, 479 F.3d at 719. The fact Solace did not incur a loss under § 2B1.1 does not contradict the conviction. *Kousisis v. United States*, 145 S.Ct. 1382, 1388–92 (2025) (wire fraud does not require economic loss). It simply reflects the economic realities of the company Solace received.

The actual loss analysis is the appropriate framework here. Although the Division advocates for intended loss, it offered no evidence that Mr. Lopez "purposely sought to inflict" monetary "harm" on Solace. § 2B1.1(b)(1)(C)(ii). Instead, it offers only conjecture and rhetoric to create a false narrative in support of a 20-point enhancement. The Division's argument for intended loss is also contrary to Ninth Circuit precedent. In *Crandall*, the scheme there was intended to "enhance the marketability" of an asset, not "that the buyers would suffer any loss." 525 F.3d at 914. That is exactly the situation here. As in *Crandall*, Mr. Lopez's fraud "enhance[d] the marketability" of Community. *Id.* He did not purposely seek to inflict millions in harm—harm that never occurred. Accordingly, as in *Crandall*, "here we are dealing only with actual loss." *Id.*[1]

Finally, § 2B1.1 imposes specific requirements for excluding attorneys' fees in the loss calculation. *See* § 2B1.1, Application Note 3(C)(ii) ("costs," such as legal fees, incurred primarily to aid the government in the investigation and prosecution of the offense are expressly excluded from the loss calculation); *United States v. Zander*, 794 F.3d 1220, 1232 (10th Cir. 2015) (remanding to exclude attorneys' fees incurred in aiding government's investigation); *United States v. Seward*, 272 F.3d 831, 839 (7th Cir. 2001) (excluding legal fees from loss calculation).[2]

Here, the Division fails to show which attorneys' fees, if any, constitute losses under § 2B1.1. Heavy redactions make assessing individual billing entries difficult. Critically, millions of dollars of the submitted legal costs should be excluded under § 2B1.1, Application Note 3(C)(ii), because the Division first contacted Solace for investigative aid in December 2022. *See* Exhibit C

---

[1] The Division is also wrong that an intended loss analysis precludes a set off for the actual value of the company Solace received. *See United States v. Blitz*, 151 F.3d 1002, 1012 (9th Cir. 1998) ("in calculating intended loss, the district court should give credit for any legitimate services rendered to the victims").

[2] The loss analysis here does not necessarily dictate (1) restitution or (2) proceeds subject to forfeiture. Those calculations are separate and subject to a different framework.



3

(Reed Smith time entry: "Call with DOJ regarding request for cooperation"). Solace's aid helped the government with its superseding indictment (wire fraud charges) and at trial. The Division makes no effort to show the costs incurred after this point are not subject to Application Note 3(C)(ii). Meanwhile, to the extent civil fees can constitute loss under § 2B1.1, the Division does nothing to show which fees associated with the Delaware proceeding flowed from the offense, as opposed to unrelated claims and counterclaims.[3]

The Division failed to meet its burden.  It has not presented evidence sufficient to show Solace incurred a loss under § 2B1.1, and its new argument regarding Solace's attorneys' fees do not change that conclusion. Solace paid approximately $10.4 million for a company worth over $15.6 million.  The Division has not identified which, if any, of Solace's attorneys' fees constitute a loss under § 2B1.1. However, for argument's sake, even if <u>all</u> of Solace's attorneys' fees could be counted as losses (they cannot), the value of the company Solace received exceed the amount it paid and any legal fees it incurred.  Accordingly, the offense level for Counts 2-6 should be 7.

DATED this 17th day of October, 2025.

---

[3] Notably, though it could have, Solace never sought rescission as a civil remedy.  It wanted to keep Community, which it valued.

DICKINSON WRIGHT PLLC

/s/ Mackenzie E. Robinson
Mackenzie E. Robinson
Email:  MRobinson@dickinson-wright.com
100 West Liberty Street, Suite 940
Reno, Nevada  89501-1991
Tel:     775-343-7500

Dan W. Goldfine (*Admitted pro hac vice*)
Email:  DGoldfine@dickinson-wright.com
1850 North Central Avenue, Suite 1400
Phoenix, AZ  85004-4568
Tel:     602-285-5000

Michael M. Beckwith (*Admitted pro hac vice*)
MBeckwith@dickinson-wright.com
615 National Avenue, Suite 220
Mountain View, CA  94043
Tel:     408-701-6200

DICKINSON WRIGHT PLLC
Patrick J. Masterson (*Admitted pro hac vice*)
Email:  PMasterson@dickinson-wright.com
500 Woodward Avenue Suite 4000
Detroit, MI, 48226-3425
Tel:     313-223-3107

*Attorneys for Defendant
Eduardo Ruben Lopez*

## CERTIFICATE OF SERVICE

I certify that I am an employee of Dickinson Wright PLLC and that on October 17, 2025, pursuant to Federal Rule of Criminal Procedure 49(a), I served a true and correct copy of the foregoing **DEFENDANT'S SUPPLEMENTAL RESPONSE TO THE DIVISION'S ARGUMENT RAISED AT THE SENTENCING HEARING REGARDING LOSS** on the parties through the Court's CM/ECF e-filing system to the following:

Jeffrey Cramer
Mikal Jenna Condon
Andrew Mast
Paradi Javandel
Conor Bradley
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA  941092
Tel: 415.934.5300
Fax: 415.934.5399
andrew.mast@usdoj.gov

Sue Fahami
Executive Assistant United States Attorney
District of Nevada
Richard Anthony Lopez
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702.388.6551 / Fax: 702.388.6418
tony.lopez@usdoj.gov

*Attorneys for the United States*

                                                    */s/ Sherette Duffus*
                                      An Employee of Dickinson Wright PLLC

