# EXHIBIT A

Cavazos & Pevzner Supplement

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | Case No. 2:23-cr-00055-CDS-DJA |
| | § | |
| v. | § | |
| | § | |
| EDUARDO RUBEN LOPEZ | § | |

Supplemental Expert Report

Roberto J. Cavazos Ph.D.
Mikhail V. Pevzner Ph.D. (CPA, licensed in Maryland)

October 17, 2025

employstats
ECONOMICS + STATISTICS

**Overview**

1. This supplement to our report is in response to the assertion made in the sentencing hearing of Mr. Eduardo Lopez on October 9, 2025, by U.S. Assistant Attorney Mast. It was asserted that the value of Community is lower than that as determined by our valuation due to $3.8 million in legal fees incurred by Solace due to its acquisition of Community. The Government's claim implies that we should have accounted for these fees in our valuation calculation. We strongly believe that Government erred in its reasoning, and its claim should be disregarded.

2. In what follows, we point out why this assertion is incorrect and inapplicable to the value of Community.

**Key Points**

i. It is improper in valuation to consider the legal expenses of the buyer. The Government's assertion that $3.8 million in legal fees reduces the value of Community at the time of its purchase is at odds with accounting and valuation academic literature and practice.

ii. The assertion that the $3.8 million in legal fees can be used to reduce the value of Community at the time of purchase in effect asserts that a contingent liability has been identified and/or attested by an auditor or other financial professional.

employstats
ECONOMICS + STATISTICS

iii. Further, any such legal expenses as asserted by the Government could be up to 100% tax deductible expenses, thus vitiating any impact.[1]

**Support and Analysis**

3. On October 9, 2025, the prosecution made an argument that our calculation of the Community's value is incorrect because we did not account for $3.8 million in legal fees Solace incurred.

4. A buyer's legal expenses after purchase are not typically factored into a purchased company's valuation analysis. Valuation is based on expectations of a company's underlying economic performance.

5. Professor Aswath Damodaran of New York University, a prominent valuation authority,[2] states: "The value of the firm is obtained by discounting the free cash flow to the firm at the weighted average cost of capital" (Exhibit B, No.3.).

6. Furthermore, "The value of the firm is obtained by discounting expected cashflows *to the firm*, i.e., the residual cashflows *after meeting all operating expenses* and taxes…" (Exhibit B, No, 4, p. 7, emphasis added).

7. Only *operating* components of earnings relevant to the calculations of *Community*'s future free cash flows should be included in our valuation or any other valuation

---

[1] Businesses in the US can generally deduct 100% of legal expenses that qualify as ordinary and necessary for carrying on a trade or business, reducing taxable income dollar-for-dollar before the corporate tax rate (currently 21% federal) is applied. The primary citation for this is 26 U.S. Code § 162. See also, **IRS Publication 535 – *Business Expenses*** (2024).

[2] For example, Professor Damodaran authored multiple books on valuation theory. He is often described as "dean of valuation". (See, e.g. https://www.ft.com/content/6b9537e2-3639-4c23-8136-e2ab9dfbe1da?. Accessed on October 12, 2025).

analysis. Thus, our calculation of Community's Enterprise Value is based on EBITDA, which captures future operating earnings and cash flows of a company; indeed, Community's Purchase Price was based on an EBITDA multiple (Exhibit A, No. 1, p. 37).

8. This practice is consistent with the calculations of Community's fair market value that include expected, future stable earnings streams that exclude items that do not have permanent effects on Community's future performance. Indeed, academic research and industry practice show that EBITDA serves as a reliable proxy for a company's future operating cash flows; investors heavily rely on it in their valuation decisions (Exhibit B, No. 2).

9. Solace's asserted unexpected legal expenses of $3.8 million *do not represent Community*'s future persistent expenses and should not be included in calculations used to determine the value of Community as a business enterprise.

10. Furthermore, we note that this is the practice that Solace follows in its calculations of EBITDA for Community in its own financial statements (See Exhibit A, No. 2-6).

11. Our calculation of Enterprise Value captures Community's Fair Market (Intrinsic) Value is based on the expected future EBITDA and Free Cash Flows. Thus, Solace's legal expenses are irrelevant for valuation purposes.

12. As discussed in our Report, para 61, the *Auditor did not deem it necessary to account for any contingent liabilities related to non-disclosure of criminal prosecution of*

employstats
ECONOMICS + STATISTICS

*Mr. Lopez. Indeed, Solace could have raised the issue of legal fees it incurred in connection with the transaction as part of the Auditor Report calculations of Purchase Price Adjustment, but we did not find any evidence of it doing so.*

13. As shown in the foregoing, our analysis is neither novel, nor controversial and adheres to standard analysis practice. We stand by the results of our analysis.

14. Our valuation of Community as of June 30, 2022, assuming a 9% growth rate is: $16,806,784.[3]

15. Our valuation of Community as of June 30, 2022, assuming a 7% growth rate is: $15,611,189.[4]

16. We believe either growth rate is conservative because 10% is a commonly assumed growth rate in valuation practice by economists. Moreover, as mentioned in our initial report, the home health industry generally uses a growth rate estimate of around 10%. See here: https://www.grandviewresearch.com/industry-analysis/home-healthcare-industry.

**Concluding Opinions**

17. In our initial review leading up to our first report, we found no opinions from either the Auditor's report or Solace's expert that there were any contingent liabilities that would affect the value of Community.

[3] The present value of this figure on December 23, 2021 was $15,797,044.

[4] The present value of this figure on December 23, 2021 was $14,626,023.

employstats
ECONOMICS + STATISTICS

18. No documents, revisions or attestations have been provided to us since we produced our report to support any additional costs that need to be considered in the valuation of Community.

19. Regardless, any legal fees that Solace has incurred would likely be tax deductible, which would further reduce or vitiate any alleged net loss from the acquisition it may have suffered. In fact, up to 100% of Solaces' legal expenses could be tax deductible.[5] Even in absence of this deductibility, these expenses do not affect the value of Community.

Executed on October 17, 2025

Roberto J. Cavazos Ph.D.

Mikhail V. Pevzner Ph.D.

[5] As noted above, Businesses in the US can generally deduct 100% of legal expenses that qualify as ordinary and necessary for carrying on a trade or business, reducing taxable income dollar-for-dollar before the corporate tax rate (currently 21% federal) is applied. The primary citation for this is 26 U.S. Code § 162. See also, **IRS Publication 535 – *Business Expenses*** (2024). We are not providing tax advice or opinions; we are noting well known business practices.

employstats
ECONOMICS + STATISTICS

**Exhibit A: Documented Cited**

1. USA vs. Lopez, Expert Report by Roberto Covazos and Mikhail Pevzner, September 8, 2025.
2. SOLACEHEALTHCARNV_0005143.
3. SOLACEHEALTHCARNV_0005144.
4. SOLACEHEALTHCARNV_0005190.
5. SOLACEHEALTHCARNV_0005312.
6. SOLACEHEALTHCARNV_0005313.

**Exhibit B: Authoritative Literature Cited.**

1. Damodaran, A. Investment Valuation, Tools, and Techniques for Determining the Value of Any Asset. Wiley, 2012
2. Elfrink, Erik and Gee, Kurt H. and Hills, Robert and Whipple, Benjamin C., The Usefulness of EBITDA (February 06, 2025). Available at SSRN: https://ssrn.com/abstract=5127468 or http://dx.doi.org/10.2139/ssrn.5127468
3. Damodaran, A. Available at: https://pages.stern.nyu.edu/~adamodar/pdfiles/valn2ed/ch15.pdf ; Accessed on October 12, 2025
4. Damodaran, A. Valuation (slides notes). Available at: https://pages.stern.nyu.edu/~adamodar/pdfiles/country/Brvaln01.pdf; Accessed on October 12, 2025.